1  Philip McLeod, CASB NO. 101101
   philip.mcleod@kyl.com
2  Cameron Stout, CASB NO. 117373
   cameron.stout@kyl.com
3  KEESAL, YOUNG & LOGAN
   A Professional Corporation
4  Four Embarcadero Center, Suite 1500
   San Francisco, California 94111
5  Telephone: (415) 398-6000
   Facsimile: (415) 981-0136
6
   Anthony Paduano
7  (*Pro Hac Vice* Admission Pending)
   ap@pwlawyers.com
8  PADUANO & WEINTRAUB LLP
   1251 Avenue of the Americas, Ninth Floor
9  New York, New York 10020
   Telephone: (212) 785-9100
10 Facsimile: (212) 785-9099

11 Attorneys for Plaintiff
   A.G. EDWARDS & SONS, INC.
12

13              UNITED STATES DISTRICT COURT

14          FOR THE NORTHERN DISTRICT OF CALIFORNIA

15

16 A.G. EDWARDS & SONS, INC.,            ) Case No.
                                         )
17                      Plaintiff,       ) **PLAINTIFF A.G. EDWARDS & SONS,**
                                         ) **INC.'S COMPLAINT FOR**
18          vs.                          ) **INJUNCTIVE RELIEF**
                                         )
19 SAMUEL SLAYDEN, DENISE GILSETH, )
   CATHY MCJILTON, and KELLY            )
20 STROMGREN,                            )
                                         )
21                      Defendants.      )
                                         )
22                                       )
                                         )
23 _____  )

24

25      Plaintiff A.G. EDWARDS & SONS, INC. ("Edwards"), by its undersigned

26 attorneys, alleges:

27              **Preliminary Statement**

28      1.   This action is for a temporary restraining order and a preliminary

                              - 1 -                    KYL_SF457041

1  injunction to maintain the status quo pending resolution of an arbitration proceeding

2  between the parties and their new employer, Stifel, Nicolaus & Company, Inc. ("Stifel")

3  that concurrently is being filed with FINRA Dispute Resolution.

4      2.     The immediate action and concurrent arbitration arise out of the following

5  facts.  SAMUEL SLAYDEN ("Slayden") was Edwards' branch office manager in its

6  Santa Rosa, California office until his recent and abrupt resignation on September 20,

7  2007, after which he immediately commenced employment with Stifel, a direct

8  competitor of Edwards.   The other Defendants, DENISE GILSETH ("Gilseth") and

9  KELLY STROMGREN ("Stromgren"), were Edwards financial consultants and

10  Defendant CATHY MCJILTON ("McJilton") (collectively, "Defendants") was a registered

11  financial associate in Edwards' Santa Rosa office until their recent and abrupt

12  resignations, after which they immediately commenced employment with Stifel.  Gilseth

13  and McJilton resigned on or about September 20, 2007, and Stromgren resigned on

14  October 1, 2007.  In addition, on information and belief, at the behest of Slayden and

15  without warning, Jaime Van Heusen (operations manager) and Christian Amaor (wire

16  operator) in the Santa Rosa office also terminated their employment with Edwards on

17  September 20, 2007 and September 25, 2007, respectively, and joined Defendants at

18  Stifel.  At the same time as Defendants' resignation, on information and belief, at the

19  direction and scheming of Slayden, Stifel opened an office in the very same building as

20  Edwards' Santa Rosa office.  This can only be an attempt to confuse Edwards' clients and

21  lead them to believe that Edwards' office was simply sold.  As such, Defendants have

22  destroyed Edwards' Santa Rosa branch office and are in the process of stealing and

23  attempting to steal Edwards' clients.  At the time Defendants left Edwards, Defendants

24  generated approximately $1,400,000 in the past 12 months based on more than

25  $305,000,000 in total assets of Edwards under management for thousands of Edwards'

26  clients.

27      3.     Defendants have breached their contracts and their common-law

28  obligations to Edwards.   In particular, Slayden has improperly solicited Edwards'

- 2 -                                KYL_SF457041

**PLAINTIFF A.G. EDWARDS & SONS, INC.'S COMPLAINT FOR INJUNCTIVE RELIEF**

1    personnel to join him at his new employer, and, on information and belief, has assisted

2    Stifel in hiring and recruiting other Edwards' employees and personnel. This

3    solicitation has occurred in clear violation of Slayden's common-law obligations and

4    fiduciary duties to Edwards. The solicitation also represents unfair competition and

5    misappropriation of trade secrets. Moreover, on information and belief, Defendants have

6    improperly solicited Edwards' clients to move their accounts to Stifel in breach of their

7    contracts and their common-law obligations to Edwards.

8        4.    To prevent continued irreparable harm arising from this course of

9    misconduct, Edwards seeks immediate injunctive relief (in the form of a temporary

10    restraining order and a preliminary injunction) barring the Defendants from soliciting

11    Edwards' personnel and barring Defendants from using Edwards' confidential and

12    proprietary business and customer information, pending resolution of Edwards' claims

13    against Defendants in the parallel arbitration.

14                              **Jurisdiction**

15        5.    The Court has jurisdiction in this action pursuant to 28 U.S.C. §1332(a) in

16    that, as alleged below, plaintiff Edwards, on the one hand, and defendants Slayden,

17    Gilseth, McJilton, and Stromgren, on the other hand, are citizens of different states, and

18    the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

19    costs.

20                      **Intradistrict Assignment**

21        6.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a), in

22    that a substantial part of the events giving rise to the claims occurred in Santa Rosa,

23    California.

24                           **The Parties**

25        7.    Plaintiff Edwards is a corporation organized under the laws of the state of

26    Delaware with its principal place of business located in St. Louis, Missouri. Edwards is a

27    securities broker-dealer and is a member of FINRA, the New York Stock Exchange, Inc.

28    and all other major exchanges. Edwards maintains a branch office in Santa Rosa,

KYL_SF457041

**PLAINTIFF A.G. EDWARDS & SONS, INC.'S COMPLAINT FOR INJUNCTIVE RELIEF**

1  California.

2      8.    Defendant Slayden is an individual who at all times relevant herein was

3  employed and/or conducted business in Santa Rosa, California and was and is a citizen

4  of California.  Slayden also is a registered representative currently employed by Stifel.

5  He was previously employed by Edwards as the branch manager of its Santa Rosa,

6  California branch office.

7      9.    Defendant Gilseth is an individual who at all times relevant herein was

8  employed and/or conducted business in Santa Rosa, California and was and is a citizen

9  of California.  Gilseth also is a registered representative currently employed by Stifel.

10  She was previously employed by Edwards as a financial consultant in its Santa Rosa,

11  California branch office.

12      10.    Defendant Stromgren is an individual who at all times relevant herein was

13  employed and/or conducted business in Santa Rosa, California and was and is a citizen

14  of California.  Stromgren also is a registered representative currently employed by Stifel.

15  She was previously employed by Edwards as a financial consultant in its Santa Rosa,

16  California branch office.

17      11.    Defendant McJilton is an individual who at all times relevant herein was

18  employed and/or conducted business in Santa Rosa, California and was and is a citizen

19  of California.  McJilton also is a registered financial associate currently employed by

20  Stifel.  She was previously employed by Edwards as a financial associate in its Santa

21  Rosa, California branch office.

22      12.    In connection with their status as Registered Representatives of Edwards,

23  the Defendants executed a Form U-4 Uniform Application for Securities Industry

24  Registration or Transfer.  By executing the Form U-4, the Defendants agreed to submit

25  to arbitration disputes, claims and controversies arising between themselves and

26  Edwards.

27      **Factual Allegations**

28      13.    Edwards is a national broker-dealer, serving individual and institutional

**PLAINTIFF A.G. EDWARDS & SONS, INC.'S COMPLAINT FOR INJUNCTIVE RELIEF**

1 | clients throughout the country.  Edwards provides brokerage services in the Santa Rosa
2 | area through its Santa Rosa office.

3 |      14.   On May 31, 2007, Wachovia Corporation ("Wachovia") and Edwards
4 | publicly announced that they had agreed to a transaction whereby Edwards would be
5 | merged with a wholly-owned subsidiary of Wachovia (the "Merger").  Since the
6 | announcement of the Merger, upon information and belief, Stifel has been recruiting
7 | Edwards employees, including Defendants.  Using confidential and proprietary
8 | information from senior Edwards managers who have moved to Stifel, Stifel already has
9 | started soliciting literally dozens of Edwards' branch managers and financial advisors,
10 | including the Defendants.  Prior to Stifel's pilfering and raiding of Edwards employees,
11 | Stifel had no presence in the entire Western region of the United States, including
12 | California.

13 |      15.   Slayden was employed by Edwards beginning in or about September 1984.
14 | On September 20, 2007, when he abruptly resigned without prior notice, Slayden was
15 | the Branch Office Manager of Edwards' Santa Rosa office.

16 |      16.   As Branch Office Manager, Slayden had direct or indirect supervisory
17 | responsibility for the other brokers and financial associates in the office, including the
18 | other Defendants.  In his capacity as the highest ranking individual working in
19 | Edwards' Santa Rosa office, Slayden was responsible for, among other things,
20 | establishing performance objectives for the office, and for maximizing sales production to
21 | accomplish these objectives, with his own compensation tied to such performance.
22 | Slayden also was responsible for recruiting, hiring, training, developing, and supervising
23 | the Edwards financial consultants and financial associates in the office, and responsible
24 | for the management of the branch including its files, client accounts and security.
25 | Slayden's responsibilities as a branch office manager were not solely of a management
26 | nature; Slayden was also a producing broker responsible for Edwards' customer
27 | accounts.  At all times during his employment with Edwards, Edwards compensated
28 | Slayden richly and provided him with numerous employment-related benefits and

KYL_SF457041

**PLAINTIFF A.G. EDWARDS & SONS, INC.'S COMPLAINT FOR INJUNCTIVE RELIEF**

1   opportunities.

2        17.   As part of his official duties at Edwards, Slayden had access to extensive

3   confidential personnel information about all Edwards financial consultants in the Santa

4   Rosa office.  Such information -- which is not publicly available -- is proprietary and

5   valuable, and would be especially useful to a competitor such as Stifel.  The information

6   consisted of compensation details, performance reviews, highly sensitive client

7   information, and the like.

8        18.   On or about September 24, 1984, Slayden entered into an Investment

9   Broker Agreement (the "Slayden Investment Broker Agreement") with Edwards.  A true

10  and correct copy of the Slayden Investment Broker Agreement is attached to the

11  accompanying Affidavit of William Hatcher, dated October 9, 2007 (the "Hatcher

12  Affidavit"), as Exhibit A.

13       19.   The Slayden Investment Broker Agreement provides in Paragraph 1:

14  *So long as you serve as an employee of Edwards, you will act only in*
15  *Edwards' best interest.  For that purpose, you will perform your work*
    *competently and diligently; and you will observe all directions given*
16  *by officials of Edwards, all policies announced by Edwards, all*
17  *regulations and procedures prescribed in Edwards' Policy and*
    *Procedures Manuals and Compliance Manuals as from time to time*
18  *are altered or issued, and all applicable rules of regulatory*
    *authorities.   You will conduct yourself as a loyal and faithful*
19  *employee of Edwards, and you will in no event take any action which*
20  *could harm Edwards' business or its relationships with its clients.*

21       20.   The Slayden Investment Broker Agreement further provides in Paragraph

22  15:

23
    *You will devote your efforts solely to the business of Edwards and*
24  *Edwards' subsidiary or affiliated companies and agencies . . .*

25       21.   The Slayden Investment Broker Agreement also requires Slayden in

26  Paragraph 23 to return all client information to Edwards at the end of his employment:

27  *In the event that your employment with Edwards ends at any time*
28  *either through termination by Edwards or through resignation by*

- 6 -

**PLAINTIFF A.G. EDWARDS & SONS, INC.'S COMPLAINT FOR INJUNCTIVE RELIEF**

*you, you will surrender all training materials, account records, customers' statements and customers' files to Edwards . . . .*

22.    On or about July 14, 1986, Gilseth entered into an Investment Broker Agreement (the "Gilseth Investment Broker Agreement") with Edwards.  A true and correct copy of the Gilseth Investment Broker Agreement is attached to the Hatcher Affidavit as Exhibit B.

23.    The Gilseth Investment Broker Agreement provides in Paragraph 1:

*So long as you serve as an employee of Edwards, you will act only in Edwards' best interest. For that purpose, you will perform your work competently and diligently; and you will observe all directions given by officials of Edwards, all policies announced by Edwards, all regulations and procedures prescribed in Edwards' Policy and Procedures Manuals and Compliance Manuals as from time to time are altered or issued, and all applicable rules of regulatory authorities. You will conduct yourself as a loyal and faithful employee of Edwards, and you will in no event take any action which could harm Edwards' business or its relationships with its clients.*

24.    The Gilseth Investment Broker Agreement further provides in Paragraph 19:

*Both during and after the time you serve as an employee of Edwards, you will not divulge to any person any information received during the course of your employment concerning the business of the firm and its financial affairs.*

25.    The Gilseth Investment Broker Agreement also requires Gilseth in Paragraph 23 to return all client information to Edwards at the end of her employment:

*In the event that your employment with Edwards ends at any time either through termination by Edwards or through resignation by you, you will surrender all training materials, account records, customers' statements and customers' files to Edwards . . . .*

26.    On or about May 8, 1996, Stromgren entered into an Investment Broker Agreement (the "Stromgren Investment Broker Agreement") with Edwards.  A true and correct copy of the Stromgren Investment Broker Agreement is attached to the Hatcher

KYL_SF457041

**PLAINTIFF A.G. EDWARDS & SONS, INC.'S COMPLAINT FOR INJUNCTIVE RELIEF**

1   Affidavit as Exhibit C.

2       27.    The Stromgren Investment Broker Agreement provides in Paragraph 1:

3

4   *So long as you serve as an employee of Edwards, you will act only in Edwards' best interest. For that purpose, you will perform your work competently and diligently; and you will observe all directions given by officials of Edwards, all policies announced by Edwards, all regulations and procedures prescribed in Edwards' Policy and Procedures Manuals and Compliance Manuals as from time to time are altered or issued, and all applicable rules of regulatory authorities. . . . You will conduct yourself as a loyal and faithful employee of Edwards, and you will in no event take any action which could harm Edwards' business or its relationships with its clients.*

5

6

7

8

9

10      28.    The Stromgren Investment Broker Agreement further provides in

11  Paragraph 19:

12

13  *Both during and after the time you serve as an employee of Edwards, you will not divulge to any person any information received during the course of your employment concerning the business of the firm and its financial affairs.*

14

15

16      29.    The Stromgren Investment Broker Agreement also requires Stromgren in

17  Paragraph 23 to return all client information to Edwards at the end of her employment:

18  *In the event that your employment with Edwards ends at any time either through termination by Edwards or through resignation by you, you will surrender the originals of all training materials, account records, customers' statements and customers' files to Edwards . . . .*

19

20

21

22      30.    Stromgren also entered into a Supplementary Training Agreement for an

23  Investment Broker (the "Stromgren Supplementary Investment Broker Agreement")

24  with Edwards.  A true and correct copy of the Stromgren Supplementary Investment

25  Broker Agreement is attached to the Hatcher Affidavit as Exhibit D.

26      31.    The Stromgren Supplementary Investment Broker Agreement provides in

27  Paragraph 5:

28

                        KYL_SF457041

**PLAINTIFF A.G. EDWARDS & SONS, INC.'S COMPLAINT FOR INJUNCTIVE RELIEF**

*During the term of your employment by Edwards and for one hundred and eighty (180) days following termination of your employment, you will not recruit, entice, induce or solicit directly or indirectly any employee of Edwards or any of its affiliates for employment with any other organization which does business in securities, commodities and financial futures, insurance or any other lines of business in which Edwards or any of its affiliates is engaged.*

32.   On or about November 27, 2000, McJilton entered into a Financial Associate Agreement (the "McJilton Financial Associate Agreement") with Edwards. A true and correct copy of the McJilton Financial Associate Agreement is attached to the Hatcher Affidavit as Exhibit E.

33.   The McJilton Financial Associate Agreement provides in Paragraph 1:

*So long as you serve as an employee of Edwards, you will act only in Edwards' best interest. For that purpose, you will perform your work competently and diligently; and you will observe all directions given by officials of Edwards, all policies announced by Edwards, all regulations and procedures prescribed in Edwards' Policy and Procedures Manuals and other manuals as from time to time are altered or issued, and all applicable rules of regulatory authorities. . . . You will conduct yourself as a loyal and faithful employee of Edwards, and you will in no event take any action that could harm Edwards' business or its relationships with its customers/clients.*

34.   The McJilton Financial Associate Agreement (in Paragraph 25) identifies Edwards' customer information as the sole exclusive property of Edwards, confirms that such information is a trade secret, and requires the financial consultants to treat the information properly. The contracts also require the financial consultants to return all such information to Edwards upon termination of their association with the company. Specifically, Paragraph 25 of the McJilton Financial Associate Agreement provides as follows:

*You will not use or remove any documents, records or information from the Edwards office except for the sole purpose of conducting business on behalf of Edwards. You agree not to divulge or disclose these records or documents to any third party and, under no circumstances, will you reveal or permit these records or documents to become known to any individual or organization which does*

- 9 -

**PLAINTIFF A.G. EDWARDS & SONS, INC.'S COMPLAINT FOR INJUNCTIVE RELIEF**

*business in securities, commodities and financial futures, insurance or any other lines of business in which Edwards or any of its affiliates are engaged.*

*These records, documents and information are not generally known outside Edwards and are kept confidential within Edwards. This information was acquired by a great expenditure of time, effort and money, is unique and cannot be lawfully duplicated or easily acquired. You agree that these records and documents are the property of Edwards and deserve trade secret protection.*

35.    The McJilton Financial Associate Agreement also contains a restrictive covenant in Paragraph 29, which prohibits the solicitation of Edwards' employees:

*You will not recruit, entice, induce or solicit, directly or indirectly, during your employment with Edwards or for a period of one year following your termination of employment by Edwards, any employee of Edwards or any of its affiliates for employment with any other organization that does business in securities, commodities and financial futures, insurance or any other lines of business in which Edwards or any of its affiliates is engaged.*

36.    The McJilton Financial Consultant Agreement further provides in Paragraph 34 that McJilton consents "to the issuance of a temporary restraining order or a preliminary or permanent injunction" ordering her to immediately return all Edwards documents, enjoining the use of such documents.

37.    On or about November 27, 2000, McJilton also entered into a Supplementary Training Agreement for a Financial Associate (the "McJilton Supplementary Training Agreement") with Edwards. A true and correct copy of the McJilton Supplementary Training Agreement is attached to the Hatcher Affidavit as Exhibit F.

38.    Each of the Defendants also were bound by Edwards' confidentiality policy as set forth in Section 9.2 of Edwards' Sales Practice Manual, which was made available to all of Edwards' employees:

KYL_SF457041

**PLAINTIFF A.G. EDWARDS & SONS, INC.'S COMPLAINT FOR INJUNCTIVE RELIEF**

*Confidentiality of Client Account Information*

*Client account confidentiality is a very serious matter that all employees should observe at all times. You should never discuss information regarding a client's transactions or account status with other employees, persons not authorized to transact business in the account (spouse, parent or child), or government or regulatory authorities.*

A true and correct copy of Section 9.2 of Edwards' Sales Practice Manual is attached to the Hatcher Affidavit as Exhibit G.

39.    Additionally, all Edwards employees, including Defendants, were provided with Edwards' Code of Ethical Conduct, dated September 8, 2004, which provides, in relevant part:

*CONFIDENTIALITY*
*Directors, officers and employees are obligated to maintain the confidentiality of information entrusted to them by A.G. Edwards, its vendors and/or other employees. Directors, officers and employees must further abide by A.G. Edwards' Privacy Policy as it pertains to the handling of nonpublic, client information and must maintain the confidentiality of information concerning other employees that they receive in performing their jobs. Exceptions to the nondisclosure of such information must be authorized by A.G. Edwards' management or mandated by legal or regulatory entities.*

*No A.G. Edwards representative may provide nonpublic information to persons or organizations outside A.G. Edwards, including the media, unless authorized to do so.*

\*          \*          \*

*These restrictions regarding confidentiality apply to confidential information received by employees or officers prior to their termination with A.G. Edwards and continue after their employment with A.G. Edwards ends.*

40.    As set forth on page one of Edwards' Code of Ethical Conduct, all Edwards employees are required to read it and certify (in electronic form) that they fully understand it. On information and belief, Defendants did so certify while they were Edwards employees. A true and correct copy of Edwards' Code of Ethical Conduct is

KYL_SF457041

**PLAINTIFF A.G. EDWARDS & SONS, INC.'S COMPLAINT FOR INJUNCTIVE RELIEF**

1   attached to the Hatcher Affidavit as Exhibit H.

2        41.   In consideration for Defendants entering into an employment relationship

3   with Edwards and executing their respective agreements, Defendants were provided

4   with significant benefits, including substantial compensation, office and support

5   facilities, fully-paid health insurance, securities registration, insurance licensing,

6   underwriting, research, brokerage operations, and participation in Edwards' 401K plan.

7        42.   On September 20, 2007, Defendants Slayden, Gilseth, and McJilton

8   resigned from Edwards. Defendant Stromgren soon followed and resigned on October 1,

9   2007. Defendants immediately commenced employment with Stifel, one of Edwards'

10   major competitors. In addition, on information and belief, at the behest of Slayden and

11   without warning, Jaime Van Heusen and Christian Amaor in the Santa Rosa office also

12   terminated their employment with Edwards on September 20, 2007 and September 25,

13   2007, respectively. They immediately joined the Defendants at Stifel, who opened an

14   office three floors above in the very same building as Edwards' Santa Rosa office. Upon

15   information and belief, Defendants' departure from Edwards was a raid orchestrated by

16   Slayden well in advance of their departures.

17                    **Edwards' Confidential Information**

18        43.   During the course of their employment by Edwards, Defendants had access

19   to highly confidential Edwards' customer files and other information that is confidential

20   and proprietary to Edwards. Edwards' customer records contain confidential financial

21   information regarding each client, including client identity, social security numbers,

22   address, telephone numbers, transactional history, tax information, personal financial

23   data, insurance information, banking information and investment objectives, among

24   other data.

25        44.   A critical factor to Edwards' continued success is its relations with its

26   customers and financial consultants. Edwards has built the loyalty of its customer base

27   through many years of effort and has invested substantially in building Edwards'

28   goodwill. Edwards spends substantial resources in terms of time, effort and money

**PLAINTIFF A.G. EDWARDS & SONS, INC.'S COMPLAINT FOR INJUNCTIVE RELIEF**

1  annually to provide programs and support to its financial consultants, including the

2  Defendants, for them to use to obtain and build relationships with its customers.

3      45.    Edwards' customer lists and other records are not available from other

4  sources and have been created and updated for a period of years based on Edwards'

5  relationship with its clients.  Edwards has invested substantial corporate resources to

6  develop and maintain its customer information.  These resources include supplies,

7  equipment, personnel and postage for direct mail solicitation, personnel and equipment

8  for  telephone  solicitation,  television  advertising,  print  advertising  and  other

9  miscellaneous marketing activities.

10      46.    Edwards has also expended significant resources to service the customers

11  that were assigned to Defendants.  These resources include execution costs for securities

12  transactions, costs for staff and equipment to perform securities research and analysis,

13  and other services.  Edwards has borne the entire expense of these services and

14  activities as well, with no financial contribution from Defendants.

15      47.    The trade secret information that Defendants have misappropriated was

16  entrusted to Edwards by its customers with the expectation that it would remain

17  confidential and would not be disclosed to third parties.  Defendants had access to this

18  information solely by virtue of their employment by Edwards.  Edwards, and the

19  Defendants, are obliged to maintain the confidentiality of this information.  For its part,

20  Edwards took numerous steps to protect the confidentiality of this information.

21  Defendants were fully aware of, and responsible for, complying with Edwards' internal

22  policies regarding confidentiality.  Moreover, every year Edwards conducts an annual

23  compliance interview to ensure, among other things, that the confidentiality of Edwards'

24  records is maintained.  As a condition of their employment with Edwards, Defendants --

25  like all other Edwards registered representatives -- acknowledged that they were

26  familiar with Edwards' internal policies regarding confidentiality of customer records.

27  Edwards has implemented numerous other policies to ensure the confidentiality of its

28  customer information.  For example, access to the Edwards' secure computer network by

KYL_SF457041

**PLAINTIFF A.G. EDWARDS & SONS, INC.'S COMPLAINT FOR INJUNCTIVE RELIEF**

1  registered representatives is password-protected.

2      48.    Employees such as Defendants are instructed to maintain customer

3  information as strictly confidential. These instructions are confirmed in the various

4  agreements and policy manual provisions referenced above and, until Defendants'

5  resignation, these policies were strictly observed.

6                                                         **Defendants' Misconduct**

7      49.    On information and belief, immediately upon their resignations and in

8  exchange for 150% of their trailing 12, in the form of forgivable loans, cash, enhanced

9  payouts and other valuable inducements that were promised to them by Stifel,

10  Defendants have begun the solicitation of Edwards' customers in violation of their

11  obligations to Edwards. Specifically, Defendants have embarked upon a telephone

12  campaign to notify Edwards' clients of their move to Stifel and to persuade Edwards'

13  clients to transfer their accounts from Edwards to Stifel. Indeed, on information and

14  belief, Defendants' plans to injure the Edwards' Santa Rosa office have succeeded by

15  leaving the branch without key administrative managers. Further, Defendants have,

16  on information and belief, taken Edwards' confidential and proprietary information to

17  solicit Edwards' clients they were assigned to service.

18      50.    Consistent with that plot, Defendants, on information and belief, have been

19  using Edwards' confidential documents and information to solicit important Edwards

20  clients to sever their ties with the firm and open relationships with Stifel, a place, on

21  information and belief, that they have never heard of and which did not exist in Santa

22  Rosa until Slayden opened a Stifel office in the same building as Edwards' Santa Rosa

23  office. In fact, thus far, Edwards has already received numerous Automated Customer

24  Account Transfers ("ACAT") for accounts formerly serviced by Defendants while at

25  Edwards, including 174 for Slayden, 26 for Gilseth, and 13 for Stromgren. All of these

26  accounts were transferred to Stifel. In fact, although Stromgren did not resign until

27  October 1, 2007, Edwards received an ACAT for one of her accounts on September 28,

28  2007, prior to her departure. A true and correct copy of the transfer is attached to the

**PLAINTIFF A.G. EDWARDS & SONS, INC.'S COMPLAINT FOR INJUNCTIVE RELIEF**

1  Hatcher Affidavit as Exhibit I. Accordingly, Defendants solicited Edwards clients prior
2  to their resignations from Edwards in violation of their obligations. Unless stopped, the
3  solicitation will continue and Defendants' wrongdoing will go unpunished.

4       51.     Most of the Edwards customers that Defendants serviced over the years
5  were developed by Edwards at great expense and over a number of years. Edwards'
6  customer list is a lifeblood of its business and the expenditures incurred by Edwards in
7  obtaining its clients include the many thousands of dollars spent by Edwards every year
8  on national and local advertising, the millions of dollars it costs to train the Edwards
9  sales force, and the millions of dollars a year Edwards spends for sales support staff,
10 clearing services, operations personnel, systems and support, management and
11 compliance supervision, salaries, annual registration fees, computer services and
12 equipment, phone, mail, research, literature, seminars, trade and other professional
13 news publications, promotional events, the retention of experts, and the many other
14 expenditures Edwards incurs in maintaining its goodwill in the securities industry.

15      52.     On information and belief, before leaving Edwards, Defendants
16 misappropriated Edwards' confidential customer information. In fact, Defendants have
17 acknowledged taking Browse Lists, printing out reports from both Edwards'
18 BrokerVision and Account Inquiry system (which are password-protected), as well as
19 taking Realized Gain and Loss Reports for the clients serviced by Defendants. The
20 information contained in these systems is essential and critical to Edwards' ability to
21 service its clients. On information and belief, Defendants removed this confidential
22 information knowing that it would be impossible for them to contact and solicit Edwards'
23 clients without it. Reports that can be accessed from Edwards' BrokerVision and
24 Account Inquiry system include all of the information relating to Edwards' clients who
25 were serviced by Defendants, including account number, account holdings, activity and
26 personal information.

27      53.     Unless Defendants' misconduct is immediately restrained and enjoined,
28 other competitors of Edwards will be encouraged to engage in the same kind of illegal

1   behavior, which will cause Edwards severe and permanent damage.

2        54.    Defendants' misconduct, as described above, constitutes at a minimum,

3   breach of contract, breach of fiduciary duty and duty of loyalty, misappropriation of

4   trade secrets, tortious interference, conversion, and unfair competition.    Unless

5   Defendants' conduct is immediately enjoined, Edwards' other financial consultants will

6   be encouraged to engage in the same reprehensible conduct.  This misconduct is highly

7   disruptive to Edwards' ability to conduct business in a stable manner, to maintain

8   Edwards' goodwill with its customers and employees.

9        55.    By seeking to pirate away Edwards' employees and, ultimately, its clients,

10  Defendants have caused and will continue to cause continuing and irreparable injury to

11  Edwards which cannot be cured by monetary damages.  Defendants' wrongdoing has

12  caused and will continue to cause irreparable harm to Edwards by causing:

13       (a) Loss of personnel and damage to office stability;

14       (b) Loss of clients, client relationships, and assets;

15       (c) Injury to Edwards' reputation and goodwill in the Santa Rosa area;

16       (d) Present economic loss, which is unascertainable at this time, and future

17  economic loss, which is now incalculable;

18       (e)    Disclosure of trade secrets, customer and employee lists, and other

19  proprietary and confidential business and customer information; and

20       (f) Loss of Edwards' clients' and employees' confidence and trust, loss of goodwill,

21  and loss of business reputation.

22       56.    Money damages are insufficient to compensate Edwards for the harm

23  caused by Defendants.  At this time, it is not possible to quantify the present and future

24  economic losses that Edwards is suffering and will continue to suffer due to the

25  misappropriation of its trade secrets and confidential information, loss of clients,

26  talented agents and employees to a competitor -- all due directly to the wrongdoing of

27  Defendants as described herein.  If Defendants' conduct continues unrestrained, the

28  trust and confidence that clients have in Edwards will be permanently impaired.

**PLAINTIFF A.G. EDWARDS & SONS, INC.'S COMPLAINT FOR INJUNCTIVE RELIEF**

## FIRST CAUSE OF ACTION
### (Breach of Contract)

57.    Edwards realleges and incorporates herein by reference the allegations of paragraphs 1 through 56 hereof.

58.    Defendants breached their contracts with Edwards by soliciting Edwards' financial consultants and other employees to work at Stifel, and by soliciting Edwards' clients through the use of Edwards' confidential documents and information.    By pirating away Edwards' employees, and, ultimately, its clients and proprietary and confidential information, the Defendants seek to convert to their benefit Edwards' protectable interests.

59.    Defendants' conduct is in furtherance of a scheme to obtain and use the trade secrets of Edwards, confidential information of Edwards, and the business, revenues, and goodwill generated, directly and indirectly, by use of such confidential information.    Defendants' conduct will destroy the value of Edwards' confidential business information, result in the loss of Edwards' competitive advantage in the investment services market, and divert from Edwards substantial amounts of business.

60.    As a direct and proximate result of the Defendants' breach of their contracts, Edwards has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated.    Accordingly, Edwards is entitled to a temporary restraining order and a preliminary injunction.

## SECOND CAUSE OF ACTION
### (Misappropriation of Trade Secrets --
### California Civil Code §§ 3426.1, et seq.)

61.    Edwards realleges and incorporates herein by reference the allegations of paragraphs 1 through 60 hereof.

62.    Edwards' confidential and proprietary business and customer information derives substantial, independent economic value from not being generally known to the public or to Edwards' competitors, who could obtain economic value from the information.    Edwards expended substantial financial and human resources to develop

- 17 -

1   this information, which cannot be easily acquired or replicated by others, from among

2   the literally millions of actual or potential individual investors in the marketplace.

3   Further, Edwards has taken substantial efforts to maintain the secrecy of its

4   confidential and proprietary business and customer information, including but not

5   limited to restricting access to such information, designating such information as

6   confidential, and requiring confidentiality agreements.    Accordingly, Edwards'

7   confidential and proprietary business and customer information constitutes trade secrets

8   pursuant to Sections 3426.1, et seq. of the California Civil Code.

9       63.    Defendants' misappropriation of Edwards' confidential and proprietary

10  business and costumer information will destroy the value of this information, and

11  diminish the competitive advantage that such information gives to Edwards.    In

12  addition, Defendants' conduct will result in the diversion of substantial amounts of

13  business from Edwards.

14      64.    As a direct and proximate result of the Defendants' misappropriation of

15  Edwards' trade secrets, Edwards has sustained and will continue to sustain irreparable

16  injury, the damages from which cannot now be calculated.    Accordingly, Edwards is

17  entitled to a temporary restraining order and a preliminary injunction.

18                          **THIRD CAUSE OF ACTION**
19                          **(Breach of Fiduciary Duty)**

20      65.    Edwards realleges and reincorporates herein by reference the allegations

21  contained in paragraphs 1 through 64 hereof.

22      66.    As a high-ranking member of Edwards management, Slayden owed to

23  Edwards a fiduciary duty of trust and loyalty.

24      67.    Slayden's fiduciary duties required him at all times to, among other things,

25  act in Edwards' best interests and maintain the confidentiality of Edwards' trade secrets

26  and other confidential and proprietary business and customer information.    Slayden's

27  fiduciary duties required him at all times to refrain from, among other things, soliciting

28

**PLAINTIFF A.G. EDWARDS & SONS, INC.'S COMPLAINT FOR INJUNCTIVE RELIEF**

Edwards' clients and Edwards' employees who worked for him to join Slayden at a competing company, or suggesting that they do so and urging such employees to take Edwards' customers, prospective customers and their confidential information with them to a competing company.

68.    Slayden breached his fiduciary duties to Edwards by engaging in the conduct alleged above.    Slayden's conduct will result in the destruction of value of Edwards' confidential information and trade secrets, the loss of competitive advantage in the investment services market, and the diversion of substantial amounts of business and prospective business and revenue.

69.    As a direct and proximate result of Slayden's breach of fiduciary duty, Edwards has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated.    Accordingly, Edwards is entitled to a temporary restraining order and a preliminary injunction.

## FOURTH CAUSE OF ACTION
### (Breach of Duty of Loyalty)

70.    Edwards realleges and incorporates herein by reference the allegations of paragraphs 1 through 69 hereof.

71.    By virtue of their positions with Edwards, Defendants owed Edwards a duty of undivided loyalty during the term of their employment with Edwards. Defendants' duties of loyalty prohibited them from competing with Edwards or assisting a competing business during the course of their employment with Edwards.    Defendants' duties of loyalty also included a duty to act toward Edwards fairly, honestly and in good faith; to maintain the confidentiality of Edwards' trade secrets and other confidential and proprietary business and customer information; and to refrain from any act or omission calculated or likely to injure Edwards.

72.    Defendants breached their duties of loyalty to Edwards by engaging in the conduct alleged above (and incorporated herein).

KYL_SF457041

**PLAINTIFF A.G. EDWARDS & SONS, INC.'S COMPLAINT FOR INJUNCTIVE RELIEF**

73.   Defendants knew and intended, or knew and recklessly or negligently disregarded, that their acts had the purpose and/or effect of disrupting and harming Edwards' business.

74.   As a direct and proximate result of Defendants' breach of their duty of loyalty, Edwards has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated.  Accordingly, Edwards is entitled to a temporary restraining order and a preliminary injunction.

**FIFTH CAUSE OF ACTION**
**(Inducing Breach of Contract)**

75.   Edwards realleges and incorporates herein by reference the allegations of paragraphs 1 through 74 hereof.

76.   The financial consultants in Edwards' branch office are bound by employment agreements with Edwards, which obligate those employees, among other things: a) to devote their time, ability and effort to performance of their duties to Edwards; b) not to disclose or use Edwards' trade secrets or other confidential or proprietary business or customer information outside of the scope of their employment with Edwards, during or after their employment with Edwards; and/or c) not to use any of Edwards' confidential or proprietary information to call, solicit or take away any of Edwards' customers during or after the termination of their employment with Edwards.

77.   By virtue of his position with Edwards, Slayden knew or should have known of the existence and terms of the employment agreements between Edwards and its employees.

78.   Defendants intentionally, maliciously and improperly interfered with Edwards' relationships and employment agreements with its employees by attempting to induce more than one of the financial consultants to leave their employment with Edwards and, upon information and belief, by attempting to induce them to breach their agreements with Edwards by, among other things, obtaining and using Edwards' trade secrets or other confidential or proprietary business or customer information, and by

- 20 -

KYL_SF457041

**PLAINTIFF A.G. EDWARDS & SONS, INC.'S COMPLAINT FOR INJUNCTIVE RELIEF**

1  improperly soliciting Edwards' clients.

2       79.   There was no privilege or justification for Defendants' conduct.

3       80.   As a direct and proximate result of Defendants' conduct, Edwards has

4  sustained and will continue to sustain damages, the exact amount of which is extremely

5  difficult to calculate and is now unknown.

6       81.   Defendants' conduct as set forth and incorporated herein has been willful

7  and malicious.

8       82.   As a direct and proximate result of the Defendants' tortious interference

9  with contract, Edwards has sustained and will continue to sustain irreparable injury,

10  the damages from which cannot now be calculated.  Accordingly, Edwards is entitled to a

11  temporary restraining order and a preliminary injunction.

12  

**SIXTH CAUSE OF ACTION**
**(Intentional Interference with Actual**
**and Prospective Economic Advantages)**

13

14

15       83.   Edwards realleges and incorporates herein by reference the allegations of

16  paragraphs 1 through 82 hereof.

17       84.   Edwards has developed and maintains advantageous actual and

18  prospective business relationships with its employees and clients that promise a

19  continuing probability of future economic benefit to Edwards.

20       85.   Edwards is informed and believes, and on that basis alleges, that, because

21  the Defendants occupied high-level and/or managerial positions with Edwards, they

22  knew or reasonably should have known about Edwards' advantageous actual and

23  prospective business relationships with its employees and clients.

24       86.   Edwards is informed and believes, and on that basis alleges, that

25  Defendants have intentionally, maliciously and improperly interfered with and continue

26  to interfere with Edwards' relationships with its employees and clients by, among other

27  things, directly and/or indirectly attempting to induce Edwards employees and clients to

28  sever their relationships with Edwards and to induce them to do business with Stifel.

- 21 -

**PLAINTIFF A.G. EDWARDS & SONS, INC.'S COMPLAINT FOR INJUNCTIVE RELIEF**

87.    There was no privilege and justification for Defendants' conduct. Moreover, the Defendants' actions also constitute wrongful conduct above and beyond the act of interference itself, including misappropriation of trade secrets, breach of contract, unfair competition, breach of the Defendants' fiduciary duty, and breach of their duty of loyalty.

88.    Defendants' conduct was willful and malicious.

89.    As a direct and proximate result of the Defendants' tortious interference with actual and prospective business relationships, Edwards has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated.    Accordingly, Edwards is entitled to a temporary restraining order and a preliminary injunction.

## SEVENTH CAUSE OF ACTION
### (Negligent Interference with Actual and Prospective Economic Advantages)

90.    Edwards realleges and incorporates herein by reference the allegations of paragraphs 1 through 89 hereof.

91.    Edwards entrusted Defendants with confidential information for use solely in performing their duties as an employee of Edwards.  As officers and senior employees of Edwards, Defendants occupied positions of great trust and confidence.   Defendants thereby owed Edwards a fiduciary duty to deal with Edwards in good faith and with loyalty.  Defendants were also obligated to use due care so as not to interfere with Edwards' business relationships, including those with its employees and clients.

92.    Defendants, in breach of the Defendants' duty of due care, have attempted to induce Edwards' employees and clients to leave Edwards.

93.    Edwards is informed and believes, and on that basis alleges, that the Defendants were fully aware that their failure to use ordinary care could subject Edwards to lose employees and thereby, lose clients.

94.    As a direct and proximate result of the Defendants' negligent interference with actual and prospective business relationships, Edwards has sustained and will

KYL_SF457041

**PLAINTIFF A.G. EDWARDS & SONS, INC.'S COMPLAINT FOR INJUNCTIVE RELIEF**

continue to sustain irreparable injury, the damages from which cannot now be calculated. Accordingly, Edwards is entitled to a temporary restraining order and a preliminary injunction.

## EIGHTH CAUSE OF ACTION
### (Conversion)

95.    Edwards realleges and incorporates herein by reference, the allegations of paragraphs 1 through 94 hereof.

96.    At all times, Edwards was, and still is, entitled to the immediate and exclusive possession of its trade secrets and other proprietary information, and all physical embodiments thereof, as alleged above.

97.    Edwards is informed and believes that Defendants took Edwards' trade secrets and other proprietary information, including but not limited to records containing confidential client information, and converted them for the use of Defendants and those acting in concert with them.

98.    The continued detention of Edwards' personal property by the Defendants constitutes conversion.

99.    As a direct and proximate result of the Defendants' conversion, Edwards has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated. Accordingly, Edwards is entitled to a temporary restraining order and a preliminary injunction.

## NINTH CAUSE OF ACTION
### (Unfair Competition --
### California Business & Professions Code §§ 17200, *et seq.*)

100.    Edwards realleges and incorporates herein by reference the allegations of paragraphs 1 through 99 hereof.

101.    Defendants' conduct as set forth above and incorporated herein is unlawful, unfair, fraudulent and deceptive, and constitutes unfair and unlawful competition in violation of Sections 17200, et seq. of the California Business and Professions Code.

**PLAINTIFF A.G. EDWARDS & SONS, INC.'S COMPLAINT FOR INJUNCTIVE RELIEF**

1    Defendants' conduct will result in the loss of the competitive advantage Edwards now

2    holds in the California market, and the diversion from Edwards of substantial amounts

3    of business.

4        102.  As a direct and proximate result of Defendants' unfair competition,

5    Edwards has sustained and will continue to sustain irreparable injury, the damages

6    from which cannot now be calculated.  Accordingly, Edwards is entitled to a temporary

7    restraining order and a preliminary injunction.

8        WHEREFORE, Edwards respectfully prays that this Court ORDER and DECREE

9    that:

10        A.    Defendants be immediately enjoined and restrained, directly or indirectly,

11    and whether alone or in concert with others, including any director, officer, agent,

12    employee and/or representative of Stifel, from doing any of the following until a duly

13    appointed panel of FINRA arbitrators decides Edwards' claim for permanent injunctive

14    relief:

15        (1) soliciting or otherwise initiating any further contact or communication
        with any client of Edwards whom Defendants served or whose name became
16        known to Defendants while in the employ of Edwards, including but limited
        to communicating with such clients for the purpose of advising them of
17        Defendants' new affiliation with Stifel or for the purpose of inviting,
        encouraging, or requesting the transfer of any accounts from Edwards;
18

19        (2) (i) soliciting or assisting, directly or indirectly, the employment of any
        Edwards' employee or broker, (ii) hiring any Edwards employee or broker,
20        (iii) inducing any Edwards employee or broker to leave the employ of
        Edwards, and (iv) taking any action to assist Stifel or any other entity
21        employing Defendants from soliciting, inducing or hiring any employee or
        broker to leave Edwards;  and
22

23        (3) using, disclosing or transmitting for any purpose any confidential or
        proprietary information belonging to or concerning Edwards, its customers or
24        employees, including but not limited to the (i) names, addresses, social
        security numbers, phone numbers, financial information, investment
25        objectives and account information of Edwards' clients; (ii) the names,
        salaries, production and other business information regarding Edwards'
26        brokers and employees; and (iii) other confidential information, trade secrets
        and commercially sensitive materials of Edwards.
27

28

KYL_SF457041

**PLAINTIFF A.G. EDWARDS & SONS, INC.'S COMPLAINT FOR INJUNCTIVE RELIEF**

1    B.    Defendants, and all those acting in concert with them, including but limited

2    to the directors, officers, employees and agents of Stifel, shall return to Edwards or its

3    counsel all records, documents and/or information in whatever form (whether original,

4    copied, computerized or handwritten), pertaining to Edwards' customers, employees and

5    business, and purge all documents and information derived therefrom from the

6    possession, custody and control of Defendants and Stifel within twenty-four hours of

7    notice to Defendants or their counsel of the terms of the Temporary Restraining Order

8    and Order For a Preliminary Injunction and an Order Permitting Expedited Discovery;

9    provided, however, that any information so purged shall be first printed and returned to

10   Edwards pursuant to this paragraph.

11    C.    The Parties be granted leave to commence expedited discovery immediately

12   in aid of preliminary injunction proceedings before this Court.

13    D.    The Parties be directed to proceed with arbitration in accordance with Rule

14   13804 of the NASD Code of Arbitration Procedure for Industry Disputes.

15    E.    Defendants be required to show cause why the temporary restraining order

16   should not be converted into a preliminary injunction, at a hearing to be conducted on a

17   date and time set by the Court.

18    F.    Such other and further relief as the Court deems just and proper.

19

20   DATED:  October 9, 2007                    Respectfully submitted,
                                               KEESAL, YOUNG & LOGAN
21

22

23
                                               _____
24                                             Philip McLeod
                                               Cameron Stout
25                                             KEESAL, YOUNG & LOGAN

26                                             Anthony Paduano (*Pro Hac Vice* Admission
                                               Pending)
27                                             PADUANO & WEINTRAUB LLP

28                                             Attorneys for Plaintiff
                                               A.G. EDWARDS & SONS, INC.

**PLAINTIFF A.G. EDWARDS & SONS, INC.'S COMPLAINT FOR INJUNCTIVE RELIEF**