1  Philip McLeod, CASB NO. 101101
   philip.mcleod@kyl.com
2  Cameron Stout, CASB NO. 117373
   cameron.stout@kyl.com
3  KEESAL, YOUNG & LOGAN
   A Professional Corporation
4  Four Embarcadero Center, Suite 1500
   San Francisco, California 94111
5  Telephone: (415) 398-6000
   Facsimile: (415) 981-0136
6
   Anthony Paduano
7  (*Pro Hac Vice* Admission Pending)
   ap@pwlawyers.com
8  PADUANO & WEINTRAUB LLP
   1251 Avenue of the Americas, Ninth Floor
9  New York, New York 10020
   Telephone: (212) 785-9100
10 Facsimile: (212) 785-9099
11 Attorneys for Plaintiff
   A.G. EDWARDS & SONS, INC.
12

13            UNITED STATES DISTRICT COURT

14        FOR THE NORTHERN DISTRICT OF CALIFORNIA

15

16  A.G. EDWARDS & SONS, INC.,          ) Case No.
                                        )
17                          Plaintiff,  ) **DECLARATION OF WILLIAM**
                                        ) **HATCHER IN SUPPORT OF**
18             vs.                       ) **PLAINTIFF A.G. EDWARDS & SONS,**
                                        ) **INC.'S APPLICATION FOR**
19  SAMUEL SLAYDEN, DENISE GILSETH,    ) **TEMPORARY RESTRAINING ORDER**
    CATHY MCJILTON, and KELLY           ) **AND ORDER REGARDING**
20  STROMGREN,                          ) **PRELIMINARY INJUNCTION**
                                        )
21                          Defendants.  )
                                        )
22                                      )
                                        )
23  ────────────────────────────────── )

24

25         I, WILLIAM HATCHER, under penalty of perjury, declare as follows:

26         1.     I am Pacific Regional Manager for Plaintiff A.G. Edwards & Sons, Inc.

27  ("Edwards"), which includes Edwards' Santa Rosa, California branch office.  I submit

28
                                   - 1 -                        KYL_SF457035
    **DECLARATION OF WILLIAM HATCHER IN SUPPORT OF PLAINTIFF A.G. EDWARDS &**
    **SONS, INC.'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER**
    **REGARDING PRELIMINARY INJUNCTION**

1  this Affidavit in support of Edwards' application for a Temporary Restraining Order and

2  a Preliminary Injunction. Except as to those matters stated on information and belief,

3  which matters I believe to be true, I have personal knowledge of the facts set forth below

4  and could and would competently testify thereto.

### Preliminary Statement

6     2.    This dispute arises out of the departures without any notice of Defendants

7  Samuel Slayden ("Slayden"), Denise Gilseth ("Gilseth"), Cathy McJilton ("McJilton") and

8  Kelly Stromgren ("Stromgren") (collectively "Defendants") from Edwards. Slayden,

9  Gilseth and McJilton all resigned on or about September 20, 2007 and immediately

10  commenced employment with Stifel, Nicolaus & Company, Inc. ("Stifel"), a direct

11  competitor of Edwards. Stromgren resigned on October 1, 2007 and also immediately

12  commenced employment with Stifel. In addition, on information and belief, at the

13  behest of Slayden and without warning, Jaime Van Heusen and Christian Amaor in the

14  Santa Rosa office also terminated their employment with Edwards on September 20,

15  2007 and September 25, 2007, respectively, and joined the Defendants at Stifel. At the

16  same time as Defendants' resignation, on information and belief, at the direction and

17  scheming of Slayden, Stifel opened an office in the very same building as Edwards'

18  Santa Rosa office. This can only be an attempt to confuse Edwards' clients and lead

19  them to believe that Edwards' office was simply sold. As such, Defendants have

20  destroyed Edwards' Santa Rosa branch office and are in the process of stealing and

21  attempting to steal Edwards' clients. At the time Defendants left Edwards, Defendants

22  generated approximately $1,400,000 in the past 12 months based on more than

23  $305,000,000 in total assets of Edwards under management for thousands of Edwards

24  clients.

25     3.    Slayden was Edwards' branch office manager in its Santa Rosa, California

26  office until his abrupt resignation on September 20, 2007, after which he immediately

27  commenced employment with Stifel. Gilseth and Stromgren were Edwards' financial

28

- 2 -                                              KYL_SF457035

**DECLARATION OF WILLIAM HATCHER IN SUPPORT OF PLAINTIFF A.G. EDWARDS & SONS, INC.'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER REGARDING PRELIMINARY INJUNCTION**

1  consultants and McJilton was a registered financial associate in Edwards' Santa Rosa

2  office until their resignations, after which they immediately commenced employment

3  with Stifel.  As such, Edwards' Santa Rosa office has been decimated.  In particular, on

4  information and belief, Slayden has improperly solicited Edwards' personnel to join him

5  at his new employer and, on information and belief, has assisted Stifel in hiring and

6  recruiting of other Edwards' employees and personnel.  Moreover, on information and

7  belief, Defendants have improperly solicited Edwards' clients to move their accounts to

8  Stifel.

9       4.    To prevent continued irreparable harm arising from this course of

10  misconduct, Edwards seeks immediate injunctive relief (in the form of a temporary

11  restraining order and a preliminary injunction) barring Defendants from soliciting

12  Edwards' personnel and clients, and barring Defendants from using Edwards'

13  confidential and proprietary business and customer information, pending resolution of

14  Edwards' claims against Defendants in a related arbitration.

15       5.    Edwards is a member firm of the Financial Industry Regulatory Authority

16  ("FINRA"), which was created in July 2007 through the consolidation of the National

17  Association of Securities Dealers, Inc. (the "NASD") and the member regulation,

18  enforcement and arbitration functions of the New York Stock Exchange.  All Defendants

19  maintain securities licenses through FINRA.  In connection with their status as

20  Registered Representatives of Edwards, Defendants executed a Form U-4 Uniform

21  Application for Securities Industry Registration or Transfer.

22       6.    I am familiar with the facts and circumstances of Defendants' employment

23  with, and resignation from, Edwards.  To begin with, I am familiar with the agreements

24  they signed.  Additionally, I am familiar with the employment records, registration and

25  licensing forms, compliance records, and assorted other documents related to the

26  Defendants' employment with Edwards.

27  **Factual Allegations**

28

                                     - 3 -                          KYL_SF457035

**DECLARATION OF WILLIAM HATCHER IN SUPPORT OF PLAINTIFF A.G. EDWARDS & SONS, INC.'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER REGARDING PRELIMINARY INJUNCTION**

7.    Edwards is a national broker-dealer, serving individual and institutional clients throughout the country.   Edwards provides brokerage services in Northern California through its Santa Rosa Office.

8.    On May 31, 2007, Wachovia Corporation ("Wachovia") and Edwards publicly announced that they had agreed to a transaction whereby Edwards would be merged with a wholly-owned subsidiary of Wachovia (the "Merger").   Since the announcement of the Merger, upon information and belief, Stifel has been recruiting Edwards employees, including Defendants.   On information and belief, using confidential and proprietary information from senior Edwards managers who have moved to Stifel, Stifel already has started soliciting literally dozens of Edwards' branch managers and financial advisors, including the Defendants.   Prior to Stifel's pilfering and raiding of Edwards employees, Stifel had no presence in the entire Western region of the United States, including California.

9.    Slayden was employed by Edwards beginning in or about September 1984. On September 20, 2007, when he resigned without notice, Slayden was the Branch Office Manager of Edwards' Santa Rosa office.

10.    As Branch Office Manager, Slayden had direct or indirect supervisory responsibility for the other brokers and financial associates in the office, including the other Defendants.   In his capacity as the highest ranking individual working in Edwards' Santa Rosa office, Slayden was responsible for, among other things, establishing performance objectives for the office, and for maximizing sales production to accomplish these objectives, with his own compensation tied to such performance. Slayden also was responsible for recruiting, hiring, training, developing, and supervising the Edwards financial consultants and financial associates in the office, and responsible for the management of the branch including its files, client accounts and security. Slayden's responsibilities as a branch office manager were not solely of a management nature; Slayden was also a producing broker responsible for Edwards' customer

- 4 -

KYL_SF457035

**DECLARATION OF WILLIAM HATCHER IN SUPPORT OF PLAINTIFF A.G. EDWARDS & SONS, INC.'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER REGARDING PRELIMINARY INJUNCTION**

1 | accounts.  At all times during his employment with Edwards, Edwards compensated

2 | Slayden richly and provided him with numerous employment-related benefits and

3 | opportunities.

4 | 11.   As part of his official duties at Edwards, Slayden had access to extensive

5 | confidential personnel information about all Edwards' financial consultants in the Santa

6 | Rosa office.  Such information -- which is not publicly available -- is proprietary and

7 | valuable, and would be especially useful to a competitor such as Stifel.  The information

8 | consisted of compensation details, performance reviews, highly sensitive client

9 | information, and the like.

### The Employment Agreements

**(a)  As to Samuel Slayden**

12.   On or about September 24, 1984, Slayden entered into an Investment Broker Agreement (the "Slayden Investment Broker Agreement") with Edwards.  A true and correct copy of the Slayden Investment Broker Agreement is annexed hereto as Exhibit A.

13.   The Slayden Investment Broker Agreement provides in Paragraph 1:

> *So long as you serve as an employee of Edwards, you will act only in Edwards' best interest. For that purpose, you will perform your work competently and diligently; and you will observe all directions given by officials of Edwards, all policies announced by Edwards, all regulations and procedures prescribed in Edwards' Policy and Procedures Manuals and Compliance Manuals as from time to time are altered or issued, and all applicable rules of regulatory authorities. You will conduct yourself as a loyal and faithful employee of Edwards, and you will in no event take any action which could harm Edwards' business or its relationships with its clients.*

14.   The Slayden Investment Broker Agreement further provides in Paragraph 15:

- 5 -                                   KYL_SF457035

**DECLARATION OF WILLIAM HATCHER IN SUPPORT OF PLAINTIFF A.G. EDWARDS & SONS, INC.'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER REGARDING PRELIMINARY INJUNCTION**

*You will devote your efforts solely to the business of Edwards and Edwards' subsidiary or affiliated companies and agencies . . .*

15.    The Slayden Investment Broker Agreement also requires Slayden in Paragraph 23 to return all client information to Edwards at the end of his employment:

*In the event that your employment with Edwards ends at any time either through termination by Edwards or through resignation by you, you will surrender all training materials, account records, customers' statements and customers' files to Edwards . . . .*

**(b)  As to Denise Gilseth**

16.    On or about July 14, 1986, Gilseth entered into an Investment Broker Agreement (the "Gilseth Investment Broker Agreement") with Edwards.  A true and correct copy of the Gilseth Investment Broker Agreement is annexed hereto as Exhibit B.

17.    The Gilseth Investment Broker Agreement provides in Paragraph 1:

*So long as you serve as an employee of Edwards, you will act only in Edwards' best interest. For that purpose, you will perform your work competently and diligently; and you will observe all directions given by officials of Edwards, all policies announced by Edwards, all regulations and procedures prescribed in Edwards' Policy and Procedures Manuals and Compliance Manuals as from time to time are altered or issued, and all applicable rules of regulatory authorities. You will conduct yourself as a loyal and faithful employee of Edwards, and you will in no event take any action which could harm Edwards' business or its relationships with its clients.*

18.    The Gilseth Investment Broker Agreement further provides in Paragraph 19:

*Both during and after the time you serve as an employee of Edwards, you will not divulge to any person any information*

- 6 -                                         KYL_SF457035

**DECLARATION OF WILLIAM HATCHER IN SUPPORT OF PLAINTIFF A.G. EDWARDS & SONS, INC.'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER REGARDING PRELIMINARY INJUNCTION**

1

*received during the course of your employment concerning the business of the firm and its financial affairs.*

2

3

4    19.    The Gilseth Investment Broker Agreement also requires Gilseth in

5    Paragraph 23 to return all client information to Edwards at the end of her employment:

6    *In the event that your employment with Edwards ends at any time either through termination by Edwards or through resignation by you, you will surrender all training materials, account records, customers' statements and customers' files to Edwards . . . .*

7

8

9    **(c)  As to Kelly Stromgren**

10

11    20.    On or about May 8, 1996, Stromgren entered into an Investment Broker

12    Agreement (the "Stromgren Investment Broker Agreement") with Edwards.  A true and

13    correct copy of the Stromgren Investment Broker Agreement is annexed hereto as

14    Exhibit C.

15    21.    The Stromgren Investment Broker Agreement provides in Paragraph 1:

16    *So long as you serve as an employee of Edwards, you will act only in Edwards' best interest. For that purpose, you will perform your work competently and diligently; and you will observe all directions given by officials of Edwards, all policies announced by Edwards, all regulations and procedures prescribed in Edwards' Policy and Procedures Manuals and Compliance Manuals as from time to time are altered or issued, and all applicable rules of regulatory authorities . . . You will conduct yourself as a loyal and faithful employee of Edwards, and you will in no event take any action which could harm Edwards' business or its relationships with its clients.*

17

18

19

20

21

22

23

24    22.    The    Stromgren    Investment    Broker    Agreement    further    provides    in

25    Paragraph 19:

26    *Both during and after the time you serve as an employee of Edwards, you will not divulge to any person any information received during the course of your employment concerning the business of the firm*

27

- 7 -                                                KYL_SF457035

28    **DECLARATION OF WILLIAM HATCHER IN SUPPORT OF PLAINTIFF A.G. EDWARDS & SONS, INC.'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER REGARDING PRELIMINARY INJUNCTION**

1  *and its financial affairs.*

2  23.    The Stromgren Investment Broker Agreement also requires Stromgren in

3  Paragraph 23 to return all client information to Edwards at the end of her employment:

4
5
6  *In the event that your employment with Edwards ends at any time either through termination by Edwards or through resignation by you, you will surrender all training materials, account records, customers' statements and customers' files to Edwards . . . .*

7

8  24.    Stromgren also entered into a Supplementary Training Agreement for an

9  Investment Broker (the "Stromgren Supplementary Investment Broker Agreement")

10  with Edwards.  A true and correct copy of the Stromgren Supplementary Investment

11  Broker Agreement is annexed hereto as Exhibit D.

12  25.    The Stromgren Supplementary Investment Broker Agreement provides in

13  Paragraph 5:

14
15
16
17
18  *During the term of your employment by Edwards and for one hundred and eighty (180) days following termination of your employment, you will not recruit, entice, induce or solicit, directly or indirectly, any employee of Edwards or any of its affiliates for employment with any other organization which does business in securities, commodities and financial futures, insurance or any other lines of business in which Edwards or any of its affiliates is engaged.*

19

20  **(d)  As to Cathy McJilton**

21  26.    On or about November 27, 2000, McJilton entered into a Financial

22  Associate Agreement (the "McJilton Financial Associate Agreement") with Edwards. A

23  true and correct copy of the McJilton Financial Associate Agreement is annexed hereto

24  as Exhibit E.

25  27.    The McJilton Financial Associate Agreement provides in Paragraph 1:

26
27  *So long as you serve as an employee of Edwards, you will act only in Edwards' best interest. For that purpose, you will perform your work*

- 8 -                                    KYL_SF457035

28  DECLARATION OF WILLIAM HATCHER IN SUPPORT OF PLAINTIFF A.G. EDWARDS & SONS, INC.'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER REGARDING PRELIMINARY INJUNCTION

*competently and diligently; and you will observe all directions given by officials of Edwards, all policies announced by Edwards, all regulations and procedures prescribed in Edwards' Policy and Procedures Manuals and other manuals as from time to time are altered or issued, and all applicable rules of regulatory authorities. You will conduct yourself as a loyal and faithful employee of Edwards, and you will in no event take any action that could harm Edwards' business or its relationships with its customers/clients.*

28.    The McJilton Financial Associate Agreement (in Paragraph 25) identifies Edwards' customer information as the sole exclusive property of Edwards, confirms that such information is a trade secret, and requires the financial consultants to treat the information properly. The contracts also require the financial consultants to return all such information to Edwards upon termination of their association with the company. Specifically, Paragraph 25 of the McJilton Financial Associate Agreement provides as follows:

> *You will not use or remove any documents, records or information from the Edwards office except for the sole purpose of conducting business on behalf of Edwards. You agree not to divulge or disclose these records or documents to any third party and, under no circumstances, will you reveal or permit these records or documents to become known to any individual or organization which does business in securities, commodities and financial futures, insurance or any other lines of business in which Edwards or any of its affiliates are engaged.*
>
> *These records, documents and information are not generally known outside Edwards and are kept confidential within Edwards. This information was acquired by a great expenditure of time, effort and money, is unique and cannot be lawfully duplicated or easily acquired. You agree that these records and documents are the property of Edwards and deserve trade secret protection.*

29.    The McJilton Financial Associate Agreement also contains a restrictive covenant in Paragraph 29, which prohibits the solicitation of Edwards' employees:

- 9 -                                               KYL_SF457035

**DECLARATION OF WILLIAM HATCHER IN SUPPORT OF PLAINTIFF A.G. EDWARDS & SONS, INC.'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER REGARDING PRELIMINARY INJUNCTION**

*You will not recruit, entice, induce or solicit, directly or indirectly, during your employment with Edwards or for a period of one year following your termination of employment by Edwards, any employee of Edwards or any of its affiliates for employment with any other organization that does business in securities, commodities and financial futures, insurance or any other lines of business in which Edwards or any of its affiliates is engaged.*

30.    The McJilton Financial Associate Agreement further provides in Paragraph 34 that she consents "to the issuance of a temporary restraining order or a preliminary or permanent injunction" ordering her immediately to return all Edwards documents, and enjoining the use of such documents.

31.    On or about November 27, 2000, McJilton also entered into a Supplementary Training Agreement for a Financial Associate (the "McJilton Supplementary Training Agreement") with Edwards.  A true and correct copy of the McJilton Supplementary Training Agreement is annexed hereto as Exhibit F.

32.    Each of the Defendants also were bound by Edwards' confidentiality policy as set forth in Section 9.2 of Edwards' Sales Practice Manual, which was made available to all of Edwards' employees:

<u>**Confidentiality of Client Account Information**</u>

Client account confidentiality is a very serious matter that all employees should observe at all times.  Employees should never discuss information regarding a client's transactions or account status with other employees, persons not authorized to transact business in the account (spouse, parent or child), or government or regulatory authorities.

A true and correct copy of Section 9.2 of Edwards' Sales Practice Manual is annexed hereto as Exhibit G.

33.    Additionally, all Edwards' employees, including Defendants, were provided

- 10 -                                                    KYL_SF457035

1 with Edwards' Code of Ethical Conduct, dated September 8, 2004, which provides, in

2 relevant part:

3
4
5
6
7
8
9

> *CONFIDENTIALITY*
> *Directors, officers and employees are obligated to maintain the confidentiality of information entrusted to them by A.G. Edwards, its vendors and/or other employees.  Directors, officers and employees must further abide by A.G. Edwards' Privacy Policy as it pertains to the handling of nonpublic, client information and must maintain the confidentiality of information concerning other employees that they receive in performing their jobs. Exceptions to the nondisclosure of such information must be authorized by A.G. Edwards' management or mandated by legal or regulatory entities.*

10
11
12

> *No A.G. Edwards representative may provide nonpublic information to persons or organizations outside A.G. Edwards, including the media, unless authorized to do so.*
>           \*            \*          \*

13
14

> *These restrictions regarding confidentiality apply to confidential information received by employees or officers prior to their termination with A.G. Edwards and continue after their employment with A.G. Edwards ends.*

15 As set forth on page one of Edwards' Code of Ethical Conduct, all Edwards' employees

16 are required to read it and certify (in electronic form) that they fully understand it.  On

17 information and belief, Defendants did so certify while they were Edwards' employees.

18 A true and correct copy of Edwards' Code of Ethical Conduct is annexed hereto as

19 Exhibit H.

20        34.    In consideration for the Defendants entering into an employment

21 relationship with Edwards and executing their respective agreements, Defendants were

22 provided with significant benefits, including substantial compensation, office and

23 support facilities, fully-paid health insurance, securities registration, insurance

24 licensing, underwriting, research, brokerage operations, and participation in Edwards'

25 401K plan.

26 **Defendants' Resignation**

27        35.    On September 20, 2007, Defendants Slayden, Gilseth, and McJilton

28

- 11 -                                        KYL_SF457035

**DECLARATION OF WILLIAM HATCHER IN SUPPORT OF PLAINTIFF A.G. EDWARDS & SONS, INC.'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER REGARDING PRELIMINARY INJUNCTION**

1    resigned from Edwards. Defendant Stromgren soon followed and resigned on October 1,

2    2007. Defendants immediately commenced employment with Stifel, one of Edwards'

3    major competitors. In addition, on information and belief, at the behest of Slayden and

4    without warning, Jaime Van Heusen and Christian Amaor in the Santa Rosa office also

5    terminated their employment with Edwards on September 20, 2007 and September 25,

6    2007, respectively, and joined the Defendants at Stifel, who opened an office 3 floors

7    above in the very same building as Edwards Santa Rosa office. Upon information and

8    belief, Defendants' departure from Edwards was a raid orchestrated by Slayden well in

9    advance of their departures.

10                          **Edwards' Confidential Information**

11        36.    During the course of their employment by Edwards, Defendants had access

12    to highly confidential Edwards' customer files and other information that is confidential

13    and proprietary to Edwards. Edwards' customer records contain confidential financial

14    information regarding each client, including client identity, social security numbers,

15    addresses, telephone numbers, transactional history, tax information, personal financial

16    data, insurance information, banking information and investment objectives, among

17    other data.

18        37.    A critical factor to Edwards' continued success is its relations with its

19    customers and financial consultants. Edwards has built the loyalty of its customer base

20    through many years of effort and has invested substantially in building Edwards'

21    goodwill. Edwards spends substantial resources in terms of time, effort and money

22    annually to provide programs and support to its financial consultants, including the

23    Defendants, for them to use to obtain and build relationships with its customers.

24        38.    Edwards' customer lists and other records are not available from other

25    sources and have been created and updated for a period of years based on Edwards'

26    relationship with its clients. Edwards has invested substantial corporate resources to

27    develop and maintain its customer information. These resources include supplies,

28

- 12 -                                        KYL_SF457035

**DECLARATION OF WILLIAM HATCHER IN SUPPORT OF PLAINTIFF A.G. EDWARDS & SONS, INC.'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER REGARDING PRELIMINARY INJUNCTION**

1    equipment, personnel and postage for direct mail solicitation, personnel and equipment

2    for telephone solicitation, television advertising, print advertising and other

3    miscellaneous marketing activities.

4        39.    Edwards has also expended significant resources to service the customers

5    that were assigned to Defendants.  These resources include execution costs for securities

6    transactions, costs for staff and equipment to perform securities research and analysis,

7    and other services.    Edwards has borne the entire expense of these services and

8    activities as well, with no financial contribution from Defendants.

9        40.    On information and belief, the trade secret information that Defendants

10   have misappropriated was entrusted to Edwards by its customers with the expectation

11   that it would remain confidential and would not be disclosed to third parties.  Indeed, by

12   law Edwards must safeguard this information until such time as the controlling

13   authorities authorize its release.  Defendants had access to this information solely by

14   virtue of their employment by Edwards.  Edwards, and Defendants, are obliged to

15   maintain the confidentiality of this information.  For its part, Edwards took numerous

16   steps to protect the confidentiality of this information.  Defendants were fully aware of,

17   and responsible for, complying with Edwards' internal policies regarding confidentiality.

18   Moreover, every year Edwards conducts an annual compliance interview to ensure,

19   among other things, that the confidentiality of Edwards' records is maintained.  As a

20   condition of their employment with Edwards, Defendants -- like all other Edwards

21   registered representatives -- acknowledged that they were familiar with Edwards'

22   internal policies regarding confidentiality of customer records.    Edwards has

23   implemented numerous other policies to ensure the confidentiality of its customer

24   information.    For example, access to the Edwards' secure computer network by

25   registered representatives is password-protected.

26       41.    All Edwards' employees must maintain customer information as strictly

27   confidential.  These instructions are confirmed in the various agreements and policy

28

- 13 -                                    KYL_SF457035

**DECLARATION OF WILLIAM HATCHER IN SUPPORT OF PLAINTIFF A.G. EDWARDS &
SONS, INC.'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER
REGARDING PRELIMINARY INJUNCTION**

1   manual provisions referenced above and, until Defendants' mass resignation, these

2   policies were strictly observed.

3                               **Defendants' Misconduct**

4          42.    On information and belief, immediately upon their resignations,

5   Defendants have begun the solicitation of Edwards' customers in violation of their

6   obligations to Edwards.    On information and belief, our investigation is ongoing but

7   Defendants have embarked upon a telephone campaign to notify Edwards' clients of

8   their move to Stifel and to persuade them to transfer their accounts from Edwards to

9   Stifel.  Indeed, on information and belief, Defendants' plans to injure the Edwards Santa

10  Rosa branch have succeeded by leaving the branch without key administrative

11  managers.    Further, Defendants have, on information and belief, taken Edwards'

12  confidential and proprietary information to solicit Edwards' clients they were assigned to

13  service.

14         43.    Consistent with that plot, Defendants have, on information and belief, used

15  Edwards' confidential documents and information to solicit important Edwards clients to

16  sever their ties with the firm and open relationships with Stifel (an entity, on

17  information and belief, that they had never heard of).  Stifel did not exist in Santa Rosa

18  until Slayden opened a Stifel office in the same building as Edwards' Santa Rosa office.

19  In fact, thus far, Edwards has already received numerous Automated Customer Account

20  Transfers ("ACAT") for accounts formerly serviced by Defendants while at Edwards,

21  including 174 for Slayden, 26 for Gilseth, and 13 for Stromgren.  All of these accounts

22  were transferred to Stifel.  In fact, although Stromgren did not resign until October 1,

23  2007, Edwards received an ACAT for one of her accounts on September 28, 2007, prior to

24  her departure.  A true and correct copy of the transfer is annexed hereto as Exhibit I.

25  Accordingly, Defendants solicited Edwards clients prior to their resignation from

26  Edwards in violation of their obligations.  Unless stopped, the solicitation will continue

27  and Defendants' wrongdoing will go unpunished.

28
                                        - 14 -                        KYL_SF457035

**DECLARATION OF WILLIAM HATCHER IN SUPPORT OF PLAINTIFF A.G. EDWARDS &
SONS, INC.'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER
REGARDING PRELIMINARY INJUNCTION**

44.    Most of the Edwards customers that Defendants serviced over the years were developed by Edwards at great expense and over a number of years. Edwards' customer list is a lifeblood of its business and the expenditures incurred by Edwards in obtaining its clients include the many thousands of dollars Edwards spends every year on national and local advertising, the millions of dollars it costs to train the Edwards sales force, and the millions of dollars a year Edwards spends for sales support staff, clearing services, operations personnel, systems and support, management and compliance supervision, salaries, annual registration fees, computer services and equipment, phone, mail, research, literature, seminars, trade and other professional news publications, promotional events, the retention of experts, and the many other expenditures Edwards incurs in maintaining its goodwill in the securities industry.

45.    On information and belief, before leaving Edwards, Defendants misappropriated Edwards' confidential customer information. In fact, Defendants have acknowledged taking Browse Lists, printing out reports from both Edwards' BrokerVision and Account Inquiry system (which are password-protected), as well as taking Realized Gain and Loss Reports for the clients serviced by Defendants. The information contained in these systems is essential and critical to Edwards' ability to service its clients. On information and belief, Defendants removed this confidential information knowing that it would be impossible for them to contact and solicit Edwards clients without it. Reports that can be accessed from Edwards' BrokerVision and Account Inquiry system include all of the information relating to Edwards' clients who were serviced by Defendants, including account number, account holdings, activity and personal information.

46.    Unless Defendants' misconduct is immediately restrained and enjoined, other competitors of Edwards will be encouraged to engage in the same kind of illegal behavior, which will cause Edwards severe and permanent damage.

47.    Unless Defendants' conduct is immediately enjoined, Edwards' other

- 15 -    KYL_SF457035

**DECLARATION OF WILLIAM HATCHER IN SUPPORT OF PLAINTIFF A.G. EDWARDS & SONS, INC.'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER REGARDING PRELIMINARY INJUNCTION**

financial consultants will be encouraged to engage in the same reprehensible conduct. This misconduct is highly disruptive of Edwards' ability to conduct business in a stable manner, and to maintain Edwards' goodwill with its customers and employees.

48.    By seeking to pirate away Edwards' employees and, ultimately, its clients, Defendants have caused and will continue to cause continuing and irreparable injury to Edwards.  Defendants' wrongdoing has caused and will continue to cause irreparable harm to Edwards by causing:

(a) Loss of personnel and damage to office stability;

(b) Loss of clients, client relationship, and assets;

(c) Injury to Edwards' reputation and goodwill in the Santa Rosa area;

(d) Present economic loss, which is unascertainable at this time, and future economic loss, which is now incalculable;

(e) Disclosure of trade secrets, customer and employee lists, and other proprietary and confidential business and customer information; and

(f) Loss of Edwards' clients' and employees' confidence and trust and loss of business reputation.


49.    Accordingly, Edwards respectfully requests that this Court maintain the status quo, and enjoin Defendants from continuing to violate their agreements pending resolution of the arbitration between the parties.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this ___ day of October, 2007, in Santa Rosa, California.



WILLIAM HATCHER

- 16 -                                    KYL_SF457035

**DECLARATION OF WILLIAM HATCHER IN SUPPORT OF PLAINTIFF A.G. EDWARDS & SONS, INC.'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER REGARDING PRELIMINARY INJUNCTION**