Philip McLeod, CASB NO. 101101
philip.mcleod@kyl.com
Cameron Stout, CASB NO. 117373
cameron.stout@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
Four Embarcadero Center, Suite 1500
San Francisco, California 94111
Telephone: (415) 398-6000
Facsimile: (415) 981-0136

Anthony Paduano
(*Pro Hac Vice* Admission Pending)
ap@pwlawyers.com
PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas, Ninth Floor
New York, New York 10020
Telephone: (212) 785-9100
Facsimile: (212) 785-9099

Attorneys for Plaintiff
A.G. EDWARDS & SONS, INC.

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.G. EDWARDS & SONS, INC., | Case No.  C 07-05154 WHA |
| Plaintiff, | **SUPPLEMENTAL DECLARATION OF ANTHONY PADUANO IN SUPPORT OF PLAINTIFF A.G. EDWARDS & SONS, INC.'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER REGARDING PRELIMINARY INJUNCTION** |
| vs. | |
| SAMUEL SLAYDEN, DENISE GILSETH, CATHY MCJILTON, and KELLY STROMGREN, | |
| Defendants. | |

I, ANTHONY PADUANO, under penalty of perjury, declare as follows:

1.     I am admitted to practice law before the courts of the State of New York, am admitted <u>pro</u> <u>hac</u> <u>vice</u> before this Court, and I am a member of the firm Paduano &

1   Weintraub LLP, counsel for plaintiffs A.G. EDWARDS & SONS, INC. ("Plaintiff" or

2   "Edwards") in this proceeding.   I submit this Supplemental Declaration in further

3   support of Plaintiffs' Application for a Temporary Restraining Order and a Preliminary

4   Injunction against Defendants SAMUEL SLAYDEN ("Slayden"), DENISE GILSETH

5   ("Gilseth"), CATHY MCJILTON ("McJilton") and KELLY STROMGREN ("Stromgren")

6   (collectively, "Defendants").   Except as to those matters stated on information and belief,

7   I have personal knowledge of the facts set forth below.

8       2.     By letters dated October 4, 2007, my firm sent out demand letters to each of

9   the Defendants insisting that Defendants, and all those acting in concert with them,

10   cease any activity that contravenes their fiduciary duties and other obligations to

11   Edwards.   The letters demanded strict adherence to the terms of each Defendants'

12   respective agreements with Edwards, and demanded that Defendants return to Edwards

13   Trade Secret and Confidential and Proprietary Information in their possession or under

14   their control.   Annexed hereto as <u>Exhibit A</u> through <u>Exhibit D</u> are true and correct

15   copies of the demand letters to Slayden, Gilseth, McJilton and Stromgren, respectively.

16       3.     In addition, the demand letters enclosed a Statement Under Oath requiring

17   Defendants to certify that they had not and are not contacting or soliciting Edwards'

18   customers and/or employees to leave or transfer their business away from Edwards.   The

19   letters demanded a sworn Statement Under Oath by the close of business on October 5,

20   2007.  To date, however, Defendants' have not signed or returned the Statement Under

21   Oath.

22       4.     In response, by letter dated October 5, 2007, Defendants' counsel did not

23   dispute that Defendants were soliciting Edwards clients.   In addition, Defendants'

24   response acknowledged that Defendants took information and documents from Edwards,

25   including Browse Lists, Account Inquiry Sheets, and Realized Gain and Loss Reports for

26   all client accounts.   A true and correct copy of Defendants' October 5 letter is annexed

27   hereto as <u>Exhibit E</u>.

28

                KYL_SF457091

**SUPPLEMENTAL DECLARATION OF ANTHONY PADUANO IN SUPPORT OF PLAINTIFF A.G. EDWARDS & SONS, INC.'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER REGARDING PRELIMINARY INJUNCTION**

5.    As detailed in the Declaration of William Hatcher, sworn to on October 9, 2007 and submitted in support of this motion, the documents and information Defendants took are from Edwards' BrokerVision and Account Inquiry systems, both of which are password-protected. The information contained in these systems is essential and critical to Edwards' ability to service its clients and would have drastic consequences for Edwards in the hands of a competitor.

6.    Apparently recognizing that the materials they took may contain confidential and trade secret information of Edwards, in his October 5 letter, counsel for Defendants stated that he would gather the materials from Defendants and return them to Edwards, and Defendants would not keep copies. However, despite their obligation and promise to do so, to date, we have not received any of the documents misappropriated by Defendants.

7.    In addition, upon the abrupt resignations of Defendants, Edwards investigated the condition of its Santa Rosa office. After a review of the remaining contents of the office, Edwards was unable to locate certain files that should have been in the branch, including but not limited to, Account Reviews, Syndicate Files, B-Share Files, C-Share Files, Incoming Correspondence File, Advertising Files, as well as documents relating to customer complaints. These files contain confidential and proprietary information of Edwards and its clients, and it is a breach of Edwards' employment agreements for departing employees to maintain such information.

8.    Accordingly, unless Defendants' misconduct is immediately restrained and Defendants are enjoined from continuing to violate their agreements and other obligations owed to Edwards, Edwards will continue to suffer severe, permanent and irreparable damage.

**SUPPLEMENTAL DECLARATION OF ANTHONY PADUANO IN SUPPORT OF PLAINTIFF A.G. EDWARDS & SONS, INC.'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER REGARDING PRELIMINARY INJUNCTION**

1       I declare under penalty of perjury under the laws of the State of California that

2   the foregoing is true and correct.

3       Executed this _9th_ day of October, 2007, in Santa Rosa, California.

4

5

6                     ANTHONY PADUANO

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KYL_SF457035

DECLARATION OF ANTHONY PADUANO IN SUPPORT OF PLAINTIFF A.G. EDWARDS & SONS, INC.'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER REGARDING PRELIMINARY INJUNCTION

**PROOF OF SERVICE**

I, the undersigned, hereby declare that I am over the age of eighteen years, and I am not a party to the within action. My business address is Four Embarcadero Center, Suite 1500, San Francisco, CA 94111, and my telephone number is (415) 398-6000.

I am readily familiar with the practice of this business for collection and processing of documents for mailing with the United States Postal Service. Documents so collected and processed are placed for collection and deposit with the United States Postal Service that same day in the ordinary course of business.

On October 9, 2007, I served the foregoing documents described as:

**SUPPLEMENTAL DECLARATION OF ANTHONY PADUANO IN SUPPORT OF PLAINTIFF A.G. EDWARDS & SONS, INC.'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER REGARDING PRELIMINARY INJUNCTION**

on the parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

*Via e-mail to kcm@mgslaw.com and*                    *Via U.S. Mail*
*slau@mgslaw.com and via U.S. Mail*

**Kenneth Mennemeier, Esq.**                           **Denise Gilseth**
**Stephen Lau, Esq.**                                  **1255 Los Olivos**
**Mennemeier Glassman & Stroud LLP**                   **Santa Rosa, CA 95404**
**980 9th St., Suite 1700**
**Sacramento, CA 95814-2736**

☒  **BY MAIL**: I deposited such envelope(s) in the mail at San Francisco, California. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after deposit for mailing in this declaration.

☒  **BY E-MAIL:**  I also caused such document(s) to be served electronically via Keesal, Young & Logan's e-mail delivery system to the parties listed above.

Pursuant to California Rules of Court, Rule 201, and the Local Rules of the United States District Court, I certify that all originals and service copies (including exhibits) of the papers referred to herein were produced and reproduced on paper purchased as recycled, as defined by section 42202 of the Public Resources Code.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 9, 2007 at San Francisco, California.

_____
K'Ann M. Klein

KYL_SF457091

**SUPPLEMENTAL DECLARATION OF ANTHONY PADUANO IN SUPPORT OF PLAINTIFF A.G. EDWARDS & SONS, INC.'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER REGARDING PRELIMINARY INJUNCTION**

PADUANO & WEINTRAUB LLP
1251 AVENUE OF THE AMERICAS
NINTH FLOOR
NEW YORK, NEW YORK 10020

TELEPHONE: 212-785-9100
TELECOPIER: 212-785-9099

October 4, 2007

**BY FEDERAL EXPRESS and FAX**

Mr. Samuel Slayden
3188 Hendricks Road
Lakeport, California  95453

Dear Mr. Slayden:

We represent A.G. Edwards & Sons, Inc. ("Edwards"). We have reason to believe that you have contacted and solicited Edwards employees to leave the employment of Edwards, or have assisted your new employer Stifel Nicolaus & Company, Incorporated ("Stifel") in its efforts to hire Edwards' employees. Further, we understand that you have been contacting and soliciting Edwards' clients to transfer their accounts and business away from Edwards and that you have used Edwards' Trade Secret and Confidential and Proprietary Information to do so, or have assisted Stifel in its efforts to do so. This activity violates your obligations to Edwards under the law, your contractual obligations and Edwards' policies and requirements.

This letter is to put you on notice of our intention to protect Edwards' legal interests. Accordingly, we insist that you, and all those acting in concert with you, cease any activity that contravenes your fiduciary and other obligations to Edwards. We demand strict adherence to the terms of your Investment Broker Agreement, a copy of which is attached hereto. We further demand that you return to Edwards all Edwards' Trade Secret and Confidential and Proprietary Information in your possession or under your control (including copies therefrom, whether in electronic, computerized or magnetic form or in "hard copy").

Please provide a sworn Statement Under Oath (in the form attached hereto) by the close of business on October 5, 2007 certifying that you have not and are not contacting or soliciting Edwards' employees regarding the possibility of their leaving Edwards and that you are not contacting or soliciting Edwards' customers to transfer their accounts and business away from Edwards and that you are not assisting any other firm regarding the same. Please also verify that you have no

EXHIBIT _A_

PADUANO & WEINTRAUB LLP

Mr. Samuel Slayden
October 4, 2007
Page 2

Edwards' Trade Secret and Confidential and Proprietary Information in your possession, custody or control. Should we not receive this sworn Statement, then, without further notice to you, Edwards may seek and obtain all equitable or other relief to which it is entitled.

Please carefully review the enclosed Statement Under Oath. Please sign and date it in the presence of a Notary Public and telecopy it to me immediately, and mail the original to me. If there is any reason why you cannot sign the Statement Under Oath, please so notify me immediately. Your refusal to sign the Statement Under Oath will be construed as your admission that you have violated -- and plan to continue to violate -- your legal obligations to Edwards.

The conduct described above is in violation of your obligations to Edwards and constitutes, among other things, breach of fiduciary duty and wrongful interference with the business and/or contractual relationships between Edwards and its employees. Edwards will not tolerate such wrongdoing.

We insist that you maintain and preserve any documents (whether in electronic, computerized or magnetic form or in "hard copy") that may be relevant to your employment with Edwards, your employment with Stifel, or any Edwards' customer.

Yours sincerely,

Anthony Paduano

(Enclosure)

cc:    David M. Minnick, Esq.

## STATEMENT UNDER OATH

I, Samuel Slayden, declare under penalty of perjury:

1.      I submitted my resignation to Edwards on October 4, 2007.

2.      After making my best efforts to locate any and all documents or information of any kind or nature whatsoever concerning Edwards' business, customers and employees (whether in electronic, computerized or magnetic form or in "hard copy"), whether furnished by Edwards or obtained or prepared by me while associated with Edwards (including but not limited to computers and computer records), to the best of my knowledge and belief I no longer have in my possession, custody or control any such documents or any documents derived therefrom.

3.      I have also returned all software provided to me by Edwards and all back-up copies and diskettes.

4.      Through the date hereof I have honored, and going forward I shall honor, all of my fiduciary and other obligations to Edwards. This includes, without limitation, not contacting or soliciting Edwards' employees to leave their employment with Edwards and not assisting any firm, directly or indirectly, in the hire or employment of any Edwards' employee. It also includes, without limitation, not contacting or soliciting Edwards' customers to transfer their accounts or business away from Edwards and not assisting any firm in its efforts to do so.


_____
Samuel Slayden


Signed and sworn to before me
this          day of October 2007


_____
Notary Public

S. Slayden



# INVESTMENT BROKER
# AGREEMENT

### January 1984

*A.G. Edwards & Sons, Inc.*

Established 1887

Member New York Stock Exchange, Inc.

## INVESTMENT BROKER AGREEMENT

A. G. Edwards & Sons, Inc., a corporation formed under the laws of the State of Delaware ("Edwards"), hereby accepts your application for registration with the New York Stock Exchange, Inc., and the National Association of Securities Dealer, Inc. as an investment broker representing Edwards. In this regard, you desire and Edwards accepts your employment as an investment broker for the sale of securities and/or commodities.

In consideration of such acceptance and employment, you agree that:

1.  So long as you serve as an employee of Edwards, you will act only in Edwards' best interest. For that purpose, you will perform your work competently and diligently; and you will observe all directions given by officials of Edwards, all policies announced by Edwards, all regulations and procedures prescribed in Edwards' Policy and Procedures Manuals and Compliance Manuals as from time to time are altered or issued, and all applicable rules of regulatory authorities. You will conduct yourself as a loyal and faithful employee of Edwards, and you will in no event take any action which could harm Edwards' business or its relationships with its clients.

### Pre-Registration

2.  Prior to your registration by the proper authorities including state authorities, you will not solicit directly or indirectly, any order in any security and/or insurance product and/or commodity.

3.  In the event that prior to your proper registration any person or firm wishes to place an unsolicited order or transaction through you, you will not accept such an order or transaction nor will you transmit the order or transaction to your Branch Manager or an investment broker. You will, instead, refer such person to the Manager of the office. If an order or transaction results from you referring such a person to the Manager, the trade or transaction will be processed under your sales number, but the Manager will mark the branch office copy of the order ticket or other applicable document to indicate that the order was accepted and entered by him or her. No commission will be paid to you on any such order or transaction. Upon your registration, the account will automatically be assigned to you and commissions will be paid to you on any orders or transactions subsequent to your proper registration.

### Business Practices

4.  After your registration, you will confine your solicitations to and accept orders only from residents of the states where Edwards is a registered Broker/Dealer and you are registered as a salesperson for Edwards. You agree that it is your responsibility to contact the St. Louis office of Edwards to determine the registration status of a security in a given state before effecting transactions in that security in that state, and you will not effect any transactions in any security in any state unless such security is registered under the securities law of that state or exempt from such registration or unless such transaction is itself exempt from such law.

    In the event you become licensed as an insurance agent, broker or solicitor, you will confine your solications and insurance business to states where Edwards or an Edwards' subsidiary or affiliated company or agency is properly licensed for the product and/or insurance company involved, and where you are properly licensed for the product and insurance company involved.

    In the event new insurance, securities or commodities products are offered by Edwards which require separate licensing, registration or testing prior to the sale thereof, you agree that you will not offer or sell any such products until and unless you are properly licensed, registered or tested for said product.

5.  In the event you become licensed to solicit and sell insurance products, you will not solicit or sell any product of any insurance company not approved by Edwards and/or an Edwards' subsidiary or an affiliated company or agency.

6.  In dealing with clients of Edwards, you will make no representation which relates to a security not properly registered (or exempted) under the Securities Act of 1933, or which is so incomplete as to be misleading, or which is not based on facts appearing in generally recognized statistical and financial publications, manuals and financial sections of newspapers or available to the public in general. You are not authorized to waive any provision of Edwards' Customer's Agreement or its margin requirements.

7.  In connection with any underwriting, you understand that you may solicit and accept indications of interest from the public in the securities to be sold between the time of the filing of the Registration Statement with the Securities and Exchange Commission covering such securities and the effective date of the offering. The only printed matter that you will use to solicit such indications of interest is a current preliminary prospectus. If you should distribute such a preliminary prospectus to the public, you will send a revised preliminary prospectus. You will not confirm orders or promise stock on the basis of preliminary allocations made by Edwards' Syndicate Department.

8.  You will not in any way represent to any customer in connection with any security, commodity or insurance transaction that you or Edwards will indemnify the customer against loss.

9.  You will not rebate, directly or indirectly, to any person, firm or corporation any part of the compensation you may receive from Edwards or an Edwards' subsidiary or affiliated company or agency, and you will not pay any part of such compensation directly or indirectly to any person, firm or corporation as a bonus, commission, fee or other consideration, in connection with any securities, commodities and/or insurance business sought by, handled by or procured for you or Edwards or any subsidiary or affiliated company or agency of Edwards.

10. Without Edwards' prior written permission, you will not (I) personally lend money or in any manner grant credit to any customer of Edwards or (II) participate in the arrangement of credit for such customer outside of the facilities of Edwards or (III) become personally liable, directly or indirectly, on any evidence of indebtedness executed by any customer of Edwards in favor of a creditor of such customer or (IV) arrange for the extension or maintenance of credit for the purchase of securities in your own or family securities accounts on better terms than could be offered by Edwards. You also affirm that you are not now in violation of Regulation T of the Federal Reserve Board with respect to securities positions you hold and that you have listed all of your securities or commodities accounts on Schedule A annexed hereto.

### Employment Practices

11. You will become familiar with and abide by the rules and regulations of Edwards, the National Association of Securities Dealers, Inc., the New York Stock Exchange and other securities and commodities exchanges of which Edwards is a member. You will also become familiar with and abide by the laws and regulations relative to the securities and/or commodities business of the federal government and of the state or states where you are a registered salesperson. In the event you become registered to sell insurance products, you will become familiar with and abide by the laws and regulations relative to the insurance business of the state or states where you are a registered insurance salesperson.

12. You understand and agree that as part of Edwards' duty to supervise your activities in accordance with the Constitution and Rules of the New York Stock Exchange, the National Association of Securities Dealers, Inc., and the various commodity exchanges and applicable federal and state securities laws, you will, at any time upon Edwards' request, appear before an Edwards' officer, committee or person designated by Edwards and give full information upon any subject which relates to such of your activities as are subject to Edwards' supervision, and you will produce, upon Edwards' request, all of your records or documents, including but not limited to, personal bank statements and the like, relative to Edwards' inquiry.

13. You will clear any business correspondence written by you (including any handwritten memoranda and notes) with your Branch Manger prior to mailing such correspondence and retain duplicate copies of all such correspondence.

14. Without Edwards' prior consent you will not (I) conduct any television or radio broadcasts with reference to the securities, commodities or insurance business in general or any particular security, commodity or insurance product or (II) send out any advertisements, reports or market letters relating to any security, commodity or insurance product which has not been provided by Edwards or (III) publish in any manner any report or article written by you with reference to the securities, commodities or insurance business in general or any particular security, commodity or insurance product.

15. You will devote your efforts solely to the business of Edwards and Edwards' subsidiary or affiliated companies and agencies, and, unless prior written approval is granted by Edwards, you will not engage in any other business, occupation, job, work or employment during your employment by Edwards, including, but not limited to officerships or directorships in any company.

16. Unless prior written approval is granted by Edwards, you will not participate, directly or indirectly, in any security, commodity or insurance transaction which will not be processed through the facilities of Edwards or an Edwards' subsidiary or affiliated company or agency; nor will you, without Edwards' prior written permission, effect a cash or margin transaction or maintain a cash or margin account in securities or commodities, or have any direct or indirect financial interest in any such transaction or account, except with or through Edwards; nor will you, without Edwards' prior written permission, act on behalf of any party other than Edwards or an Edwards' subsidiary or affiliated company or agency in any matter. You will not contract or incur any indebtedness in the name of Edwards.

17. You will not take, accept or receive, directly or indirectly, from any person, firm, corporation or association other than Edwards, or a subsidiary or affiliated company or agency of Edwards, compensation of any nature in connection with any securities, commodities or insurance transaction or transactions, except with the prior written consent of Edwards.

18. You will notify Edwards promptly, if, during your employment you become involved in any litigation or if any judgments are adjudicated against you; or if your registration or license to sell or deal in securities, commodities and/or insurance or to function as an investment advisor is ever refused, suspended or revoked; or if you become enjoined, temporarily or otherwise, from selling or dealing in securities, commodities and/or insurance or from functioning as an investment advisor; or if you are arrested, summoned, arraigned, or indicted for a criminal offense; or if you become involved in bankruptcy proceedings.

19. Both during and after the time you serve as an employee of Edwards, you will not divulge to any person any information received during the course of your employment concerning the business of the firm and its financial affairs.

## Compensation

20. Your compensation will be based upon a credit for the commissions generated by you at the prevailing rate at the office at which you are employed less a debit for certain items (extension charges, loss charge backs, drafting charges, etc.) in accordance with Edwards' established policies. The commission credit is conditioned upon your continued employment with Edwards at the time such commissions are paid and received by Edwards and your continued employment with Edwards at the time such commissions are earned and no longer subject to refund by Edwards. In the event the purchaser of any insurance or annuity or contractual plan shall cease making the regular premium or investment payments thereon or shall cancel or surrender such policy or contract, any commissions or credits received thereon which are refundable to the insurance company or other issuer shall be immediately repaid by you to Edwards.

21. Except for insurance renewal commissions arising or derived from insurance sales prior to your employment, you agree that all contracts, policies and/or commissions received on the sale of any security, commodity, commodity futures contract, insurance product or other asset sought by, handled by or procured by you or Edwards or an Edwards' subsidiary or affiliated company or agency is the sole property of Edwards or the Edwards' subsidiary or affiliated company or agency, and you will forward all direct commission checks received by you to Edwards or an Edwards' subsidiary or affiliated company or agency, as the case may be.

## Termination

22. Either you or Edwards may terminate your employment at any time on two weeks' notice to the other or with two weeks' severance pays, and Edwards may also terminate your employment at any time without prior notice in the reasonable belief that you have violated any applicable law or regulatory rule, any of the firm's policies or any of these standard provisions. Upon any termination whatsoever, Edwards shall be liable to you only for commissions earned and not paid prior to the effective date of the termination less any debits or charges in accordance with Edwards' established policies or any debts you owe Edwards.

23.  In the event that your employment with Edwards ends at any time either through termination by Edwards or through resignation by you, you will surrender all training materials, account records, customers' statements and customers' files to Edwards, and you agree, in such event, that such termination or resignation, as the case may be, will constitute the forfeiture by you of your right to receive any commission on transactions effected, insurance business placed or plan payments made subsequent to the date of such termination or resignation.

24.  With respect to contractual plans and insurance sales, you agree to repay any commissions received that are in excess of the commissions earned by Edwards or Edwards' subsidiary or affiliate company or agency should the purchaser cease making regular premium, investment or installment payments or cancel or surrender the policy or contract. In the event of your termination from Edwards, you will refund the amount of any such prepaid but unearned commissions which exceed the actual commission received by Edwards at the time of your termination or resignation. You agree that you have no interest in, title to or claim for any commissions received by Edwards after the time of your termination or resignation.

### Hold Harmless

25.  You will indemnify and hold Edwards harmless against any and all losses suffered by Edwards as the result of the violation by you of any of the aforesaid agreements. Both during and after the time you serve as an employee of Edwards (no matter what the reason for termination of your employment), Edwards may find it reasonable in the circumstances to charge you with the amount of any losses or liabilities incurred by the firm as a result of errors, rule violations or violations of Edwards' policies to which you were a party while you were in Edwards' employ. In that event, you undertake to promptly pay Edwards the full amount assessed against you by Edwards.

### Arbitration

26.  You agree that any controversy or dispute arising between you and Edwards in respect to this agreement or your employment by Edwards shall be submitted for arbitration before the New York Stock Exchange, Inc., or the National Association of Securities Dealers, Inc., unless Edwards exercises its right to seek an injunction in the event you breach or threaten to breach any of these standard provisions or any other provisions of any agreement between you and Edwards.

### Miscellaneous

27.  The terms of your employment and these standard provisions will enure to the benefit of, and be binding upon, both you and Edwards and our respective successors and assigns. If any of these standard provisions are adjudged invalid, such judgment will not affect the enforceability of the remaining provisions. This agreement shall be governed by and construed in accordance with the laws of the State of Missouri even though you are not, or cease to be, a resident or employee in that state.

28.  "Insurance," "insurance products" and "insurance policies" shall include any and all products, contracts, policies, services or securities offered by or sold through an insurance company, including, but not limited to, all annuities, fixed or variable, retirement plans, Keogh plans, individual retirement accounts and annuities, life insurance, health insurance, accident insurance, liability insurance, and all other forms of insurance now or hereafter offered by an insurance company. "Insurance transactions" shall include the purchase or sale of any of the above. "Insurance commissions" shall include any monies paid by insurance companies or other parties as consideration for the purchase or sale of any of the above.

Please sign and return this letter to signify your agreement to the foregoing terms and conditions.

Very truly yours,

A. G. EDWARDS & SONS, INC.

By _____
      (Edwards' Officer Signature)

Agreed to and accepted:

_September 24_, 19_84_

_____
(Trainee/Transferee Signature)

_____
(Branch Office)

SCHEDULE A*

The following is a complete list of cash and margin accounts for securities or commodities in which I, my spouse or minor children have a financial interest.

| Title of Account | Carried by (Firm or Bank Name) | Account Number | *Date papers signed to transfer account to AGE |
|---|---|---|---|
| *Cash* | *A. G. Edwards* | *207-009-962-098* | *AGE Acct.* |

*Approval of your branch manager and the Compliance Department must be obtained if any such accounts are not immediately transferred to AGE.

Date _10/15/84_                _____
                                                    (Signature)

*Please use additional sheets, if required.      _SAMUEL W. SLAYDEN_
                                                              (Printed Name)

                                                _207   Santa Rosa_
                                                            (Branch)

-6-

PADUANO & WEINTRAUB LLP
1251 AVENUE OF THE AMERICAS
NINTH FLOOR
NEW YORK, NEW YORK 10020

TELEPHONE: 212-785-9100
TELECOPIER: 212-785-9099

October 4, 2007

**BY FEDERAL EXPRESS and FAX**

Ms. Denise Gilseth
1255 Los Olivos
Santa Rosa, California  95404

Dear Ms. Gilseth:

    We represent A.G. Edwards & Sons, Inc. ("Edwards").  We have reason to believe that you have contacted and solicited Edwards clients to transfer their accounts and business away from Edwards, or have assisted your new employer Stifel Nicolaus & Company, Incorporated ("Stifel") in its efforts to solicit Edwards' clients, and that you have used Edwards' Trade Secret and Confidential and Proprietary Information to do so.  This activity violates your obligations to Edwards under the law, your contractual obligations and Edwards' policies and requirements.

    This letter is to put you on notice of our intention to protect Edwards' legal interests.  Accordingly, we insist that you, and all those acting in concert with you, cease any activity that contravenes your fiduciary and other obligations to Edwards.  We demand strict adherence to the terms of your Investment Broker Agreement, a copy of which is attached hereto.  We further demand that you return to Edwards all Edwards' Trade Secret and Confidential and Proprietary Information in your possession or under your control (including copies therefrom, whether in electronic, computerized or magnetic form or in "hard copy").

    Please provide a sworn Statement Under Oath (in the form attached hereto) by the close of business on October 5, 2007 certifying that you are not contacting or soliciting Edwards' customers to transfer their accounts and business away from Edwards and that you are not assisting any other firm regarding the same. Please also verify that you have no Edwards' Trade Secret and Confidential and Proprietary Information in your possession, custody or control.  Should we not receive this sworn Statement, then, without further notice to you, Edwards may seek and obtain all equitable or other relief to which it is entitled.

EXHIBIT ___B___

PADUANO & WEINTRAUB LLP

Ms. Denise Gilseth
October 4, 2007
Page 2


Please carefully review the enclosed Statement Under Oath.  Please sign and date it in the presence of a Notary Public and telecopy it to me immediately, and mail the original to me.  If there is any reason why you cannot sign the Statement Under Oath, please so notify me immediately.  Your refusal to sign the Statement Under Oath will be construed as your admission that you have violated -- and plan to continue to violate -- your legal obligations to Edwards.

The conduct described above is in violation of your obligations to Edwards and constitutes, among other things, breach of fiduciary duty and wrongful interference with the business and/or contractual relationships between Edwards and its employees.  Edwards will not tolerate such wrongdoing.

We insist that you maintain and preserve any documents (whether in electronic, computerized or magnetic form or in "hard copy") that may be relevant to your employment with Edwards, your employment with Stifel, or any Edwards' customer.


Yours sincerely,

Anthony Paduano

Anthony Paduano


(Enclosure)

cc:    David M. Minnick, Esq.

## STATEMENT UNDER OATH

I, Denise Gilseth, declare under penalty of perjury:

1.      I submitted my resignation to Edwards on October 4, 2007.

2.      After making my best efforts to locate any and all documents or information of any kind or nature whatsoever concerning Edwards' business, customers and employees (whether in electronic, computerized or magnetic form or in "hard copy"), whether furnished by Edwards or obtained or prepared by me while associated with Edwards (including but not limited to computers and computer records), to the best of my knowledge and belief I no longer have in my possession, custody or control any such documents or any documents derived therefrom.

3.      I have also returned all software provided to me by Edwards and all back-up copies and diskettes.

4.      Through the date hereof I have honored, and going forward I shall honor, all of my fiduciary and other obligations to Edwards. This includes, without limitation, not contacting or soliciting Edwards' customers to transfer their accounts or business away from Edwards and not assisting any firm in its efforts to do so.


_____
                    Denise Gilseth


Signed and sworn to before me
this          day of October 2007


_____
          Notary Public

D. Gilbert



# INVESTMENT BROKER
# AGREEMENT

## January 1984

*A. G. Edwards & Sons, Inc.*

Established 1887

## INVESTMENT BROKER AGREEMENT

A. G. Edwards & Sons, Inc., a corporation formed under the laws of the State of Delaware ("Edwards"), hereby accepts your application for registration with the New York Stock Exchange, Inc., and the National Association of Securities Dealer, Inc. as an investment broker representing Edwards. In this regard, you desire and Edwards accepts your employment as an investment broker for the sale of securities and/or commodities.

In consideration of such acceptance and employment, you agree that:

1.  So long as you serve as an employee of Edwards, you will act only in Edwards' best interest. For that purpose, you will perform your work competently and diligently; and you will observe all directions given by officials of Edwards, all policies announced by Edwards, all regulations and procedures prescribed in Edwards' Policy and Procedures Manuals and Compliance Manuals as from time to time are altered or issued, and all applicable rules of regulatory authorities. You will conduct yourself as a loyal and faithful employee of Edwards, and you will in no event take any action which could harm Edwards' business or its relationships with its clients.

### Pre-Registration

2.  Prior to your registration by the proper authorities including state authorities, you will not solicit directly or indirectly, any order in any security and/or insurance product and/or commodity.

3.  In the event that prior to your proper registration any person or firm wishes to place an unsolicited order or transaction through you, you will not accept such an order or transaction nor will you transmit the order or transaction to your Branch Manager or an investment broker. You will, instead, refer such person to the Manager of the office. If an order or transaction results from you referring such a person to the Manager, the trade or transaction will be processed under your sales number, but the Manager will mark the branch office copy of the order ticket or other applicable document to indicate that the order was accepted and entered by him or her. No commission will be paid to you on any such order or transaction. Upon your registration, the account will automatically be assigned to you and commissions will be paid to you on any orders or transactions subsequent to your proper registration.

### Business Practices

4.  After your registration, you will confine your solicitations to and accept orders only from residents of the states where Edwards is a registered Broker/Dealer and you are registered as a salesperson for Edwards. You agree that it is your responsibility to contact the St. Louis office of Edwards to determine the registration status of a security in a given state before effecting transactions in that security in that state, and you will not effect any transactions in any security in any state unless such security is registered under the securities law of that state or exempt from such registration or unless such transaction is itself exempt from such law.

    In the event you become licensed as an insurance agent, broker or solicitor, you will confine your solications and insurance business to states where Edwards or an Edwards' subsidiary or affiliated company or agency is properly licensed for the product and/or insurance company involved, and where you are properly licensed for the product and insurance company involved.

    In the event new insurance, securities or commodities products are offered by Edwards which require separate licensing, registration or testing prior to the sale thereof, you agree that you will not offer or sell any such products until and unless you are properly licensed, registered or tested for said product.

5.  In the event you become licensed to solicit and sell insurance products, you will not solicit or sell any product of any insurance company not approved by Edwards and/or an Edwards' subsidiary or an affiliated company or agency.

6.  In dealing with clients of Edwards, you will make no representation which relates to a security not properly registered (or exempted) under the Securities Act of 1933, or which is so incomplete as to be misleading, or which is not based on facts appearing in generally recognized statistical and financial publications, manuals and financial sections of newspapers or available to the public in general. You are not authorized to waive any provision of Edwards' Customer's Agreement or its margin requirements.

7. In connection with any underwriting, you understand that you may solicit and accept indications of interest from the public in the securities to be sold between the time of the filing of the Registration Statement with the Securities and Exchange Commission covering such securities and the effective date of the offering. The only printed matter that you will use to solicit such indications of interest is a current preliminary prospectus. If you should distribute such a preliminary prospectus to the public, you will send a revised preliminary prospectus. You will not confirm orders or promise stock on the basis of preliminary allocations made by Edwards' Syndicate Department.

8. You will not in any way represent to any customer in connection with any security, commodity or insurance transaction that you or Edwards will indemnify the customer against loss.

9. You will not rebate, directly or indirectly, to any person, firm or corporation any part of the compensation you may receive from Edwards or an Edwards' subsidiary or affiliated company or agency, and you will not pay any part of such compensation directly or indirectly to any person, firm or corporation as a bonus, commission, fee or other consideration, in connection with any securities, commodities and/or insurance business sought by, handled by or procured for you or Edwards or any subsidiary or affiliated company or agency of Edwards.

10. Without Edwards' prior written permission, you will not (I) personally lend money or in any manner grant credit to any customer of Edwards or (II) participate in the arrangement of credit for such customer outside of the facilities of Edwards or (III) become personally liable, directly or indirectly, on any evidence of indebtedness executed by any customer of Edwards in favor of a creditor of such customer or (IV) arrange for the extension or maintenance of credit for the purchase of securities in your own or family securities accounts on better terms than could be offered by Edwards. You also affirm that you are not now in violation of Regulation T of the Federal Reserve Board with respect to securities positions you hold and that you have listed all of your securities or commodities accounts on Schedule A annexed hereto.

### Employment Practices

11. You will become familiar with and abide by the rules and regulations of Edwards, the National Association of Securities Dealers, Inc., the New York Stock Exchange and other securities and commodities exchanges of which Edwards is a member. You will also become familiar with and abide by the laws and regulations relative to the securities and/or commodities business of the federal government and of the state or states where you are a registered salesperson. In the event you become registered to sell insurance products, you will become familiar with and abide by the laws and regulations relative to the insurance business of the state or states where you are a registered insurance salesperson.

12. You understand and agree that as part of Edwards' duty to supervise your activities in accordance with the Constitution and Rules of the New York Stock Exchange, the National Association of Securities Dealers, Inc., and the various commodity exchanges and applicable federal and state securities laws, you will, at any time upon Edwards' request, appear before an Edwards' officer, committee or person designated by Edwards and give full information upon any subject which relates to such of your activities as are subject to Edwards' supervision, and you will produce, upon Edwards' request, all of your records or documents, including but not limited to, personal bank statements and the like, relative to Edwards' inquiry.

13. You will clear any business correspondence written by you (including any handwritten memoranda and notes) with your Branch Manger prior to mailing such correspondence and retain duplicate copies of all such correspondence.

14. Without Edwards' prior consent you will not (I) conduct any television or radio broadcasts with reference to the securities, commodities or insurance business in general or any particular security, commodity or insurance product or (II) send out any advertisements, reports or market letters relating to any security, commodity or insurance product which has not been provided by Edwards or (III) publish in any manner any report or article written by you with reference to the securities, commodities or insurance business in general or any particular security, commodity or insurance product.

15. You will devote your efforts solely to the business of Edwards and Edwards' subsidiary or affiliated companies and agencies, and, unless prior written approval is granted by Edwards, you will not engage in any other business, occupation, job, work or employment during your employment by Edwards, including, but not limited to officerships or directorships in any company.

16. Unless prior written approval is granted by Edwards, you will not participate, directly or indirectly, in any security, commodity or insurance transaction which will not be processed through the facilities of Edwards or an Edwards' subsidiary or affiliated company or agency; nor will you, without Edwards' prior written permission, effect a cash or margin transaction or maintain a cash or margin account in securities or commodities, or have any direct or indirect financial interest in any such transaction or account, except with or through Edwards; nor will you, without Edwards' prior written permission, act on behalf of any party other than Edwards or an Edwards' subsidiary or affiliated company or agency in any matter. You will not contract or incur any indebtedness in the name of Edwards.

17. You will not take, accept or receive, directly or indirectly, from any person, firm, corporation or association other than Edwards, or a subsidiary or affiliated company or agency of Edwards, compensation of any nature in connection with any securities, commodities or insurance transaction or transactions, except with the prior written consent of Edwards.

18. You will notify Edwards promptly, if, during your employment you become involved in any litigation or if any judgments are adjudicated against you; or if your registration or license to sell or deal in securities, commodities and/or insurance or to function as an investment advisor is ever refused, suspended or revoked; or if you become enjoined, temporarily or otherwise, from selling or dealing in securities, commodities and/or insurance or from functioning as an investment advisor; or if you are arrested, summoned, arraigned, or indicted for a criminal offense; or if you become involved in bankruptcy proceedings.

19. Both during and after the time you serve as an employee of Edwards, you will not divulge to any person any information received during the course of your employment concerning the business of the firm and its financial affairs.

### Compensation

20. Your compensation will be based upon a credit for the commissions generated by you at the prevailing rate at the office at which you are employed less a debit for certain items (extension charges, loss charge backs, drafting charges, etc.) in accordance with Edwards' established policies. The commission credit is conditioned upon your continued employment with Edwards at the time such commissions are paid and received by Edwards and your continued employment with Edwards at the time such commissions are earned and no longer subject to refund by Edwards. In the event the purchaser of any insurance or annuity or contractual plan shall cease making the regular premium or investment payments thereon or shall cancel or surrender such policy or contract, any commissions or credits received thereon which are refundable to the insurance company or other issuer shall be immediately repaid by you to Edwards.

21. Except for insurance renewal commissions arising or derived from insurance sales prior to your employment, you agree that all contracts, policies and/or commissions received on the sale of any security, commodity, commodity futures contract, insurance product or other asset sought by, handled by or procured by you or Edwards or an Edwards' subsidiary or affiliated company or agency is the sole property of Edwards or the Edwards' subsidiary or affiliated company or agency, and you will forward all direct commission checks received by you to Edwards or an Edwards' subsidiary or affiliated company or agency, as the case may be.

### Termination

22. Either you or Edwards may terminate your employment at any time on two weeks' notice to the other or with two weeks' severance pays, and Edwards may also terminate your employment at any time without prior notice in the reasonable belief that you have violated any applicable law or regulatory rule, any of the firm's policies or any of these standard provisions. Upon any termination whatsoever, Edwards shall be liable to you only for commissions earned and not paid prior to the effective date of the termination less any debits or charges in accordance with Edwards' established policies or any debts you owe Edwards.

23. In the event that your employment with Edwards ends at any time either through termination by Edwards or through resignation by you, you will surrender all training materials, account records, customers' statements and customers' files to Edwards, and you agree, in such event, that such termination or resignation, as the case may be, will constitute the forfeiture by you of your right to receive any commission on transactions effected, insurance business placed or plan payments made subsequent to the date of such termination or resignation.

24. With respect to contractual plans and insurance sales, you agree to repay any commissions received that are in excess of the commissions earned by Edwards or Edwards' subsidiary or affiliate company or agency should the purchaser cease making regular premium, investment or installment payments or cancel or surrender the policy or contract. In the event of your termination from Edwards, you will refund the amount of any such prepaid but unearned commissions which exceed the actual commission received by Edwards at the time of your termination or resignation. You agree that you have no interest in, title to or claim for any commissions received by Edwards after the time of your termination or resignation.

## Hold Harmless

25. You will indemnify and hold Edwards harmless against any and all losses suffered by Edwards as the result of the violation by you of any of the aforesaid agreements. Both during and after the time you serve as an employee of Edwards (no matter what the reason for termination of your employment), Edwards may find it reasonable in the circumstances to charge you with the amount of any losses or liabilities incurred by the firm as a result of errors, rule violations or violations of Edwards' policies to which you were a party while you were in Edwards' employ. In that event, you undertake to promptly pay Edwards the full amount assessed against you by Edwards.

## Arbitration

26. You agree that any controversy or dispute arising between you and Edwards in respect to this agreement or your employment by Edwards shall be submitted for arbitration before the New York Stock Exchange, Inc., or the National Association of Securities Dealers, Inc., unless Edwards exercises its right to seek an injunction in the event you breach or threaten to breach any of these standard provisions or any other provisions of any agreement between you and Edwards.

## Miscellaneous

27. The terms of your employment and these standard provisions will enure to the benefit of, and be binding upon, both you and Edwards and our respective successors and assigns. If any of these standard provisions are adjudged invalid, such judgment will not affect the enforceability of the remaining provisions. This agreement shall be governed by and construed in accordance with the laws of the State of Missouri even though you are not, or cease to be, a resident or employee in that state.

28. "Insurance," "insurance products" and "insurance policies" shall include any and all products, contracts, policies, services or securities offered by or sold through an insurance company, including, but not limited to, all annuities, fixed or variable, retirement plans, Keogh plans, individual retirement accounts and annuities, life insurance, health insurance, accident insurance, liability insurance, and all other forms of insurance now or hereafter offered by an insurance company. "Insurance transactions" shall include the purchase or sale of any of the above. "Insurance commissions" shall include any monies paid by insurance companies or other parties as consideration for the purchase or sale of any of the above.

4

Please sign and return this letter to signify your agreement to the foregoing terms and conditions.

Very truly yours,

A. G. EDWARDS & SONS, INC.

By _____
                (Edwards' Officer Signature)

Agreed to and accepted:

_____ , 19 86

_____
        (Trainee/Transferee Signature)

_____
        (Branch Office)

## SCHEDULE A*

The following is a complete list of cash and margin accounts for securities or commodities in which I, my spouse or minor children have a financial interest.

| Title of Account | Carried by (Firm or Bank Name) | Account Number | *Date papers signed to transfer account to AGE |
|---|---|---|---|
| Fred O. Gilseth & Denise S Gilseth J/T | BEHR | | |
| Denise Gilseth profit shg. | | | |
| BEHR cust the Denise Gilseth IRA | | | |

* Approval of your branch manager and the Compliance Department must be obtained if any such accounts are not immediately transferred to AGE.

Date ___7/15/86___

_____
(Signature)

* Please use additional sheets, if required.

___Denise S Gilseth___
(Printed Name)

___Santa Rosa___
(Branch)

PADUANO & WEINTRAUB LLP

1251 AVENUE OF THE AMERICAS
NINTH FLOOR
NEW YORK, NEW YORK 10020

TELEPHONE: 212-785-9100
TELECOPIER: 212-785-9099

October 4, 2007

**BY FEDERAL EXPRESS and FAX**

Ms. Cathy McJilton
5531 Rainbow Circle
Santa Rosa, California  95409

Dear Ms. McJilton:

We represent A.G. Edwards & Sons, Inc. ("Edwards"). We have reason to believe that you have contacted and solicited Edwards clients to transfer their accounts and business away from Edwards, or have assisted your new employer Stifel Nicolaus & Company, Incorporated ("Stifel") in its efforts to solicit Edwards' clients, and that you have used Edwards' Trade Secret and Confidential and Proprietary Information to do so. This activity violates your obligations to Edwards under the law, your contractual obligations and Edwards' policies and requirements.

This letter is to put you on notice of our intention to protect Edwards' legal interests. Accordingly, we insist that you, and all those acting in concert with you, cease any activity that contravenes your fiduciary and other obligations to Edwards. We demand strict adherence to the terms of your Financial Associate Agreement, a copy of which is attached hereto. We further demand that you return to Edwards all Edwards' Trade Secret and Confidential and Proprietary Information in your possession or under your control (including copies therefrom, whether in electronic, computerized or magnetic form or in "hard copy").

Please provide a sworn Statement Under Oath (in the form attached hereto) by the close of business on October 5, 2007 certifying that you are not contacting or soliciting Edwards' customers to transfer their accounts and business away from Edwards and that you are not assisting any other firm regarding the same. Please also verify that you have no Edwards' Trade Secret and Confidential and Proprietary Information in your possession, custody or control. Should we not receive this sworn Statement, then, without further notice to you, Edwards may seek and obtain all equitable or other relief to which it is entitled.

EXHIBIT _C_

PADUANO & WEINTRAUB LLP

Ms. Cathy McJilton
October 4, 2007
Page 2


Please carefully review the enclosed Statement Under Oath.  Please sign and date it in the presence of a Notary Public and telecopy it to me immediately, and mail the original to me.  If there is any reason why you cannot sign the Statement Under Oath, please so notify me immediately.  Your refusal to sign the Statement Under Oath will be construed as your admission that you have violated -- and plan to continue to violate -- your legal obligations to Edwards.

The conduct described above is in violation of your obligations to Edwards and constitutes, among other things, breach of fiduciary duty and wrongful interference with the business and/or contractual relationships between Edwards and its employees.  Edwards will not tolerate such wrongdoing.

We insist that you maintain and preserve any documents (whether in electronic, computerized or magnetic form or in "hard copy") that may be relevant to your employment with Edwards, your employment with Stifel, or any Edwards' customer.

Yours sincerely,

*Anthony Paduano*

Anthony Paduano


(Enclosure)

cc:    David M. Minnick, Esq.

## STATEMENT UNDER OATH

I, Cathy McJilton, declare under penalty of perjury:

1.    I submitted my resignation to Edwards on October 4, 2007.

2.    After making my best efforts to locate any and all documents or information of any kind or nature whatsoever concerning Edwards' business, customers and employees (whether in electronic, computerized or magnetic form or in "hard copy"), whether furnished by Edwards or obtained or prepared by me while associated with Edwards (including but not limited to computers and computer records), to the best of my knowledge and belief I no longer have in my possession, custody or control any such documents or any documents derived therefrom.

3.    I have also returned all software provided to me by Edwards and all back-up copies and diskettes.

4.    Through the date hereof I have honored, and going forward I shall honor, all of my fiduciary and other obligations to Edwards.  This includes, without limitation, not contacting or soliciting Edwards' customers to transfer their accounts or business away from Edwards and not assisting any firm in its efforts to do so.


_____
        Cathy McJilton



Signed and sworn to before me
this          day of October 2007


_____
      Notary Public

C. McJillton

# A.G.Edwards

One North Jefferson
St. Louis, MO 63103

## Financial Associate Agreement

In the event A.G. Edwards & Sons, Inc., a corporation formed under the laws of the state of Delaware ("Edwards"), accepts your application for employment and registration with the New York Stock Exchange, Inc., and the National Association of Securities Dealers, Inc. as a financial associate for Edwards and if you accept employment with Edwards, you will be an employee at will of Edwards, and your employment may be terminated with or without cause and with or without notice.

In consideration of such acceptance and employment, you agree that:

**1.**  So long as you serve as an employee of Edwards, you will act only in Edwards' best interest. For that purpose, you will perform your work competently and diligently; and you will observe all directions given by officials of Edwards, all policies announced by Edwards, all regulations and procedures prescribed in Edwards' Policy and Procedures Manuals and other manuals as from time to time are altered or issued, and all applicable rules of regulatory authorities. You will conduct yourself as a loyal and faithful employee of Edwards, and you will in no event take any action which could harm Edwards' business or its relationships with its customers/clients.

**2.**  NOTHING HEREIN IS A PROMISE OF EMPLOYMENT FOR A FIXED TERM. Edwards may terminate your employment for any reason or for no reason, just as you may resign at any time.

### Business Practices

**3.**  Prior to your registration by the proper authorities including state authorities, you will not solicit, receive or transmit, directly or indirectly, any order in any security and/or insurance product and/or commodity.

**4.**  In the event that prior to your proper registration any person or firm wishes to place an unsolicited order or transaction through you, you will not accept such an order or transaction nor will you transmit the order or transaction to your branch manager or an investment broker. You will, instead, refer such person to the manager of the office.

**5.**  After your registration, you will confine your solicitations to and accept orders only from residents of the states where Edwards is a registered broker/dealer and you are registered as a salesperson for Edwards. You agree that it is your responsibility to contact the St. Louis office of Edwards to determine the registration status of a security in a given state before effecting transactions in that security in that state, and you will not effect any transactions in any security in any state unless such security is registered under the securities law of that state or exempt from such registration or unless such transaction is itself exempt from such law.

In the event you become licensed as an insurance agent, broker or solicitor, you will confine your solicitations and

05/00

insurance business to states where Edwards or an Edwards' subsidiary or affiliated company or agency is properly licensed for the product and/or insurance company involved, and where you are properly licensed for the product and insurance company involved.

In the event new insurance, securities or commodities products are offered by Edwards which require separate licensing, registration or testing prior to the sale thereof, you agree that you will not offer or sell any such products until and unless you are properly licensed, registered or tested for said product.

**6.**  In the event you become licensed to solicit and sell insurance products, you will not solicit or sell any product of any insurance company not approved by Edwards and/or an Edwards' subsidiary or an affiliated company or agency.

**7.**  In dealing with customers/clients of Edwards, you will make no representation which relates to a security not properly registered (or exempted) under the Securities Act of 1933, or which is so incomplete as to be misleading, or which is not based on facts appearing in generally recognized statistical and financial publications, manuals and financial sections of newspapers or available to the public in general. You are not authorized to waive any provision of Edwards' Customer/Client's Agreement or its margin requirements.

**8.**  You will not take or receive, directly or indirectly, a share in the profits of any account of a customer/client, or share in any losses sustained in any such account. You will not borrow money or securities from a customer/client of Edwards unless the customer/client is a financial institution engaged in the business of loaning funds or securities.

**9.**  You will not, without Edwards' prior written permission, effect a cash or margin transaction or maintain a cash or margin account in securities or commodities, or have any direct or indirect financial interest in any such transaction or account, except with or through Edwards.

**10.**  In connection with any underwriting, you understand that you may solicit and accept indications of interest from the public in the securities to be sold between the time of the filing of the Registration Statement with the Securities and Exchange Commission covering such securities and the effective date of the offering. The only printed matter that you will use to solicit such indications of interest is a current preliminary prospectus. If you should distribute such a preliminary prospectus to the public, you will send a revised preliminary prospectus. You will not confirm orders or promise stock on the basis of preliminary allocations made by Edwards' Syndicate Department.

**11.**  You will not in any way represent to any customer/client in connection with any security, commodity or insurance transaction that you or Edwards will indemnify the customer/client against loss.

Financial Associate Agreement

**12.** You will not rebate, directly or indirectly, to any person, firm or corporation any part of the compensation you may receive from Edwards or an Edwards' subsidiary or affiliated company or agency, and you will not pay any part of such compensation directly or indirectly to any person, firm or corporation as a bonus, commission, fee or other consideration, in connection with any securities, commodities and/or insurance business sought by, handled by or procured for you or Edwards or any subsidiary or affiliated company or agency of Edwards.

**13.** Without Edwards' prior written permission, you will not (I) personally lend money or in any manner grant credit to any customer/client of Edwards or (II) participate in the arrangement of credit for such customer/client outside of the facilities of Edwards or (III) become personally liable, directly or indirectly, on any evidence of indebtedness executed by any customer/client of Edwards in favor of a creditor of such customer/client or (IV) arrange for the extension or mainte-nance of credit for the purchase of securities in your own or family securities accounts on better terms than could be offered by Edwards. You also affirm that you are not now in violation of Regulation T of the Federal Reserve Board with respect to securities positions you hold and that you have listed all of your securities or commodities accounts on Schedule A annexed hereto.

**Employment Practices**

**14.** You will become familiar with and abide by the rules and regulations of Edwards, the National Association of Securities Dealers, Inc., the New York Stock Exchange, Inc. and other securities and commodities exchanges of which Edwards is a member. You will also become familiar with and abide by the laws and regulations relative to the securities and/or commodi-ties business of the federal government and of the state or states where you are a registered salesperson. In the event you become registered to sell insurance products, you will become familiar with and abide by the laws and regulations relative to the insurance business of the state or states where you are a registered insurance salesperson.

**15.** You understand and agree that as part of Edwards' duty to supervise your activities in accordance with the Constitution and Rules of the New York Stock Exchange, Inc., the National Association of Securities Dealers, Inc., and the various com-modity exchanges and applicable federal and state securities laws, you will, at any time upon Edwards' request, appear before an Edwards' officer, committee or person designated by Edwards and give full information upon any subject which relates to such of your activities as are subject to Edwards' supervision, and you will produce, upon Edwards' request, all of your records or documents, including but not limited to, personal bank statements and the like, relative to Edwards' inquiry.

**16.** You will clear any business correspondence written by you (including any handwritten memoranda and notes) with your Branch Manager prior to mailing such correspondence and retain duplicate copies of all such correspondence. All e-mails, electronic transmissions and faxes relating to the business of A.G. Edwards or are sent or received using equip-ment of A.G. Edwards shall be sent or received only in accor-dance with A.G. Edwards policies and procedures.
05/00

**17.** Without Edwards' prior consent you will not (I) conduct any television or radio broadcasts with reference to the securities, commodities or insurance business in general or any particular security, commodity or insurance product or (II) send out any advertisements, reports or market letters relating to any security, commodity or insurance product which has not been approved by Edwards or (III) publish in any manner any report or article written by you with reference to the securities, commodities or insurance business in general or any particular security, commodity or insurance product.

**18.** You will devote your efforts solely to the business of Edwards and Edwards' subsidiary or affiliated companies and agencies, and, unless prior written approval is granted by Edwards, you will not engage in any other business, occupation, job, work or employment during your employment by Edwards, including, but not limited to officerships or directorships in any company.

**19.** Unless prior written approval is granted by Edwards, you will not participate, directly or indirectly, in any security, commodity or insurance transaction which will not be processed through the facilities of Edwards or an Edwards' subsidiary or affiliated company or agency; nor will you, without Edwards' prior written permission, effect a cash or margin transaction or maintain a cash or margin account in securities or commodities, or have any direct or indirect financial interest in any such transaction or account, except with or through Edwards; nor will you, without Edwards' prior written permission, act on behalf of any party other than Edwards or an Edwards' subsidiary or affiliated company or agency in any matter. You will not contract or incur any indebtedness in the name of Edwards.

**20.** You will not take, accept or receive, directly or indirectly, from any person, firm, corporation or association other than Edwards, or a subsidiary or affiliated company or agency of Edwards, compensation of any nature in connection with any securities, commodities or insurance transaction or transac-tions, except with the prior written consent of Edwards.

**21.** You will notify Edwards promptly if, during your employ-ment, you become involved in any litigation or if any judg-ments are adjudicated against you; or if your registration or license to sell or deal in securities, commodities and/or insurance or to function as an investment advisor is ever refused, suspended or revoked; or if you become enjoined, temporarily or otherwise, from selling or dealing in securities, commodities and/or insurance or from functioning as an investment advisor; or if you are arrested, summoned, arraigned, or indicted for a criminal offense; or if you become involved in bankruptcy proceedings.

**22.** Both during and after the time you serve as an employee of Edwards, you will not divulge to any person any information received during the course of your employment concerning the business of the firm and its financial affairs.

**23.** In the event you subsequently wish to be registered with Edwards as an investment broker, you agree that (a) you will give six (6) months notice prior to formally applying to be an investment broker; (b) you will accept and handle only those customer/client accounts which are approved by your branch

Financial Associate Agreement                                                                page 3

manager; (c) you will execute the appropriate Edwards' supplementary training agreement for an Investment Broker; and (d) you will participate in the Edwards' Investment Broker sales training program or other training program prescribed by Edwards' Training Department. You understand and agree that you shall not apply to be an investment broker prior to twenty-four (24) months of continuous employment without your branch manager's approval.

## Compensation

**24.** Your compensation will be based upon a salary and, in particular situations, a portion of the credit for the commissions or fees generated by accounts serviced by you at the prevailing rate at the office at which you are employed less debits for certain items including losses arising from transactions undertaken by customers/clients whose accounts are serviced by you, losses from settlements, awards or judgments arising in connection with customer/client complaints, extension charges, account debit balances, loss chargebacks, drafting charges, etc., in accordance with Edwards' established policies. Your compensation credit is conditioned upon your continued employment with Edwards at the time such commissions or fees are paid and received by Edwards and your continued employment with Edwards at the time such commissions or fees are earned and no longer subject to refund by Edwards. In the event the purchaser of any insurance or annuity or contractual plan shall cease making the regular premium or investment payments' thereon or shall cancel or surrender such policy or contract, any commissions or credits received thereon which are refundable to the insurance company or other issuer shall be immediately repaid by you to Edwards. In the event a customer/client shall cease making the regular fee payments for any fee-based account, managed or otherwise, or shall cancel or terminate any fee-based agreement, any fees or credits received thereon which are refundable to the customer/client shall be immediately repaid by you to Edwards.

## Records and Documents

**25.** All records and documents, whether original, duplicated, computerized, memorized, handwritten, or in any other form, and the information contained thereon, concerning the business and affairs of Edwards, including without limitation the names, addresses, telephone numbers, financial information, and assets and obligations carried in any account of any customer/client, customer/client lead or prospect ("Account"), and the books, papers, records and recordings furnished to you during your training program, are confidential and are the sole and exclusive property of Edwards. These records, documents and information, whether provided to you by Edwards or by any Account, is entrusted to you as an employee and representative of Edwards. You will not use or remove any records, records or information from the Edwards office except for the sole purpose of conducting business on behalf of Edwards. You agree not to divulge or disclose these records, documents or information to any third party and, under no circumstances, will you reveal or permit these records, documents or information to become known to any individual or organization which does business in securities, commodities and financial futures,

insurance or any other lines of business in which Edwards or any of its affiliates is engaged.

These records, documents and information are not generally known outside Edwards and are kept confidential within Edwards. This information was acquired by a great expenditure of time, effort and money, is unique and cannot be lawfully duplicated or easily acquired. You agree that these records and documents are the property of Edwards and deserve trade secret protection.

## Termination

**26.** Edwards may terminate your employment at any time without prior notice with or without cause. Upon your termination for any reason whatsoever, Edwards shall be liable to you only for salary earned and not paid prior to the effective date of the termination less any debits or charges in accordance with Edwards' established policies or any debts you owe Edwards.

**27.** In the event that your employment with Edwards ends at any time either through termination by Edwards or through resignation by you, you will surrender all training materials, account records, customer's/client's statements and customer's/client's files to Edwards, and you agree, in such event, that such termination or resignation, as the case may be, will constitute the forfeiture by you of your right, if any, to receive any commission on transactions effected, insurance business placed or plan payments made subsequent to the date of such termination or resignation.

**28.** With respect to contractual plans, insurance sales, management programs and fee-based accounts, you agree to repay any portion of the commissions or fees received by you that are in excess of the commissions or fees earned by Edwards or Edwards' subsidiary or affiliated company or agency should the purchaser or customer/client cease making regular premium, investment, installment or fee payments or cancel or surrender the policy, contract or account. In the event of your termination from Edwards, you will refund the amount of any portion of the prepaid but unearned commissions or fees received by you which exceed the actual commissions or fees received by Edwards at the time of your termination or resignation. You agree that you have no interest in, title to or claim for any commissions or fees received by Edwards after the time of your termination or resignation.

**29.** You will not recruit, entice, induce or solicit, directly or indirectly, during your employment with Edwards or for a period of one year following your termination of employment by Edwards, any employee of Edwards or any of its affiliates for employment with any other organization that does business in securities, commodities and financial futures, insurance or any other lines of business in which Edwards or any of its affiliates is engaged.

**30.** If, at any time you resign from Edwards, provoke your termination, or are terminated for cause, you agree that for a period of one year following your termination, you will not solicit by mail, by phone, by personal meeting, or by any other means, either directly or indirectly, any Account whom you served or whose name became known to you during your employment at Edwards at any office and in any capacity. Your agreement "not to solicit" means that you will not, during your

05/00

Financial Associate Agreement                                                                 page 4

employment and thereafter, initiate any contact or communication of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account to transfer from Edwards to any other person or organization that does business in securities, commodities and financial futures, insurance or any other lines of business in which Edwards or any of its affiliates is engaged, to open a new account with any such person or organization, or to otherwise discontinue its business relationship with Edwards.

### Hold Harmless

**31.** You will indemnify and hold Edwards harmless from any and all losses suffered by Edwards as a result of the violation by you of any of the aforesaid agreements, any loss from transactions in accounts serviced by you, any settlements, awards or judgments arising from complaints by customers/ clients serviced by you. Both during and after the time you serve as an employee of Edwards (no matter what the reason for termination of your employment), Edwards may find it reasonable in the circumstances to charge you with the amount of any losses or liabilities incurred by the firm as a result of errors, rule violations or violations of Edwards' policy, transactions in accounts serviced by you or settlements, awards or judgments to customers/clients serviced by you while you were an Edwards employee. In that event, you undertake to promptly pay Edwards the full amount assessed against you by Edwards.

### Arbitration

**32.** This agreement between you and Edwards contains a predispute arbitration clause in the numbered paragraph immediately following this paragraph. You should read that paragraph now. Before signing this agreement, you should understand the following:

- You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm, or a customer/ client, or any other person. This means that you are giving up the right to sue in court Edwards, its subsidiaries or employees or any customer/client or any other person concerning matters related to or arising from your employment. This includes giving up the right to a trial by jury.

- A claim alleging employment discrimination, including a sexual harassment claim, in violation of any statute, IS REQUIRED to be arbitrated under this agreement.

- Arbitration awards are generally final and binding, a party's ability to have a court reverse or modify an arbitration award is very limited.

- The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

- The arbitrators do not have to explain the reason(s) for their award.

- The panel of arbitrators may include arbitrators who were or are affiliated with the securities industry or public arbitrators, as provided by the rules of the arbitration forum in which a claim is filed.

- The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

**33.** Except as provided in paragraph 34, you agree that any controversy or dispute, including, but not limited to, claims of wrongful termination, breach of contract, discrimination, harassment, retaliation, infliction of emotional distress, tortious interference with business or contract, federal, state or local statute or ordinance and/or other theory, arising between you and Edwards shall be submitted for arbitration before the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. If neither the New York Stock Exchange, Inc. nor the National Association of Securities Dealers accepts the controversy, dispute or claim, or any portion thereof, for arbitration before either of them, then the nonaccepted controversy, dispute or claim shall be submitted for arbitration before the American Arbitration Association pursuant to its Securities Arbitration Rules effective May 1, 1993.

### Enforcement

**34.** In the event you breach any of the covenants of paragraphs 25, 29 or 30, you agree that Edwards will be entitled to injunctive relief. You recognize that Edwards will suffer immediate and irrefutable harm and that money damages will not be adequate to compensate Edwards or to protect and preserve the status quo. Therefore, you consent to the issuance of a temporary restraining order or a preliminary or permanent injunction ordering:

(a) that you immediately return to Edwards all records or documents whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that you be enjoined and restrained from using or disclosing any such records or documents and;

(b) that you be enjoined and restrained from soliciting any Account that you served or whose name became known to you while employed by Edwards in any office and in any capacity and;

(c) that you be enjoined and restrained from accepting business from any Account who was solicited in violation of paragraph 30 or whose records and information was used in violation of paragraph 25 and;

(d) that you be further enjoined and restrained from recruiting, enticing, inducing or soliciting, directly or indirectly, any employee of Edwards or any of its affiliates, for employment with any other organization that does business in securities, commodities and financial futures, insurance or any other lines of business in which Edwards or its affiliates is engaged.

The above restraints shall apply to each and every Account whom you served or whose name became known to you while employed at Edwards, in any office and in any capacity.

**35.** For the purposes of paragraph 34, you agree to submit to, and confer exclusive jurisdiction on, the United States District Court or State Court which has original jurisdiction for the

Financial Associate Agreement

judicial district or county in which you last worked for Edwards

**Attorney's Fees and Costs of Enforcement**

**36.** In the event of the breach of any of the provisions of this agreement or any provisions of any other agreement between you and Edwards, you agree to pay any and all costs and fees including, but not limited to, the reasonable attorney's fees incurred by Edwards in connection with the enforcement of the provisions of this agreement or any other agreement between you and Edwards.

**Miscellaneous**

**37.** YOU ACKNOWLEDGE HAVING READ AND REVIEWED THIS AGREEMENT AND THE RESTRICTIVE COVENANTS IN THEIR ENTIRETY. You acknowledge having been given an opportunity to ask questions about it. You have also been given an opportunity to consult with an attorney of your choice. You agree that you fully understand the terms of this document and knowingly and freely agree to abide by them.

**38.** YOU ACKNOWLEDGE THAT YOU HAVE AN ADDITIONAL THIRTY (30) DAYS FROM THE DATE YOU SIGNED THIS AGREEMENT TO CONTINUE TO REVIEW IT AND SEEK LEGAL COUNSEL. At any time within this thirty (30) days, you may rescind this agreement by discontinuing your employment with Edwards without any of the provisions herein being enforced against you. To the contrary, however, if you continue your employment with Edwards beyond said thirty (30) days, your continuation of employment will constitute your ratification and complete acceptance of this agreement.

**39.** The terms of your employment and these standard provisions will enure to the benefit of, and be binding upon, both you and Edwards and our respective successors and

assigns. This agreement shall be governed by and construed in accordance with the laws of the state of Missouri even though you are not, or cease to be, a resident or employee in that state.

**40.** "Insurance," "insurance products" and "insurance policies" shall include any and all products, contracts, policies, services or securities offered by or sold through an insurance company, including, but not limited to, all annuities, fixed or variable, retirement plans, Keogh plans, individual retirement accounts and annuities, life insurance, health insurance, accident insurance, liability insurance, and all other forms of insurance now or hereafter offered by an insurance company. "Insurance transactions" shall include the purchase or sale of any of the above. "Insurance commissions" shall include any monies paid by insurance companies or other parties as consideration for the purchase or sale of any of the above.

**41.** If any provisions of this agreement shall, for any reason, be adjudged to be void, invalid or unenforceable by an arbitrator or arbitration panel, a regulatory body or a court of law, the remainder of this agreement shall nonetheless continue and remain in full force and effect.

**Please sign and return this agreement to signify your acceptance of the foregoing terms and conditions.**

**A.G. EDWARDS & SONS, INC.**

Agreed to and accepted

X _Cathy M__

Financial Associate's Signature

_CATHY M^c JILTON_

(Printed Name)

_11/27/00_

Date

_SANTA ROSA    207_

Branch Office

Financial Associate Agreement                                              page 6

# THIS PAGE INTENTIONALLY LEFT BLANK

C. McMillan

# A.G. Edwards

One North Jefferson
St. Louis, MO 63103

**Supplementary Training Agreement for a Financial Associate**

In the event A.G. Edwards & Sons, Inc., a corporation formed under the laws of the state of Delaware ("Edwards"), accepts your application for employment and registration with the New York Stock Exchange, Inc. and the National Association of Securities Dealers, Inc. as a financial associate representing Edwards, you and Edwards agree that this employment may be terminated at any time by either party with or without cause and with or without notice.

In consideration of such acceptance and employment, you agree that:

You require specialized knowledge and skills to perform the duties of a financial associate which you do not presently possess. You recognize that Edwards will incur significant expense in training and educating you as a financial associate and will disclose to you its business methods and procedures, training and operational manuals and other items and information which are the property of Edwards and which enable Edwards to compete successfully as a broker/dealer. As a major inducement for the disclosures to be made, and the employment and training to be given to you by Edwards and recognizing that it is difficult, if not impossible, to determine the damage to Edwards that may arise in the event you should choose to terminate your employment with Edwards, you agree that:

**1.** You have an obligation to Edwards for the salary, training and other benefits you receive during the training period and the post-licensing period, and you agree that $15,000 is a reasonable estimation of these costs. You and Edwards agree that the obligation will be satisfied upon the earliest occurrence of one of the following:

(a) Sixty (60) months of continuous employment with Edwards from the date of your registration; or

(b) The payment by you of the amount of $15,000 to Edwards.

**2.** You agree that in the event you breach the provisions set forth in paragraph 1, Edwards shall be entitled to monetary damages equal to $15,000, plus interest on such amount at the rate of 10% per annum from the date of your resignation until payment in full of your obligation, plus reasonable attorney fees and all other costs and expenses of collection. You further specifically agree that all money, securities, commodities, other property, commissions or other income earned by you but held or carried by Edwards shall be subject to a general lien in Edwards' favor and to the right of setoff for the partial or complete discharge of this obligation. Said general lien and right of setoff shall be in addition to and not in substitution of any rights and remedies Edwards would otherwise have.

**3.** This agreement between you and Edwards contains a predispute arbitration clause in the numbered paragraph immediately following this paragraph. You should read that paragraph now. Before signing this agreement, you should understand the following:

- You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm, or a customer/client, or any other person. This means that you are giving up the right to sue in court Edwards, its subsidiaries or employees or any customer/client or any other person concerning matters related to or arising from your employment. This includes giving up the right to a trial by jury.

- A claim alleging employment discrimination, including a sexual harassment claim, in violation of any statute, IS REQUIRED to be arbitrated under this agreement.

- Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

- The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

- The arbitrators do not have to explain the reason(s) for their award.

- The panel of arbitrators may include arbitrators who were or are affiliated with the securities industry or public arbitrators, as provided by the rules of the arbitration forum in which a claim is filed.

- The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

**4.** You agree that any controversy or dispute, including, but not limited to, claims of wrongful termination; breach of contract; discrimination; harassment; retaliation; infliction of emotional distress; and tortious interference with business or contract or federal, state, or local statute or ordinance and/or other theory arising between you and Edwards shall be submitted for arbitration before the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. If neither the New York Stock Exchange, Inc. nor the National Association of Securities Dealers, Inc. accepts the controversy, dispute or claim, or any portion thereof, for arbitration before either of them, then the nonaccepted controversy, dispute or claim shall be submitted for arbitration before the American Arbitration Association pursuant to its Securities Arbitration Rules effective May 1, 1993.

**5.** In the event of the breach of any of the terms of this agreement, you shall pay any and all costs and fees incurred by Edwards in connection with the enforcement of the terms of this agreement, including, but not limited to, Edwards' reasonable attorney's fees.

Supplementary Training Agreement for a Financial Associate                                page 2

6.   You specifically understand that Edwards reserves any and all rights of action it may have against any person or entity which may cause or induce a breach of this agreement

7.   In the event that the office of Edwards to which you are attached is closed, or your employment is terminated by Edwards and such termination is not provoked by you because of your agreement, intention or plan to violate any of the terms of this agreement, or you are employed by Edwards continuously for a period of sixty (60) months from the date of your registration, the provisions of this agreement shall not apply. A change in the office location shall not be deemed a closing of the office for purposes of this paragraph.

8.   If any provisions of this agreement shall, for any reason, be adjudged to be void, invalid or unenforceable by an arbitrator or arbitration panel, a regulatory body or a court of law, the remainder of the agreement shall nonetheless continue and remain in full force and effect.

9.   This agreement shall inure to the benefit of Edwards, its affiliates, and any successor in interest to the business of Edwards, whether through merger, acquisition, sale or other transfer.

10.   NOTHING HEREIN IS A PROMISE OF EMPLOYMENT FOR A FIXED TERM. Edwards may terminate your employment for any reason or for no reason, just as you may resign at any time.

11.   YOU ACKNOWLEDGE HAVING READ AND REVIEWED THIS AGREEMENT AND THE RESTRICTIVE COVENANTS IN THEIR ENTIRETY. You acknowledge having been given an opportunity to ask questions about it. You have also been given an opportunity to consult with an attorney of your choice. You agree that you fully understand the terms of this document and knowingly and freely agree to abide by them.

12.   YOU ACKNOWLEDGE THAT YOU HAVE AN ADDITIONAL THIRTY (30) DAYS FROM THE DATE YOU SIGNED THIS AGREEMENT TO CONTINUE TO REVIEW IT AND SEEK LEGAL COUNSEL. At any time within this thirty (30) days, you may rescind this agreement by discontinuing your employment with Edwards without any of the provisions herein being enforced against you. To the contrary, however, if you continue your employment with Edwards beyond said thirty (30) days, your continuation of employment will constitute your ratification and complete acceptance of this agreement.

**Please sign and return this agreement to signify your acceptance of the foregoing terms and conditions.**

**A.G. EDWARDS & SONS, INC.**

Agreed to and accepted

X _Cathy Mc_____
Financial Associate's Signature

_CATHY McJILTON_
(Printed Name)

_11/29/00_
Date

_SANTA ROSA 207_
Branch Office

PADUANO & WEINTRAUB LLP
1251 AVENUE OF THE AMERICAS
NINTH FLOOR
NEW YORK, NEW YORK 10020

TELEPHONE: 212-785-9100
TELECOPIER: 212-785-9099

October 4, 2007

**BY FEDERAL EXPRESS and FAX**

Ms. Kelly Stromgren
1203 Lee Street
Santa Rosa, California  95404

Dear Ms. Stromgren:

We represent A.G. Edwards & Sons, Inc. ("Edwards").  We have reason to believe that you have contacted and solicited Edwards clients to transfer their accounts and business away from Edwards, or have assisted your new employer Stifel Nicolaus & Company, Incorporated ("Stifel") in its efforts to solicit Edwards' clients, and that you have used Edwards' Trade Secret and Confidential and Proprietary Information to do so.  This activity violates your obligations to Edwards under the law, your contractual obligations and Edwards' policies and requirements.

This letter is to put you on notice of our intention to protect Edwards' legal interests.  Accordingly, we insist that you, and all those acting in concert with you, cease any activity that contravenes your fiduciary and other obligations to Edwards.  We demand strict adherence to the terms of your Investment Broker Agreement, a copy of which is attached hereto.  We further demand that you return to Edwards all Edwards' Trade Secret and Confidential and Proprietary Information in your possession or under your control (including copies therefrom, whether in electronic, computerized or magnetic form or in "hard copy").

Please provide a sworn Statement Under Oath (in the form attached hereto) by the close of business on October 5, 2007 certifying that you are not contacting or soliciting Edwards' customers to transfer their accounts and business away from Edwards and that you are not assisting any other firm regarding the same.  Please also verify that you have no Edwards' Trade Secret and Confidential and Proprietary Information in your possession, custody or control.  Should we not receive this sworn Statement, then, without further notice to you, Edwards may seek and obtain all equitable or other relief to which it is entitled.


EXHIBIT D

PADUANO & WEINTRAUB LLP

Ms. Kelly Stromgren
October 4, 2007
Page 2


        Please carefully review the enclosed Statement Under Oath. Please sign
and date it in the presence of a Notary Public and telecopy it to me immediately, and
mail the original to me. If there is any reason why you cannot sign the Statement
Under Oath, please so notify me immediately. Your refusal to sign the Statement
Under Oath will be construed as your admission that you have violated -- and plan to
continue to violate -- your legal obligations to Edwards.

        The conduct described above is in violation of your obligations to Edwards
and constitutes, among other things, breach of fiduciary duty and wrongful
interference with the business and/or contractual relationships between Edwards and
its employees. Edwards will not tolerate such wrongdoing.

        We insist that you maintain and preserve any documents (whether in
electronic, computerized or magnetic form or in "hard copy") that may be relevant to
your employment with Edwards, your employment with Stifel, or any Edwards'
customer.


                                Yours sincerely,

                                *Anthony Paduano* (signature)

                                Anthony Paduano



(Enclosure)

cc:    David M. Minnick, Esq.

## STATEMENT UNDER OATH

I, Kelly Stromgren, declare under penalty of perjury:

1.    I submitted my resignation to Edwards on October 4, 2007.

2.    After making my best efforts to locate any and all documents or information of any kind or nature whatsoever concerning Edwards' business, customers and employees (whether in electronic, computerized or magnetic form or in "hard copy"), whether furnished by Edwards or obtained or prepared by me while associated with Edwards (including but not limited to computers and computer records), to the best of my knowledge and belief I no longer have in my possession, custody or control any such documents or any documents derived therefrom.

3.    I have also returned all software provided to me by Edwards and all back-up copies and diskettes.

4.    Through the date hereof I have honored, and going forward I shall honor, all of my fiduciary and other obligations to Edwards. This includes, without limitation, not contacting or soliciting Edwards' customers to transfer their accounts or business away from Edwards and not assisting any firm in its efforts to do so.


_____
Kelly Stromgren


Signed and sworn to before me
this          day of October 2007


_____
Notary Public



# INVESTMENT BROKER AGREEMENT

July 1992

*A.G. Edwards & Sons, Inc.*

Established 1887

Members New York Stock Exchange, Inc.

## INVESTMENT BROKER AGREEMENT

In the event A. G. Edwards & Sons, Inc., a corporation formed under the laws of the State of Delaware ("Edwards"), accepts your application for employment and registration with the New York Stock Exchange, Inc. and the National Association of Securities Dealers, Inc. as an investment broker representing Edwards, you and Edwards agree that this employment may be terminated at any time by either party with or without cause and with or without notice.

In consideration of such acceptance and employment, you agree that:

1.  So long as you serve as an employee of Edwards, you will act only in Edwards' best interest. For that purpose, you will perform your work competently and diligently; and you will observe all directions given by officials of Edwards, all policies announced by Edwards, all regulations and procedures prescribed in Edwards' Policy and Procedures Manuals and Compliance Manuals as from time to time are altered or issued, and all applicable rules of regulatory authorities. Other than those maintained through Edwards, you will not, without prior written approval of Edwards' Director of Compliance, hold or maintain any license, registration or agency relationship with or through any self-regulatory organization, the Securities and Exchange Commission, any state or federal securities, commodities, insurance or real estate licensing or regulatory division, nor hold or maintain any agency relationship with any person, firm, corporation, partnership or association in any business related to Edwards' business, including, but not limited to, securities or commodities brokerage, insurance sales; or any other investment or investment advisory business or acting as a registered Investment Advisor. You will conduct yourself as a loyal and faithful employee of Edwards, and you will in no event take any action which could harm Edwards' business or its relationships with its clients.

### Pre-Registration

2.  Upon joining Edwards, you will advise Edwards of all current licenses which you may hold including licenses with state securities and insurance authorities. You will provide a copy of all such licenses and, in the event of insurance licensing, will advise Edwards of the names of all insurance companies with whom you are appointed. Prior to your registration by the proper authorities including state authorities, you will not solicit directly or indirectly any order in any security and/or insurance product and/or commodity.

3.  In the event that prior to your proper registration any person or firm wishes to place an unsolicited order or transaction through you, you will not accept such an order or transaction nor will you transmit the order or transaction to your Branch Manager or an investment broker. You will, instead, refer such person to the Manager of the office. If an order or transaction results from you referring such a person to the Manager, the trade or transaction will be processed under your sales number, but the Manager will mark the branch office copy of the order ticket or other applicable document to indicate that the order was accepted and entered by him or her. No commission will be paid to you on any such order or transaction. Upon your registration, the account will automatically be assigned to you and commissions will be paid to you on any orders or transactions subsequent to your proper registration.

### Business Practices

4.  After your registration, you will confine your solicitations to and accept orders only from residents of the states where Edwards is a registered Broker/Dealer and you are registered as a salesperson for Edwards. You agree that it is your responsibility to contact the St. Louis office of Edwards to determine the registration status of a security in a given state before effecting transactions in that security in that state, and you will not effect any transactions in any security in any state unless such security is registered under the securities law of that state or exempt from such registration or unless such transaction is itself exempt from such law.

In the event you become licensed as an insurance agent, broker or solicitor, you will confine your solicitations and insurance business to states where Edwards or an Edwards' subsidiary or affiliated company or agency is properly licensed for the product and/or insurance company involved, and where you are properly licensed for the product and insurance company involved.

In the event new insurance, securities, investment advisory or commodities products are offered by Edwards which require separate licensing, registration or testing prior to the sale thereof, you agree that you will not offer or sell any such products until and unless you are properly licensed, registered or tested for said product.

5.  In the event you become licensed to solicit and sell insurance products, you will not solicit or sell any product of any insurance company not approved by Edwards and/or an Edwards' subsidiary or an affiliated company or agency.

6.  In dealing with clients of Edwards, you will make no representation which relates to a security not properly registered (or exempted) under the Securities Act of 1933, or which is so incomplete as to be misleading, or which is not based on facts appearing in generally recognized statistical and financial publications, manuals and financial sections of newspapers or available to the public in general. You are not authorized to waive any provision of Edwards' Customer's Agreement or its margin requirements.

7.  In connection with any underwriting, you understand that you may solicit and accept indications of interest from the public in the securities to be sold between the time of the filing of the Registration Statement with the Securities and Exchange Commission covering such securities and the effective date of the offering. The only printed matter that you will use to solicit such indications of interest is a current preliminary prospectus. If you should distribute such a preliminary prospectus to the public, you will send a revised preliminary prospectus. You will not confirm orders or promise stock on the basis of preliminary allocations made by Edwards' Syndicate Department.

8.  You will not in any way represent to any customer in connection with any security, commodity, investment advisory or insurance transaction that you or Edwards will indemnify the customer against loss. You will not borrow money or securities from a client or customer of yours or of A. G. Edwards & Sons, Inc. unless the client is a financial institution engaged in the business of loaning funds or securities.

9.  You will not rebate, directly or indirectly, to any person, firm or corporation any part of the compensation you may receive from Edwards or an Edwards' subsidiary or affiliated company or agency, and you will not pay any part of such compensation directly or indirectly to any person, firm or corporation as a bonus, commission, fee or other consideration, in connection with any securities, commodities, investment advisory and/or insurance business sought by, handled by or procured for you or Edwards or any subsidiary or affiliated company or agency of Edwards.

10. Without Edwards' prior written permission, you will not (I) personally lend money or in any manner grant credit to any customer of Edwards or (II) participate in the arrangement of credit for such customer outside of the facilities of Edwards or (III) become personally liable, directly or indirectly, on any evidence of indebtedness executed by any customer of Edwards in favor of a creditor of such customer or (IV) arrange for the extension or maintenance of credit for the purchase of securities in your own or family securities accounts on better terms than could be offered by Edwards. You also affirm that you are not now in violation of Regulation T of the Federal Reserve Board with respect to securities positions you hold and that you have listed all of your securities or commodities accounts on Schedule A annexed hereto.

### Employment Practices

11. You will become familiar with and abide by the rules and regulations of Edwards, the National Association of Securities Dealers, Inc., the New York Stock Exchange and other securities and commodities exchanges of which Edwards is a member. You will also become familiar with and abide by the laws and regulations relative to the securities, investment advisory and/or commodities business of the federal government and of the state or states where you are a registered salesperson. In the event you become registered to sell insurance products, you will become familiar with and abide by the laws and regulations relative to the insurance business of the state or states where you are a registered insurance salesperson.

12. You understand and agree that as part of Edwards' duty to supervise your activities in accordance with the Constitution and Rules of the New York Stock Exchange, Inc., the National Association of Securities Dealers, Inc., and the various commodity exchanges and applicable federal and state securities laws, you will, at any time upon Edwards' request, provide a written statement or appear before an Edwards' officer, committee or person designated by Edwards and give full information upon any subject which relates to such of your activities as are subject to Edwards' supervision, and you will produce, upon Edwards' request, all of your records or documents, including but not limited to, personal bank statements and the like, relative to Edwards' inquiry.

13. You will clear any business correspondence written by you (including any handwritten memoranda and notes) with your Branch Manager prior to mailing such correspondence and retain duplicate copies of all such correspondence.

2

14.  Without Edwards' prior consent you will not (I) conduct any television or radio broadcasts with reference to the securities, commodities, investment advisory or insurance business in general or any particular security, commodity, investment advisory or insurance product or (II) send out any advertisements, reports or market letters relating to any security, commodity, investment advisory or insurance product which has not been provided by Edwards or (III) publish in any manner any report or article written by you with reference to the securities, commodities, investment advisory or insurance business in general or any particular security, commodity or insurance product.

15.  You will devote your efforts solely to the business of Edwards and Edwards' subsidiary or affiliated companies and agencies, and, unless prior written approval is granted by Edwards, you will not engage in any other business, occupation, job, work or employment during your employment by Edwards, including, but not limited to officerships or directorships in any company.

16.  Unless prior written approval is granted by Edwards, you will not participate, directly or indirectly, in any security, commodity or insurance transaction which will not be processed through the facilities of Edwards or an Edwards' subsidiary or affiliated company or agency; nor will you, without Edwards' prior written permission, affect a cash or margin transaction or maintain a cash or margin account in securities or commodities, or have any direct or indirect financial interest in any such transaction or account, except with or through Edwards; nor will you, without Edwards' prior written permission, act on behalf of any party other than Edwards or an Edwards' subsidiary or affiliated company or agency in any matter. You will not contract or incur any indebtedness in the name of Edwards.

17.  You will not take, accept or receive, directly or indirectly, from any person, firm, corporation or association other than Edwards, or a subsidiary or affiliated company or agency of Edwards, compensation of any nature in connection with any securities, commodities, investment advisory or insurance transaction or transactions, except with the prior written consent of Edwards

18.  You will notify Edwards promptly, if, during your employment you become involved in any litigation or the subject of any customer complaint or if any judgments are adjudicated against you; or if your registration or license to sell or deal in securities, commodities and/or insurance or to function as an investment advisor is ever refused, suspended or revoked; or if you become enjoined, temporarily or otherwise, from selling or dealing in securities, commodities and/or insurance or from functioning as an investment advisor; or if you are arrested, summoned, arraigned, or indicted for a criminal offense; or if you become involved in bankruptcy proceedings.

19.  Both during and after the time you serve as an employee of Edwards, you will not divulge to any person any information received during the course of your employment concerning the business of the firm and its financial affairs.

## Compensation

20.  Your compensation will be based upon a credit for the commissions generated by you at the prevailing rate at the office at which you are employed less a debit for certain items (extension charges, account debit balances, loss charge backs, drafting charges, etc.) in accordance with Edwards' established policies. The commission credit is conditioned upon your continued employment with Edwards at the time such commissions are paid and received by Edwards and your continued employment with Edwards at the time such commissions are earned and no longer subject to refund by Edwards. In the event the purchaser of any insurance or annuity or contractual plan shall cease making the regular premium or investment payments thereon or shall cancel or surrender such policy or contract, any commissions or credits received thereon which are refundable to the insurance company or other issuer shall be immediately repaid by you to Edwards.

21.  Except for vested insurance renewal or trail commissions arising or derived from insurance sales prior to your employment, you agree that all contracts, policies and/or commissions received on the sale of any security, commodity, commodity futures contract, insurance product or other asset sought by, handled by or procured by you or Edwards or an Edwards' subsidiary or affiliated company or agency is the sole property of Edwards or the Edwards' subsidiary or affiliated company or agency and will forward all direct commission checks received by you to Edwards or an Edwards' subsidiary or affiliated company or agency, as the case may be.

3

## Termination

22. Upon any termination whatsoever, Edwards shall be liable to you only for commissions earned and paid to Edwards and not paid to you prior to the effective date of the termination, less any debits or charges in accordance with Edwards' established policies or any debits you owe Edwards. You are an employee at will of Edwards, and may be subject to termination at any time without prior notice.

23. In the event that your employment with Edwards ends at any time either through termination by Edwards or through resignation by you, you will surrender the originals of all training materials, account records, customers' statements and customers' files to Edwards, and you agree, in such event, that such termination or resignation, as the case may be, will constitute the forfeiture by you of your right to receive any commission on transactions effected, insurance business placed or plan payments made subsequent to the date of such termination or resignation.

24. With respect to contractual plans and insurance sales, you agree to repay any commissions received that are in excess of the commissions earned by Edwards or Edwards' subsidiary or affiliate company or agency should the purchaser cease making regular premium, investment or installment payments or cancel or surrender the policy or contract. In the event of your termination from Edwards, you will refund the amount of any such prepaid but unearned commissions which exceed the actual commission received by Edwards at the time of your termination or resignation. You agree that you have no interest in, title to or claim for any commissions received by Edwards after the time of your termination or resignation.

## Hold Harmless

25. You will indemnify and hold Edwards harmless against any and all losses suffered by Edwards as the result of the violation by you of any of the aforesaid agreements. Both during and after the time you serve as an employee of Edwards (no matter what the reason for termination of your employment), Edwards may find it reasonable in the circumstances to charge you with the amount of any losses or liabilities incurred by the firm as a result of errors, rule violations or violations of Edwards' policies to which you were a party while you were in Edwards' employ. In that event, you undertake to promptly pay Edwards the full amount assessed against you by Edwards.

## Arbitration

26. You agree that any controversy or dispute arising between you and Edwards in respect to this agreement or your employment by Edwards shall be submitted for arbitration before the New York Stock Exchange, Inc., or the National Association of Securities Dealers, Inc.

## Miscellaneous

27. The terms of your employment and these standard provisions will enure to the benefit of, and be binding upon, both you and Edwards and our respective successors and assigns. If any of these standard provisions are adjudged invalid, such judgment will not affect the enforceability of the remaining provisions. This agreement shall be governed by and construed in accordance with the laws of the State of Missouri even though you are not, or cease to be, a resident or employee in that state.

28. "Insurance," "insurance products" and "insurance policies" shall include any and all products, contracts, policies, services or securities offered by or sold through an insurance company, including, but not limited to, all annuities, fixed or variable, retirement plans, Keogh plans, individual retirement accounts and annuities, life insurance, health insurance, accident insurance, liability insurance, and all other forms of insurance now or hereafter offered by an insurance company. "Insurance transactions" shall include the purchase or sale of any of the above. "Insurance commissions" shall include any monies paid by insurance companies or other parties as consideration for the purchase or sale of any of the above.

4

Please sign and return this letter to signify your agreement to the foregoing terms and conditions.

Very truly yours,

A. G. EDWARDS & SONS, INC.

By _____
(Edwards' Officer Signature)

Agreed to and accepted:

_____
(Trainee/Transferee Signature)

_____
(Branch Office)

_____
(Date)

SCHEDULE A

The following is a complete list of cash and margin accounts for securities or commodities in which I, my spouse or minor children have a financial interest. IF NONE, SO STATE.

| Title of Account | Carried by (Firm or Bank Name) | Account Number | *Date papers signed to transfer account to AGE |
|---|---|---|---|
| KELLYA NAUGHTON | DUB | 122-597270 | |

*Approval of your branch manager and the Compliance Department must be obtained if any such accounts are not immediately transferred to AGE.

Date _____        _____
                                            (Trainee/Transferee Signature)


                                       _____
                                              (Printed Name)


                                       _____
                                                  (Branch)

# SUPPLEMENTARY TRAINING AGREEMENT FOR AN INVESTMENT BROKER

October 1993

SUPPLEMENTARY TRAINING AGREEMENT FOR AN INVESTMENT BROKER

In the event A.G. Edwards & Sons, Inc., a corporation formed under the laws of the State of Delaware ("Edwards"), accepts your application for employment and registration with the New York Stock Exchange, Inc. and the National Association of Securities Dealers, Inc., as an investment broker representing Edwards, you and Edwards agree that this employment may be terminated at any time by either party with or without cause and with or without notice.

IN CONSIDERATION OF SUCH ACCEPTANCE AND EMPLOYMENT, YOU AGREE THAT:

YOU REQUIRE SPECIALIZED KNOWLEDGE AND SKILLS TO PERFORM THE DUTIES OF AN INVESTMENT BROKER WHICH YOU DO NOT PRESENTLY POSSESS. YOU RECOGNIZE THAT EDWARDS WILL INCUR SIGNIFICANT EXPENSE IN TRAINING AND EDUCATING YOU AS AN INVESTMENT BROKER AND WILL DISCLOSE TO YOU ITS BUSINESS METHODS AND PROCEDURES, TRAINING AND OPERATION MANUALS AND OTHER ITEMS AND INFORMATION WHICH ARE THE PROPERTY OF EDWARDS. AS A MAJOR INDUCEMENT FOR THE DISCLOSURES TO BE MADE, AND THE EMPLOYMENT AND TRAINING TO BE GIVEN TO YOU BY EDWARDS, YOU AGREE THAT:

1    YOU HAVE CERTAIN OBLIGATIONS TO EDWARDS ARISING FROM THE TRAINING EXPENSES AND OTHER BENEFITS YOU RECEIVE DURING THE TRAINING PERIOD AND THE POST-LICENSING PERIOD. YOU UNDERSTAND AND AGREE THAT A REASONABLE ESTIMATION OF THE COSTS AND EXPENSE TO EDWARDS FOR YOUR TRAINING IS:

(a)    $31,500 IF YOU ARE NOT CURRENTLY REGISTERED AS A REPRESENTATIVE IN ANY CAPACITY WITH THE NEW YORK STOCK EXCHANGE OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.;

(b)    $20,000 IF YOU ARE CURRENTLY REGISTERED AS A REPRESENTATIVE IN SOME CAPACITY WITH THE NEW YORK STOCK EXCHANGE OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC., BUT ARE NOT CURRENTLY FULLY REGISTERED AS A GENERAL SECURITIES REPRESENTATIVE WITH THE NEW YORK STOCK EXCHANGE AND THE NATIONAL ASSOCIATION OF SECURITIES DEALER, INC.; OR

(c)    $15,000 IF YOU ARE CURRENTLY FULLY REGISTERED AS A GENERAL SECURITIES REPRESENTATIVE WITH THE NEW YORK STOCK EXCHANGE AND THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. BUT PARTICIPATE IN THE SALES TRAINING PORTION OF EDWARDS TRAINING PROGRAM.

2.    ACCORDINGLY, YOU SPECIFICALLY AGREE THAT YOU OWE TO EDWARDS THE AMOUNT SET FORTH IN PARAGRAPH 1 ABOVE UNTIL YOU HAVE SATISFIED YOUR OBLIGATION TO EDWARDS. YOU AND EDWARDS AGREE, THAT THE OBLIGATION WILL BE SATISFIED UPON THE EARLIEST OCCURRENCE OF ONE OF THE FOLLOWING:

(a)    THIRTY-SIX (36) MONTHS OF CONTINUOUS EMPLOYMENT WITH EDWARDS FROM THE DATE OF YOUR FULL REGISTRATION AS A GENERAL SECURITIES REPRESENTATIVE WITH THE NEW YORK STOCK EXCHANGE, THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. AND THE STATE IN WHICH YOUR OFFICE IS LOCATED, OR

(b)    THE PAYMENT BY YOU OF THE AMOUNT SET FORTH IN PARAGRAPH 1(a), (b) or (c), WHICHEVER IS APPLICABLE, TO EDWARDS REDUCED BY THE FOLLOWING AMOUNTS FOR EACH FULL SIX (6) MONTH PERIOD OF EMPLOYMENT FROM THE DATE OF YOUR FULL REGISTRATION AS A GENERAL SECURITIES REPRESENTATIVE:

| Months of Employment Completed | Paragraph 1(a) | Amount of Reduction: Paragraph 1(b) | Paragraph 1(c) |
|---|---|---|---|
| 6 Months | $ 2,625.00 | $ 1,666.67 | $ 1,250.00 |
| 12 Months | 5,250.00 | 3,333.34 | 2,500.00 |
| 18 Months | 7,875.00 | 5,000.00 | 3,750.00 |
| 24 Months | 10,500.00 | 6,666.68 | 5,000.00 |
| 30 Months | 15,750.00 | 10,000.00 | 7,500.00 |
| 36 Months | 31,500.00 | 20,000.00 | 15,000.00 |

3.    YOU AGREE THAT IN THE EVENT YOU BREACH THE PROVISIONS SET FORTH IN PARAGRAPH 2, EDWARDS SHALL BE ENTITLED TO MONETARY DAMAGES EQUAL TO THE AMOUNT SET FORTH IN PARAGRAPH 1(a), (b) or (c), WHICHEVER IS APPLICABLE, LESS ANY APPROPRIATE REDUCTION AS SET OUT IN PARAGRAPH 2, PLUS INTEREST ON SUCH AMOUNT AT THE RATE OF 12% PER ANNUM FROM THE DATE OF YOUR RESIGNATION UNTIL PAYMENT IN FULL OF YOUR OBLIGATIONS. YOU FURTHER SPECIFICALLY AGREE THAT ALL MONEY, SECURITIES, COMMODITIES, OTHER PROPERTY, COMMISSIONS OR OTHER INCOME EARNED BY YOU BUT HELD OR CARRIED BY EDWARDS SHALL BE SUBJECT TO A GENERAL LIEN IN EDWARDS FAVOR AND TO THE RIGHT OF SETOFF FOR THE PARTIAL OR COMPLETE DISCHARGE OF THIS OBLIGATION. SAID GENERAL LIEN AND RIGHT OF SETOFF SHALL BE IN ADDITION TO AND NOT IN SUBSTITUTION OF ANY RIGHTS AND REMEDIES EDWARDS WOULD OTHERWISE HAVE.

4. YOU SPECIFICALLY AGREE THAT YOU WILL NOT ACCEPT EMPLOYMENT WITH ANY ORGANIZATION WHICH DOES BUSINESS IN SECURITIES, COMMODITIES AND FINANCIAL FUTURES, INSURANCE OR ANY OTHER LINES OF BUSINESS IN WHICH EDWARDS OR ANY OF ITS AFFILIATES IS ENGAGED AT AN OFFICE WITHIN A SEVENTY-FIVE (75) MILE RADIUS OF ANY OFFICE OF EDWARDS IN WHICH YOU HAVE BEEN EMPLOYED UNLESS AND UNTIL YOU HAVE SATISFIED THE OBLIGATION TO EDWARDS SET FORTH IN PARAGRAPH 3 ABOVE.

5. DURING THE TERM OF YOUR EMPLOYMENT BY EDWARDS AND FOR ONE HUNDRED AND EIGHTY (180) DAYS FOLLOWING TERMINATION OF YOUR EMPLOYMENT, YOU WILL NOT RECRUIT, ENTICE, INDUCE OR SOLICIT DIRECTLY OR INDIRECTLY ANY EMPLOYEE OF EDWARDS OR ANY OF ITS AFFILIATES FOR EMPLOYMENT WITH ANY OTHER ORGANIZATION WHICH DOES BUSINESS IN SECURITIES, COMMODITIES AND FINANCIAL FUTURES, INSURANCE OR ANY OTHER LINES OF BUSINESS IN WHICH EDWARDS OR ANY OF ITS AFFILIATES IS ENGAGED.

YOU AGREE THAT ANY CONTROVERSY OR DISPUTE ARISING BETWEEN YOU AND EDWARDS IN RESPECT TO THIS AGREEMENT OR YOUR EMPLOYMENT BY EDWARDS SHALL BE SUBMITTED FOR ARBITRATION BEFORE THE NEW YORK STOCK EXCHANGE, INC., OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.

IN THE EVENT OF THE BREACH OF ANY OF THE TERMS OF THIS AGREEMENT OR THE INVESTMENT BROKER AGREEMENT, YOU SHALL PAY ANY AND ALL COSTS AND FEES INCURRED BY EDWARDS IN CONNECTION WITH THE ENFORCEMENT OF THE TERMS OF THIS AGREEMENT AND/OR THE INVESTMENT BROKER AGREEMENT, INCLUDING, BUT NOT LIMITED TO, EDWARDS REASONABLE ATTORNEY'S FEES.

YOU SPECIFICALLY UNDERSTAND THAT THE DAMAGES REFERRED TO HEREIN IN PARAGRAPH 3 ARE FOR TRAINING COSTS ONLY AND EDWARDS RESERVES ANY AND ALL RIGHTS OF ACTION IT MAY HAVE AGAINST YOU OR ANY OTHER PERSON OR ENTITY WHICH MAY CAUSE OR INDUCE A BREACH OF THIS AGREEMENT.

IN THE EVENT THAT THE OFFICE OF EDWARDS TO WHICH YOU ARE ATTACHED IS CLOSED AND YOUR EMPLOY- MENT IS TERMINATED, OR YOU ARE EMPLOYED BY EDWARDS CONTINUOUSLY FOR A PERIOD OF THIRTY-SIX (36) MONTHS FROM THE DATE OF YOUR REGISTRATION AS AN INVESTMENT BROKER TO SELL SECURITIES, THE PROVISIONS OF THIS AGREEMENT SHALL NOT APPLY, AND YOU MAY ACCEPT ANY OTHER EMPLOYMENT WITHOUT CONDITION.

IF ANY PROVISIONS OF THIS AGREEMENT SHALL, FOR ANY REASON, BE AMENDED OR ADJUDGED TO BE VOID, INVALID OR UNENFORCEABLE BY AN ARBITRATOR OR ARBITRATION PANEL, A REGULATORY BODY OR A COURT OF LAW, THE REMAINDER OF THE AGREEMENT SHALL CONTINUE AND REMAIN IN FULL FORCE AND EFFECT.

THIS AGREEMENT SHALL INURE TO THE BENEFIT OF EDWARDS, ITS AFFILIATES, AND ANY SUCCESSOR IN INTEREST TO THE BUSINESS OF EDWARDS, WHETHER THROUGH MERGER, ACQUISITION, SALE OR OTHER TRANSFER.

PLEASE SIGN AND RETURN THIS AGREEMENT TO SIGNIFY YOUR ACCEPTANCE OF THE FOREGOING TERMS AND CONDITIONS. SHOULD YOU HAVE ANY QUESTIONS ABOUT THIS AGREEMENT YOU SHOULD CONSULT WITH AN ATTORNEY.

Very truly yours,

A.G. EDWARDS & SONS, INC.

By:

(Edwards' Officer Signature)

Agreed to and accepted:

_____ 19___

(Investment Brokers Signature)

# MENNEMEIER, GLASSMAN & STROUD LLP

980 9th Street • Suite 1700 • Sacramento, California 95814-2736
Telephone 916-553-4000 • Facsimile 916-553-4011

e-mail
kcm@mgslaw.com

Direct Dial
916-551-2580

October 5, 2007

**VIA FACSIMILE ONLY**

Anthony Paduano
Paduano & Weintraub LLP
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
Facsimile: 212.785.9100

Re:    *Sam Slayden, Denise Gilseth, Cathy McJilton, and Kelly Stromgren*
Our File No. 445.03

Dear Mr. Paduano:

My law firm represents Sam Slayden, Denise Gilseth, Cathy McJilton, and Kelly Stromgren. We are in receipt of your letter to each of them dated October 4, 2007. Your letter asked for a response by the end of the day today, and I wanted to provide such a response to the extent that the short time frame suggested by your letter permits.

I start by noting that Mr. Slayden, Ms. Gilseth and Ms. McJilton left A.G. Edwards and joined Stifel Nicolaus on September 20 -- two weeks ago. Ms. Stromgren left on October 1 -- four days ago. Thus, the sense of urgency suggested by your request for an immediate response seems unwarranted.

Second, I note that your letter alleges that the referenced individuals have improperly solicited clients whose accounts they personally served, and it claims that any such solicitation is improper. I have now reviewed the employment agreements that you were kind enough to forward with your letters. In doing so, I notice that there is no non-solicitation clause in the agreements for Mr. Slayden, Ms. Gilseth, and Ms. Stromgren. To the extent that those agreements address post-employment conduct, they provide (for example):

In the event that your employment with Edwards ends at any time
. . . you will surrender all training materials, account records,
customers' statements and customers' files to Edwards . . . .

445.03.LTR.Paduano.2.kcm.wpd

EXHIBIT  *E*

# MENNEMEIER, GLASSMAN
# & STROUD LLP

Anthony Paduano
October 5, 2007
Page 2

Investment Broker Agreement for Denise Gilseth, ¶ 23. *See also* Investment Broker Agreement for Kelly Stromgren, ¶ 23 (containing nearly identical language). Nothing in that language precludes contacting clients. If you are aware of other applicable contract language, please bring it to our attention. In the absence of any contractual non-solicitation clause, it appears that there is no contractual basis for A.G. Edwards' complaint about any solicitation that may have occurred.

As for Ms. McJilton, as you may be aware, she serves as a registered sales assistant. In that capacity, she responds to client inquiries. She is not involved in initiating communications with clients. Thus, although her A.G. Edwards employment agreement may have a non-solicitation clause, she is not involved in any such activity.

Your letter also alleges the misappropriation and use of "trade secrets." In that regard, to the extent that I have been able to do so in the limited time available to me today, I have inquired about what the referenced individuals took with them when they left A.G. Edwards. I am informed that Ms. McJilton took nothing when she left. I am informed that, when he left, Mr. Slayden took a Browse List (which contains client names and phone numbers), Account Inquiry Sheets for each client's accounts (but with clients' Social Security numbers and dates of birth obscured), and Realized Gain and Loss Reports for each client's accounts. I am also informed that, when she left, Ms. Stromgren took only a Browse List, Realized Gain and Loss Reports for each of her clients' account, and an Excel spreadsheet that she created containing client contact information. So that there is no mystery, I am making arrangements to retrieve and provide to you a copy of all of these materials. (I am also informed that Ms. Gilseth is away on vacation, so I have not had an opportunity to speak to her yet.)

As you will see, your allegation that any of these individuals took "trade secret" information when they left A.G. Edwards is unfounded. As you know, under California law, a departing employee may take contact information for clients whom he personally served while working for his or her prior employer. *See Moss, Adams & Co. v. Shilling*, 179 Cal. App. 3d 124 (1986). To the extent that the aforementioned materials contain contact information, it is permissible for my clients to have that information. To the extent that the aforementioned materials contain information beyond contact information, to moot any argument about whether such information is trade secret (and we would dispute that it is), I am having those documents returned to me, and I will in turn return those documents to A.G. Edwards through you. Specifically, I will retrieve and return the Realized Gain and Loss Reports, and my clients will not retain any copies. (I anticipate that I will Bates label and keep a copy of such documents in my working file, so that I will have a record of the documents that we have returned to you.)

445.03.LTR.Paduano.2.kom.wpd

# MENNEMEIER, GLASSMAN
## & STROUD LLP

Anthony Paduano
October 5, 2007
Page 3

On a different topic, I note that you ask each of the individuals to whom you sent your letter to sign and return and affidavit. I am not aware of any contractual or legal requirement that they do so, particularly under California law. Nor am I aware of any authority for the proposition that an individual's failure to return such an affidavit constitutes an admission. (It does not.) Indeed, I am not aware of any authority that suggests that its permissible for a prior employer even to suggest that a departed employee sign such an affidavit. Accordingly, my clients will not be returning those affidavits to you.

As you will see, in leaving A.G. Edwards, each of my clients conducted himself or herself professionally and appropriately. When they left A.G. Edwards, consistent with the very language in their employment agreement, they left behind all "training materials, account records, customers' statements and customers' files." They have not taken or misappropriated any trade secret information. On their behalf, I welcome the opportunity to show you that the allegations in your recent letter to each of them are unfounded.

Very truly yours,

Kenneth C. Mennemeier

KCM/me

445.03.LTR.Paduano.2.kcm.wpd