EXHIBIT 1

**Sent:** Wednesday, October 10, 2007 9:26 PM
**To:** kcm@mgslaw.com
**Cc:** Stout, Cameron; Porianda, Zachary
**Subject:** Re: Santa rosa

Ken I called to tell you that gene diedrich will be in south america from this weekend through next weekend on a long-scheduled business trip. Your options, as I see them are, (1) to examine him in buenos aires on the set date, whether by telephone or in person; (2) accept Chuck Van Gronigen, the deputy director of all branches as a substitute. (I am told that Mr van gronigen has knowledge as to santa rosa and that mr diedrich does not); (3) wait until mr diedrich returns to the united states--the exact date of which I will know in the morning.

The date for mr diedrich was set based on your representation that he was in st. louis. Our preference would be to agree to request jointly that the court modify its schedule as to mr diedrich. But if we cannot do that by noon tomorrow, we will so inform the court and seek relief.

Please call me.


---------------------------
Anthony Paduano
PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas Ninth Floor
New York, New York 10020
Tel: 212-785-9100
Fax: 212-785-9099
www.pwlawyers.com.

The information contained in this message is privileged and confidential and intended only for the individual recipient identified above. If the reader of this message is not the intended recipient, you are hereby notified that any distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone or e-mail and delete this message. Thank you.


-----Original Message-----
From: Anthony Paduano
To: 'kcm@mgslaw.com' <kcm@mgslaw.com>
Sent: Wed Oct 10 21:53:56 2007
Subject: Santa rosa

Ken, please call me. If not tonight then in the morning. Thanks.


---------------------------
Anthony Paduano
PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas Ninth Floor
New York, New York 10020
Tel: 212-785-9100
Fax: 212-785-9099
www.pwlawyers.com.

The information contained in this message is privileged and confidential and intended only for the individual recipient identified above. If the reader of this message is not the intended recipient, you are hereby notified that any distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone or e-mail and delete this message. Thank you.

**From:** Anthony Paduano [mailto:ap@pwlawyers.com]
**Sent:** Thursday, October 11, 2007 1:14 PM
**To:** kcm@mgslaw.com
**Cc:** Porianda, Zachary; Katriana Roh
**Subject:** Re: AG Edwards v. Slayden - plaintiff's documents; Deiderich depo

I acknowledge receipt of this discovery request.

our letter to the court is ready to go. Because of the timing, it will be sent at 200pm.

---------------------------

Anthony Paduano
PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas Ninth Floor
New York, New York 10020
Tel: 212-785-9100
Fax: 212-785-9099
www.pwlawyers.com.

The information contained in this message is privileged and confidential and intended only for the individual recipient identified above. If the reader of this message is not the intended recipient, you are hereby notified that any distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone or e-mail and delete this message. Thank you.


-----Original Message-----
From: Ken Mennemeier <kcm@mgslaw.com>
To: Anthony Paduano
Sent: Thu Oct 11 15:55:27 2007
Subject: AG Edwards v. Slayden - plaintiff's documents; Deiderich depo

Anthony:

Plaintiff asserted in its papers and in its argument to the Court that defendants solicited clients to transfer accounts to Stifel before their resignation from Edwards. In particular, you referred to an ACAT form showing Kelly Stromgren as f/c, but with information redacted. I ask that you provide me an unredacted copy of that document immediately. Also, on behalf of the defendants, I ask that Plaintiff identify by name and account number each of the clients who Plaintiff claims were solicited by one of the defendant brokers before the broker resigned from Edwards. All the documents supporting these allegations should, of course, be among those produced by Mr. Hatcher for his deposition. Also, I'm conferring with others about Mr. Diederich being out of the country, and hope to get back to you relatively soon on that issue. Thanks.

Ken



From: Anthony Paduano [mailto:ap@pwlawyers.com]
Sent: Wednesday, October 10, 2007 6:54 PM
To: Ken Mennemeier
Subject: Santa rosa

Ken, please call me. If not tonight then in the morning. Thanks.


--------------------------
Anthony Paduano
PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas Ninth Floor
New York, New York 10020
Tel: 212-785-9100
Fax: 212-785-9099
www.pwlawyers.com.

The information contained in this message is privileged and confidential and intended only for the individual recipient identified above. If the reader of this message is not the intended recipient, you are hereby notified that any distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone or e-mail and delete this message. Thank you.

# EXHIBIT 2

071010_WHA_2.txt

Volume 1

Pages 1 - 43

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP

```
A.G. EDWARDS & SONS, INC.,          )
                                     )
          Plaintiff,                 )
                                     )
   VS.                               )  NO. C-07-05154-WHA
                                     )
SAMUEL SLAYDEN, DENISE GILSETH,      )
CATHY MCJILTON, and KELLY            )
STROMGREN,                           )
                                     )  San Francisco, California
          Defendants.                )  Wednesday
                                     )  October 10, 2007
                                     )  1:10 p.m.
```

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff:          PADUANO & WEINTRAUB LLP
                        1251 Avenue of the Americas
                        Ninth Floor
                        New York, New York  10020
                        (212) 785-9100
                        (212) 785-9099 (fax)
                    BY: ANTHONY PADUANO

For Defendants:         Mennemeier, Glassman & Stroud LLP
                        980 9th Street, Suite 1700
                        Sacramento, CA  95814
                        (916) 553-4000
                        (916) 553-4011 (fax)
                    BY: KENNETH C. MENNEMEIER
                        STEPHEN LAU

Reported By:    Lydia Zinn, CSR #9223, RPR
                Official Reporter - U.S. District Court

2

1           THE CLERK:  Calling Civil Action Number C-07-5154,
2   A.G. Edwards versus Slayden, for a motion hearing.
3           Could you please state your appearances for the

Page 1

071010_WHA_2.txt

3          THE COURT: All right. Who is it, back there?
4          MR. HUGHES: I think Mr. Mennemeier knows.
5          MR. MENNEMEIER: I believe it's a man by the name of
6     John Lee.
7          THE COURT: Lee?
8          MR. MENNEMEIER: John Lee.
9          THE COURT: All right. So Slayden is going to be
10    deposed Friday this week, starting at 9:00 a.m. Where do you
11    want that deposition to take place?
12         MR. PADUANO: At the office of Keesal, Young & Logan,
13    your Honor, if that's --
14         THE COURT: Where is that?
15         MR. PADUANO: Four Embarcadero.
16         THE COURT: Where does Mr. Slayden live?
17         MR. MENNEMEIER: He works in Santa Rosa. I don't
18    know what his residence is, but I believe it's Sonoma County.
19         THE COURT: All right. That's close enough. He can
20    come to that office. 9:00 a.m. Okay. We'll come back to
21    documents in a minute.
22         Mr. Lee will be deposed on Monday, 9:00 a.m., same
23    place.
24         MR. MENNEMEIER: Now, Mr. Lee, your Honor, lives in
25    Auburn/Sacramento area.

                              Lydia Zinn, CSR,  RPR
                      Official Reporter - U.S. District Court
                                  (415)  531-6587

                                                                34

1          THE COURT: Well, your office -- your office is in
2     Sacramento. All right. We'll take his deposition in
3     Sacramento. So we'll take that -- you take the deposition in
4     Mr. Mennemeier's office Monday, 9:00 a.m.
5          Okay. Mr. Mennemeier, what deposition do you want to

Page 30

071010_WHA_2.txt

 6  take?

 7          MR. MENNEMEIER:  May I have just a second,
 8  your Honor?

 9          Your Honor, I would like the deposition of
10  Gene Diederich, director of branch operations.

11          THE COURT:  Diederich?

12          MR. MENNEMEIER:  Yes, sir.  D-i-e-d-e-r-i-c-h.

13          THE COURT:  All right.  Where does he live?

14          MR. MENNEMEIER:  I believe he's in the St. Louis
15  area.  St. Louis, Missouri, your Honor.

16          THE COURT:  Normally, he's got to be deposed back
17  there.  Do you want to bring him out here?

18          MR. PADUANO:  I don't know if he knows anything about
19  the facts.  I can tell you --

20          THE COURT:  Doesn't matter.  You're not going to get
21  any depositions unless they get two.

22          MR. PADUANO:  Your Honor, he's the regional
23  president.  In San Francisco, actually, Mr. Hatcher --

24          THE COURT:  Who do you represent knows the most about
25  this?

                        Lydia Zinn, CSR,   RPR
              Official Reporter -  U.S. District Court
                         (415)   531-6587

                                35

 1          MR. PADUANO:  Mr. Hatcher.  Before this Court --

 2          THE COURT:  Why can't they take Diederich?

 3          MR. PADUANO:  I've never spoken to the man.  I don't
 4  know what, if anything, he knows about this at all.  I can tell
 5  the Court he didn't contribute at all to this case.

 6          THE COURT:  Why do you want to take his deposition?

 7          MR. MENNEMEIER:  Your Honor, because he's the person
 8  who made the comment reflected on the attachment to the Lee

071010_WHA_2.txt

9  declaration.

10       THE COURT: I think that's good enough. I read that.
11  It hurts your case. I don't blame them for wanting to.

12       All right. So you have to confirm tomorrow all these
13  depositions that you want to take. They don't happen unless,
14  by tomorrow at 3:00 p.m., you confirm that Diederich is going
15  to be available in St. Louis at a place to be determined on
16  Wednesday of next week at 9:00 a.m.

17       And if you don't confirm that in writing by 3:00 p.m.
18  tomorrow, these other depositions that you want to take are
19  off.

20       MR. PADUANO: Understand, your Honor.

21       THE COURT: All right. You want to take Hatcher's
22  deposition?

23       MR. MENNEMEIER: Yes, sir, your Honor.

24       THE COURT: All right. Hatcher will be Friday of
25  next week, 9:00 a.m. And he's here in town, right?

                          Lydia Zinn, CSR, RPR
                   Official Reporter - U.S. District Court
                             (415) 531-6587

                                                              36

1        MR. PADUANO: I believe he is, your Honor.
2        THE COURT: All right. Where do you want to take
3   him? It's going to have to be here in -- how about at their
4   law office?
5        MR. HUGHES: Sure.
6        MR. MENNEMEIER: In Mr. Hughes' office.
7        THE COURT: Hughes' office. 9:00 a.m. Sure. Okay.
8   Now, those are the four depositions.
9        I want -- for the Slayden deposition, Mr. Slayden has
10  got to bring with him to the deposition every single document
11  he took with him; every single computer file he took with him.

071010_WHA_2.txt

12  Any information of any type that he took with him, he's got to
13  bring.
14         Mr. Lee's got to bring to the deposition everything
15  that he got, all information that he got from Mr. Slayden at or
16  about the time or before the transition.
17         Okay. Now, that's the discovery plan. The Court's
18  going to order that FINRA start this in 15 days. I know
19  they're not a party to the case, but I'm going to be very
20  disappointed if anyone throws a monkey wrench in the
21  proceedings. So they got to get going in 15 days. If not, you
22  come back to see me. All relief will be vacated.
23         MR. MENNEMEIER: I'm sorry. Fifteen days from what,
24  your Honor?
25         THE COURT: From right now, because I'm going to

                              Lydia Zinn, CSR,  RPR
                   Official Reporter -  U.S. District Court
                              (415)  531-6587

                                    37

1  issue a T.R.O. of sorts. Here's what the T.R.O. is going to
2  say.
3          With respect to soliciting workers, there's no
4  relief, except for the one person who had a contract. And that
5  person's name was what?
6          MR. MENNEMEIER: Cathy McJilton, your Honor.
7          THE COURT: All right. She's barred from soliciting
8  employees directly or indirectly who used to work for or still
9  work for A.G. Edwards or do work for A.G. Edwards; now,
10 Wachovia.
11         On the other hand, the other people are not barred
12 from soliciting former employees. This is without prejudice to
13 the plaintiff proving up later that somebody violated their
14 fiduciary duties while they still were with A.G. Edwards, and

Page 33

071010_WHA_2.txt

15  getting billions of dollars in punitive damages; but right now,
16  they're no longer under any fiduciary duty, and the Court
17  doesn't buy the argument that there's this vague code of
18  conduct that -- and that people are chattel, and so forth.  So
19  the Court doesn't buy that, at least, on this record.
20          Now, with respect to the clients of the firm, the
21  Court can't do anything about any solicitation that went out
22  before today; but starting today, there will be no more
23  solicitation by any of these people who left A.G. Edwards.
24  Zero.
25          And -- but any solicitation that went out prior to

                            Lydia Zinn, CSR,   RPR
                    Official Reporter -  U.S. District Court
                                (415)   531-6587
                                                                38

1   2:00 o'clock today, fine.  Starting 2:00 o'clock today, there
2   won't be any more solicitations until FINRA -- F-I-N-R-A -- or
3   this Court modifies the order to allow it.
4           And the reason for that is that I recognize that when
5   somebody goes from personal services to A -- goes from Firm A
6   to Firm B, normally, they can give notice.  It sounds like
7   that's already happened here anyway, but I'm concerned with the
8   volume of information that was taken, and this idea that the
9   protocol applied in the case, when it turns out to be a
10  completely phony argument.
11          Fifteen days.  We're not going to exacerbate the
12  situation.  And no more solicitation.
13          Now, I want to be clear.  If a client calls up these
14  guys that left -- these men and women that left -- and says,
15  "We want to go with you.  We don't want to stay with
16  A.G. Edwards.  We like you," no problem.  They can do that.
17          And at that point, these four defendants can say,

18  "Great. We want to have you. Here's the paperwork." That's
19  all right; but what the four can't do is affirmatively contact
20  them and affirmatively solicit prior to a client of the
21  plaintiffs contacting them and asking for them to change firms.
22  So it's okay if the client makes the -- initiates the contact,
23  but it's not okay if the four defendants do so.
24      Now, it will be -- even though -- even though --
25  let's see. What's the name of this company? Slayden?

                    Lydia Zinn, CSR,  RPR
            Official Reporter -  U.S. District Court
                         (415)  531-6587

39

1       MR. MENNEMEIER: Stifel, Nicolaus.
2       THE COURT: Stifel's lawyers here -- I'm ordering him
3   that if I find out that Stifel has been soliciting, this T.R.O.
4   runs against you.
5       MR. HUGHES: Understood, your Honor.
6       THE COURT: So don't try to get around it indirectly
7   by saying, "Well, they weren't a party."
8       So this is just for 15 days until you get before
9   FINRA, and FINRA can fix it up any way that's right; but in my
10  judgment, whatever rights the plaintiff is going to be able to
11  establish will completely have been evaporated in 15 days, so
12  the further solicitation will stop of clients for 15 days.
13  Well, until such time as FINRA or this Court modifies its --
14  I'm basing this -- I'm saying 15 days only because that's what
15  counsel have told me.
16      Now, all information that these four defendants have
17  taken with them of any type must be preserved. It's evidence
18  now. And if the Court finds out there's been any destruction,
19  including e-mails and so forth, it will be destruction of
20  evidence, and I will have to consider referring it to the

071010_WHA_2.txt

21  U.S. Attorney for obstruction of justice, so don't go there.
22  Preserve the evidence.
23          Whatever accounts that they have already managed to
24  get -- the 240 -- more power to them.  They're going to have
25  to -- at least, I'm not going to stop them.  For the time

Lydia Zinn, CSR, RPR
Official Reporter - U.S. District Court
(415) 531-6587

40

1  being, they get to continue on using, servicing those clients,
2  and any more that are in the pipeline for which the paperwork
3  is already started.  They're going to be able to get those, but
4  there won't be any new active solicitations from this day
5  forth.
6          Now, the plaintiff is ordered that if a client calls
7  in and says, "I want to talk to Mr. Slayden.  Where is he?"
8  You say, "He's gone to work for another firm, but here's his
9  phone number," so that if somebody's trying to reach him, you
10 don't sabotage his efforts to maintain -- and then if that
11 client calls Mr. Slayden, it's perfectly okay for Slayden to
12 call back and to talk to that person and, in my judgment,
13 solicit that person to come over, but that's because the phone
14 call was initially made by -- and so your company on the
15 plaintiff's side ought to keep good records of who's called in.
16          MR. PADUANO:  We will, your Honor.
17          THE COURT:  I think that's all I have.
18          What else do you have for me?
19          MR. PADUANO:  Your Honor, one thing as to what the
20 Court -- Mr. Lee -- in terms of the documents Mr. Lee must
21 bring as a corporate representative for A.G. Edwards, we would
22 ask -- I just heard his name as the person who hired
23 Mr. Slayden.  We'd ask that the records that Mr. Slayden gave

Page 36

071010_WHA_2.txt

24  to A.G. Edwards in some form. I don't want to limit it -- that
25  Mr. Lee says somebody else got them. I don't know what

Lydia Zinn, CSR, RPR
Official Reporter - U.S. District Court
(415) 531-6587

41

1  Mr. Lee --
2           THE COURT: Well, look. Any records that Mr. Lee
3  knows went from A.G. Edwards to Stifel -- whether it came
4  directly to Lee or to someone else, if he knows about it, he's
5  got to take them to a deposition the deposition; but I am not
6  going to require that he be under some hell-or-high-water
7  commitment to go out and dig up everything. This is all on a
8  hurry-up basis.
9           MR. PADUANO: I understand. Thank you.
10          THE COURT: So he doesn't have to do a big-firm,
11 scorched-earth search to find all those materials.
12          MR. MENNEMEIER: Your Honor, I had a couple
13 questions, too.
14          THE COURT: Of course. Go ahead.
15          MR. MENNEMEIER: First of all, in the deposition of
16 Mr. Hatcher, we didn't talk about any documents he would bring.
17          THE COURT: What documents could he bring? What do
18 you want?
19          MR. MENNEMEIER: Well, I would -- any documents, if
20 he has any, that would support the allegations he made in his
21 declaration.
22          THE COURT: Fine. Any documents that Mr. Hatcher has
23 that he believes support the allegations made in his
24 declaration should be brought to the deposition.
25          MR. MENNEMEIER: And then my second question,

Lydia Zinn, CSR, RPR

1  your Honor, was: I just wanted to make sure I was clear on the
2  effect of the Court's order after 15 days.
3         THE COURT: Well, it stays in effect ad infinitum,
4  until FINRA modifies it or until I modify it, but I will tell
5  you that I'm not going to put a terminal date on it, because I
6  expect that it will go forward in 15 days, but for your
7  benefit, if the -- if it doesn't start in 15 days, and there's
8  a snafu, you come in and see me, and I may vacate this, because
9  I will tell you I don't trust NASDAQ or -- not NASDAQ. What is
10 it? -- NASD.
11         All those arbitration outfits -- they are delay city.
12 And if there's delay city involved here because the plaintiff
13 has gotten some relief and wants to drag it out, I'm going to
14 vacate the order. So it's -- the burden is on the plaintiff to
15 get in there and get this arbitration going, and to stop the
16 delay city.
17         I have taken cases back. I won't dismiss a NASD
18 thing. I will give them six months to get it done. If this
19 doesn't do it, I'll bring in a jury and we'll try the case,
20 because the NASD is a -- NASD -- I don't want to say it's a
21 gimmick, but -- because it's better than a gimmick. It's just
22 a procedural mechanism to delay justice in some cases.
23         So I feel the same way here. This thing doesn't get
24 off the ground, and you feel like you're being delayed or you
25 get into it and they start dragging their feet because they've

071010_WHA_2.txt

1  got three of them, they can't agree on it, you come see me.
2  We'll get a jury to decide this case. Then you can all fight
3  it out in the Ninth Circuit; but I'm telling you that this
4  arbitration has been greatly overblown and overstated as to its
5  true value. The original court resolution system works a lot
6  better than arbitration because it's faster, so forth. I'll
7  promise you you'll have a resolution of this probably by
8  December 31 if you stay here.
9          I urge you both to think about doing that, but I'm
10 going to assume that until I hear otherwise, but if it does go
11 into this FINRA thing, then we'll give that a fair, good-faith
12 shot. See how it goes. Maybe it will be over and expedited,
13 just like Counsel says.
14         Okay. I need to run. All right. You two meet and
15 confer. Give me a form of order by Friday. Would you, please?
16         MR. PADUANO: We'll do that, your Honor.
17         THE COURT: That captures what we've done here. All
18 right? But the order is in effect right now.
19         MR. MENNEMEIER: That's clear, your Honor. Thank
20 you.
21         THE COURT: It's verbal, but you can put it in
22 writing. I would appreciate it. Thank you.
23         (Proceedings adjourned at 2:08 p.m.)
24                  - - - -
25

                            Lydia Zinn, CSR,  RPR
                   Official Reporter -  U.S. District Court
                            (415)  531-6587

Page 39

CERTIFICATE OF REPORTER

I, LYDIA ZINN, Official Reporter for the United States

071010_WHA_2.txt

Court, Northern District of California, hereby certify that the foregoing proceedings in C-07-05154-WHA, A.G. EDWARDS & SONS, INC., V. SAMUEL SLAYDEN, DENISE GILSETH, CATHY MCJILTON, AND KELLY STROMGREN, were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

---

Lydia Zinn, CSR 9223, RPR
Wednesday, October 10, 2007

Lydia Zinn, CSR, RPR
Official Reporter - U.S. District Court
(415) 531-6587