1  MENNEMEIER, GLASSMAN & STROUD LLP
   KENNETH C. MENNEMEIER (SBN 113973)
2  STEPHEN LAU (SBN 221051)
   980 9th Street, Suite 1700
3  Sacramento, CA 95814
   Telephone: (916) 553-4000
4  Facsimile: (916) 553-4011

5  Attorneys for Defendants
   Samuel Slayden, Denise Gilseth,
6  Cathy McJilton, and Kelly Stromgren

7

8                  IN THE UNITED STATES DISTRICT COURT

9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 | A.G. EDWARDS & SONS, INC.,                ) CASE NO: C 07-05154 WHA
                                               )
12 |         Plaintiff,                        ) **DECLARATION OF SAM SLAYDEN IN**
                                               ) **SUPPORT OF DEFENDANTS' MOTION**
13 | v.                                        ) **TO MODIFY TEMPORARY**
                                               ) **RESTRAINING ORDER**
14 | SAMUEL SLAYDEN, DENISE GILSETH,           )
   | CATHY MCJILTON, and KELLY                 ) Date:       November 9, 2007
15 | STROMGREN,                                ) Time:       tba
                                               ) Courtroom:  9
16 |         Defendants.                       )
                                               ) Complaint Filed:  October 9, 2007
17 |                                           ) TRO Issued:       October 10, 2007

18

...

28

445.03.PLE.Modify.TRO.Decl.Slayden.wpd              1
DECLARATION OF SAMUEL SLAYDEN IN SUPPORT OF DEFENDANTS' MOTION TO MODIFY TRO

## DECLARATION OF SAMUEL SLAYDEN

I, Samuel Slayden, declare as follows:

1. I presently work as a financial consultant and branch manager for Stifel, Nicolas & Company, a securities broker-dealer firm. Before joining Stifel, I worked for A.G. Edwards. I resigned from A.G. Edwards on Thursday, September 20, 2007, and immediately joined Stifel. When I left A.G. Edwards, I was a financial consultant and branch manager of A.G. Edwards' Santa Rosa office. I had been at A.G. Edwards since 1984. Stifel is a direct competitor of A.G. Edwards.

2. Although I was happy at A.G. Edwards, on May 31, 2007, Wachovia Securities announced that it would acquire A.G. Edwards. I understood that, with that merger, A.G. Edwards would cease to exist.

3. Following the announcement that Wachovia would acquire A.G. Edwards, many competing securities brokerage firms solicited me to join them. Those firms included Merrill Lynch, Raymond James, UBS, and RBC Dain Rauscher.

4. Shortly after the merger announcement, Wachovia's and A.G. Edwards' senior management told us (brokers and branch managers) that management realized that other brokerage firms would use the acquisition to try to lure A.G. Edwards brokers to work for them, and that Wachovia intended to offer A.G. Edwards brokers a retention package if they stayed on with Wachovia through the merger. Senior management asked us to consider Wachovia, to "kick the tires" and evaluate whether we might enjoy working for Wachovia, and to wait to make a decision on whether to stay or go until after we had given Wachovia a chance to explain its plans for those of us in A.G. Edwards' offices.

5. For several weeks, I took a "wait and see" approach. But, after a while, I came to see that staying on with Wachovia after the merger was not something that I wanted to do. Among other things, I realized that it was doubtful that Wachovia would keep A.G. Edwards' Santa Rosa office as a stand-alone office. Wachovia also has a branch in Santa Rosa, so consolidation of the A.G. Edwards branch with the Wachovia branch seemed like a possibility.

6. In addition, I know several of the people who work in Wachovia's Santa Rosa office, including the current branch manager. In fact, several of those people had previously worked at A.G. Edwards before leaving Edwards to join Wachovia (or one of its predecessor firms in Santa Rosa). For a variety of reasons, I knew that I would not want to work with those people at Wachovia.

7. I resigned from A.G. Edwards and joined Stifel on September 20, 2007.

8. Before resigning from A.G. Edwards, I did not tell any of my clients that I would be joining Stifel. I did not start telling clients that I had resigned from A.G. Edwards and had joined Stifel until September 20, 2007, after Stifel told me that it had transferred my securities license registration from A.G. Edwards to Stifel.

9. To the best of my knowledge, none of the contracts that I signed with A.G. Edwards prohibits me from contacting and soliciting the clients that I served at A.G. Edwards following my departure. I have never seen a so-called "non-solicitation" clause in any of those contracts.

10. In fact, so long as I was employed there, A.G. Edwards' senior management always told its brokers (including me) that it wanted brokers to stay only if they were happy at A.G. Edwards, that if brokers were not happy they were free to leave, and that A.G. Edwards's philosophy was that the client relationships belonged to the broker, and not A.G. Edwards. From those statements, I had always understood that, if I left A.G. Edwards, I was free to ask the clients whom I had served to transfer their accounts to my new employer.

11. In connection with my move from A.G. Edwards, I understand that Stifel mailed my clients notice that I had joined Stifel. I understand that Stifel did not put those announcements in the mail until after my securities registration had been transferred to Stifel (which I understand occurred on September 20, 2007).

12. I understand that A.G. Edwards alleges that I had clients fill out account transfer documentation before I left A.G. Edwards. I did no such thing. My understanding is that account transfer documentation was sent out to my clients with the letter announcing that I had joined Stifel, and that those announcements were not placed in the mail until late on September

20, 2007. I did not provide any clients with any account transfer documentation before I had joined Stifel.

13. Before resigning from A.G. Edwards, I did not solicit any brokers in the Santa Rosa office to join me at Stifel.

   a. Denise Gilseth and I left A.G. Edwards and joined Stifel on the same day, September 20, 2007, but I never solicited Denise to join me at Stifel. In fact, I did not know that Denise was considering Stifel as an employment alternative until August 27, 2007, when she informed me that she planned to be out of the office in meetings on Tuesday, August 28. I told her that I too would be out in meetings on August 28. In that conversation, we discovered that, independently, each of us had contacted Stifel's regional manager (John Lee) and that Mr. Lee had scheduled to meet with each of us at his office in Roseville at the same time the next day. On August 28, Denise and I met with John Lee at Stifel's office in Roseville. At that time, Stifel extended an employment offer to each of us. On the morning of August 29, Denise came in to my office and said that she liked Stifel and she thought that we should both accept Stifel's employment offers. I told her that I agreed, so we called Mr. Lee and informed him that each of us was accepting his employment offer. At no time did I ever solicit Denise to join me at Stifel.

   b. Kelly Stromgren joined Stifel on Monday, October 1, 2007. At no time did I ever solicit her to join me at Stifel. Rather, after I resigned on September 20, 2007, she called me and asked to meet. We met on Saturday, September 22, in my office. She told me that she did not want to work for Wachovia, and she asked about Stifel. I explained to her why I had decided to join Stifel. She said that she would like to continue working with me, and was interested in joining Stifel. So, I offered her a position with Stifel, which she accepted. We decided, though, that she would not join until Monday, October 1.

14. As for my assistant, Cathy McJilton, shortly after the merger announcement, she came to me and told me that she would not work for Wachovia. She went on to say that, if I decided to move to another firm, she would like to continue working with me. Ms. McJilton held the position of registered sales assistant. In that position, she did not maintain

her own set of clients; rather, she helped me and other brokers serve our respective clients. By 2007, Cathy and I had worked together for approximately 19 years, the last ten of which Cathy served as my assistant. Once I decided to move to Stifel, I informed her of my decision, whereupon she reconfirmed that she wanted to move with me.

15. I resigned from A.G. Edwards on September 20, 2007. When I resigned, based on my belief that I was free to serve my clients at my new firm and based on senior management's prior statements that brokers owned their client relationships, I believed that I was permitted to take various client documents and records with me.

16. In taking documents with me upon my resignation, I did not take any original A.G. Edwards documents. I left all original A.G. Edwards documents at A.G. Edwards.

17. Only after leaving A.G. Edwards was I informed that A.G. Edwards now objects to departing brokers taking any client records with them. That seemed to be a new approach by A.G. Edwards, since over twenty years at A.G. Edwards, I never heard of any instance in which A.G. Edwards had complained about a broker taking copies of the broker's clients' account records.

18. Upon learning A.G. Edwards was objecting to brokers taking copies of client account records with them upon resignation, I assembled and delivered to my counsel all of the records that I took with me when I left A.G. Edwards. I have not retained copies of any of those documents, with one exception (explained below). I understand that my counsel has returned those documents to A.G. Edwards.

19. The only A.G. Edwards document that I still have a copy of is a redacted version of a document known as a "Browse List," which has been redacted so that I have only client names and telephone numbers.

I declare under the penalty of perjury under the laws of the United States and under the laws of the State of California that the foregoing is true and correct. Executed in Santa Rosa, California, on November 7, 2007.

Samuel Slayden

445.03.PLD.Modify.TRO.Decl.Slayden.wpd                  5
DECLARATION OF SAMUEL SLAYDEN IN SUPPORT OF EX PARTE APPLICATION TO MODIFY TRO

Case Name: *A.G. Edwards & Sons, Inc. v. Slayden, et al.*
Case No.: U.S. District Court, Northern District of California, Case No. 07-CV-05154 WHA

# PROOF OF SERVICE

I declare as follows:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 980 9th Street, Suite 1700, Sacramento, California 95814. On November 7, 2007, I served the within documents:

**DECLARATION OF SAM SLAYDEN IN SUPPORT OF DEFENDANTS' MOTION TO MODIFY TEMPORARY RESTRAINING ORDER**

☒ by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and delivering to a Federal Express agent for delivery.

**ANTHONY PADUANO**
**PADUANO & WEINTRAUB LLP**
**1251 AVENUE OF THE AMERICAS**
**NINTH FLOOR**
**NEW YORK, NEW YORK 10020**
**FACSIMILE: 212.785.9099**

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepared in the ordinary course of business.

☒ I declare that I am employed in the office of a member of the bar of this Court at whose direction this service was made.

Executed on November 7, 2007, at Sacramento, California.

*/s/ Angela Knight*
Angela Knight