MENNEMEIER, GLASSMAN & STROUD LLP
KENNETH C. MENNEMEIER (SBN 113973)
STEPHEN LAU (SBN 221051)
980 9th Street, Suite 1700
Sacramento, CA 95814
Telephone: (916) 553-4000
Facsimile: (916) 553-4011

Attorneys for Defendants
Samuel Slayden, Denise Gilseth,
Cathy McJilton, and Kelly Stromgren

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.G. EDWARDS & SONS, INC., | CASE NO: C 07-05154 WHA |
| Plaintiff, | **DECLARATION OF DENISE GILSETH IN SUPPORT OF DEFENDANTS' MOTION TO MODIFY TEMPORARY RESTRAINING ORDER** |
| v. | |
| SAMUEL SLAYDEN, DENISE GILSETH, CATHY MCJILTON, and KELLY STROMGREN, | Date: November 9, 2007<br>Time: tba<br>Courtroom: 9 |
| Defendants. | Complaint Filed: October 9, 2007<br>TRO Issued: October 10, 2007 |

445.03.PLE.Modify.TRO.Decl.Gilseth.wpd       1
DECLARATION OF DENISE GILSETH IN SUPPORT OF DEFENDANTS' MOTION TO MODIFY TRO

## DECLARATION OF DENISE GILSETH

I, Denise Gilseth, declare as follows:

1.  I currently work as a financial consultant for Stifel, Nicolas & Company, a securities broker-dealer firm. Before joining Stifel, I was employed by A.G. Edwards. When I left A.G. Edwards, I was a financial consultant at A.G. Edwards' Santa Rosa office. I had been at A.G. Edwards since 1986. Stifel is a competitor of A.G. Edwards.

2.  I was content at A.G. Edwards, as evidenced by my longevity there. However, on May 31, 2007, Wachovia Securities announced that it would acquire A.G. Edwards. My understanding was that, after that merger, A.G. Edwards would no longer exist.

3.  Following news of that acquisition, several competing securities brokerage firms solicited me to join them. For example, I was solicited by (and I eventually interviewed with) Raymond James and Edward Jones.

4.  After the merger was announced, Wachovia's and A.G. Edwards' senior management told us that it realized that other brokerage firms would try to lure A.G. Edwards brokers to work for them, and that Wachovia intended to offer A.G. Edwards brokers a retention package if they stayed on with Wachovia. Senior management asked us to "kick the tires" at Wachovia and see whether we would enjoy working for Wachovia. We were also asked to wait to make a decision on whether to stay until after we had given Wachovia a chance to explain its plans to us.

5.  However, it was clear to me that staying on with Wachovia was the wrong move for me professionally. Foremost, I have long adhered to a "buy-and-hold" investment philosophy. While working for a stand-alone broker-dealer like A.G. Edwards, I faced no pressure to encourage account transactions or to cross-sell any affiliate's products or services. I did not want to become part of a culture where I might be under pressure to solicit transactions, or to cross-sell Wachovia's proprietary products and services. Also, I was frustrated that Wachovia's management refused to tell us about the changes that would occur after the merger, e.g., changes to broker compensation and changes to rates and fees to be charged to the client. In addition, several of the people in Wachovia's Santa Rosa office had previously been colleagues

in A.G. Edwards Santa Rosa office, and those people left Edwards under circumstances that would make it difficult for me to work with them again. All of these things would have a significant impact not only on the brokers, but also our clients So, for these and other reasons, I started looking seriously into my employment options.

6. My decision to leave to Wachovia, and my subsequent decision to join Stifel, were my own decisions entirely. At no point did Samuel Slayden solicit, recruit, or induce me to leave Wachovia or to join Stifel.

7. To the best of my knowledge, nothing in the contracts that I signed with A.G. Edwards restrains me from contacting and soliciting the clients that I served at A.G. Edwards following my departure. I have never seen a "non-solicitation" provision in those contracts.

8. In fact, so long as I was employed there, senior management at A.G. Edwards has always told us that it wanted brokers to stay only if they were happy at A.G. Edwards, that if brokers were not happy they were free to leave, and that A.G. Edwards' philosophy was that the client relationships belonged to the broker, and not A.G. Edwards. From those statements, I understood that, if I left A.G. Edwards, I was free to ask the clients whom I had served to transfer their accounts to my new employer.

9. I resigned from A.G. Edwards on September 20, 2007 and joined Stifel the same day. Because I believed that I was free to serve my clients at my new firm, and because of senior management's prior statements that brokers owned their client relationships, I thought that I was free to take various client documents and records with me. I took with me those documents that I believed were necessary to allow me to contact my clients, and to serve their needs appropriately during my transition from Edwards to another firm, should they decide to follow me to another firm.

10. In taking documents with me upon my resignation, I did not take any original A.G. Edwards documents. I left all original A.G. Edwards documents at A.G. Edwards.

11. Only recently was I informed that A.G. Edwards objected to departing brokers taking any client records with them. That seems to be a new approach by A.G. Edwards.

1  Over my time at A.G. Edwards, which dates back to 1986, I never heard of any instance in which
2  A.G. Edwards had complained about a broker taking copies of the broker's clients' account
3  records.

4      12.    Upon learning about A.G. Edwards' complaint, I had my assistant
5  assemble and deliver to my counsel almost all of the records that I took with me when I left A.G.
6  Edwards. I understand that my counsel has returned those documents to A.G. Edwards.

7      13.    The only documents that I currently retain are: (1) a redacted document
8  that contains only the names and phone numbers of the clients I served at Edwards (a redacted
9  version of a document known as a "Browse List") and (2) a Microsoft Outlook Contacts file that
10  contains the address and phone numbers of my business contacts as well as my notes of
11  conversations with them.

12      14.    For over ten years, I have been using that electronic file as both an
13  electronic Rolodex and notepad for the purpose of keeping track of my business contacts. The
14  business contacts contained in my Outlook file fall into three categories: (1) non-client contacts
15  (e.g., various referral sources and prospects); (2) clients I served at Edwards who have already
16  transferred their accounts to Stifel; and (3) clients I served at Edwards whose accounts currently
17  remain at Edwards. I believe that I am entitled to keep my Outlook data in connection with all
18  three categories of business contacts. All of the Outlook data consists of information that my
19  contacts – both clients and non-clients – entrusted to me, not Edwards.

20      15.    I understand that the Court may have concerns about my retention of
21  Outlook data pertaining to the third category of contacts, i.e., my notes from conversations with
22  clients whose accounts are currently at Edwards. If the Court is concerned about my retention of
23  such notes, and if the Court wants me to remove those notes from my computer as a condition to
24  allowing me to contact those former clients, I will do so immediately. (I would hope, though,
25  that if I were to obtain consent from those clients in the future, I would be able to regain access to
26  those notes.)

27      16.    The temporary restraining order that is currently in place against me has
28  had an enormous impact on my business, and on the welfare of my clients. I have many clients –

including elderly clients – who rarely take the initiative to call me. Those clients rely on me to contact them with any important information or developments in their accounts. My current inability to contact those clients not only threatens my relationship with them, but also the welfare of their accounts.

17. Before resigning from A.G. Edwards, I did not tell any of my clients that I would be joining Stifel. I did not inform any of my clients that I had joined Stifel until September 20, 2007, after I had resigned from A.G. Edwards, had joined Stifel, and was informed that Stifel had gotten my securities registration changed from A.G. Edwards to Stifel.

18. I understand that Plaintiff claims to have evidence that the Defendants in this case solicited clients to go to Stifel before they resigned from Edwards. Specifically, Plaintiff has presented an internal Edwards form relating to a client's request to transfer her account from Edwards to Stifel on September 28, 2007. (A copy of the document that A.G. Edwards submitted to the Court (as Exhibit I to the Declaration of William Hatcher) is attached as Exhibit A. A copy of that document showing the account number #3545-6975, but with only the client's last name redacted, is attached as Exhibit B.) That document identified the client's broker as Kelly Stromgren, who resigned on October 1, 2007. In actuality, the client identified on that form is one whose accounts I have been servicing since approximately 1996. On September 28, that client transferred her accounts out of Edwards and into Stifel so that I may continue to service her accounts. By doing a simple search on A.G. Edwards's computer database, Edwards could have easily determined that the transferring customer was a longtime client of mine, and not Kelly Stromgren's. Indeed, all that A.G. Edwards had to do was to look at the client's account statement for the end of the preceding month. A copy of the client's account statement for account # 3545-6975 for August 2007 (showing the account number, but with the client's name and address redacted) is attached as Exhibit C.

19. In connection with my move from A.G. Edwards, I understand that Stifel mailed my clients notice that I had joined Stifel. I understand that Stifel did not put those announcements in the mail until after my securities registration had been transferred to Stifel (which, I was told, occurred on September 20, 2007).

445.03.PLE.Modify.TRO.Decl.Gilseth.wpd                          5
DECLARATION OF DENISE GILSETH IN SUPPORT OF DEFENDANTS' MOTION TO MODIFY TRO

20. Before resigning from A.G. Edwards, I did not solicit any brokers in the Santa Rosa office to join me at Stifel. Nor have I done so after joining Stifel.

I declare under the penalty of perjury under the laws of the United States and under the laws of the State of California that the foregoing is true and correct. Executed in Santa Rosa, California, on November 7, 2007.

*[signature]*
Denise Gilseth

**EXHIBIT A**

```
0269 ERC 09/28/07 13:32
ATTN: D914 - Stromgren, Kelly
RE:
```


Material Redacted

```
                                                                  Page 1
                                                          CC: BRANCH MGR
              ********** IMMEDIATE ACTION REQUIRED **********  ACCT:
WE HAVE RECEIVED INSTRUCTIONS TO TRANSFER THE ABOVE ACCOUNT TO STIFEL, NICOLAUS
& COMPANY INCORPORATED WE ARE IN THE PROCESS OF REVIEWING THE REQUEST. IF
APPROVED YOUR REP ACCESS TO THE ACCOUNT WILL BE REMOVED ON THE NEXT BUSINESS DAY
AND ALL OPEN ORDERS WILL BE CANCELLED AUTOMATICALLY.
         ******** TO:    FINANCIAL CONSULTANT *******
     ******** NO TRADING OR WITHDRAWALS IN THE ACCOUNT ARE PERMITTED ****
     *** HOWEVER, IF THIS TRANSFER REQUIRES A LIQUIDATION OF SECURITIES, ***
            *** YOU WILL BE ADVISED BY SEPARATE WIRE. ***

ANY FUTURE CHECKS OR CHARGES WILL BE RETURNED ACCOUNT CLOSED.

IF THIS IS AN IRA OR QUALIFIED PLAN WITH AGE AS CUSTODIAN (STAGE I) OR QUALIFIED
PLAN USING AGE'S PROTOTYPE (STAGE II) THE CURRENT YEAR'S ANNUAL FEE IS CHARGED.
IN ADDITION, A TRANSFER FEE WILL BE IMPOSED ON ALL ACCOUNTS.
ANY QUESTIONS REGARDING THE ABOVE SHOULD BE DIRECTED TO THE UNDERSIGNED.

THANKS,
SERVICE CERNTER / CVB / 2228
OUTGOING TRANSFER DEPT.


                               (end)
```

**EXHIBIT B**

```
                                                              Page 1
                                              CC: BRANCH MGR
                                              ACCT: 35456975
0269 ERC 09/28/07 13:32
ATTN: D914 - Strongren, Kelly
RE:   [client name redacted]
      ********** IMMEDIATE ACTION REQUIRED **********

WE HAVE RECEIVED INSTRUCTIONS TO TRANSFER THE ABOVE ACCOUNT TO STIFEL, NICOLAUS
& COMPANY INCORPORATED WE ARE IN THE PROCESS OF REVIEWING THE REQUEST. IF
APPROVED YOUR REP ACCESS TO THE ACCOUNT WILL BE REMOVED ON THE NEXT BUSINESS DAY
AND ALL OPEN ORDERS WILL BE CANCELLED AUTOMATICALLY.
        ******** TO:   FINANCIAL CONSULTANT ********
  ******** NO TRADING OR WITHDRAWALS IN THE ACCOUNT ARE PERMITTED ****
  *** HOWEVER, IF THIS TRANSFER REQUIRES A LIQUIDATION OF SECURITIES, ***
        *** YOU WILL BE ADVISED BY SEPARATE WIRE. ***

ANY FUTURE CHECKS OR CHARGES WILL BE RETURNED ACCOUNT CLOSED.

IF THIS IS AN IRA OR QUALIFIED PLAN WITH AGE AS CUSTODIAN (STAGE I) OR QUALIFIED
PLAN USING AGE'S PROTOTYPE (STAGE II) THE CURRENT YEAR'S ANNUAL FEE IS CHARGED.
IN ADDITION, A TRANSFER FEE WILL BE IMPOSED ON ALL ACCOUNTS.
ANY QUESTIONS REGARDING THE ABOVE SHOULD BE DIRECTED TO THE UNDERSIGNED.

THANKS,
SERVICE CERNTER / CVB / 2228
OUTGOING TRANSFER DEPT.

                                                       (end)
```

AGE-SR 000001

**EXHIBIT C**

**EDWARDS** — FULLY INVESTED IN OU[R]
Member SIPC   A.G. Edwards

ACCOUNT #: 3545-6975  [NAME REDACTED]
FINANCIAL CONSULTANT: D910 | DENISE GILSETH | 707/528-2332   800/972-4800

FOR THE PERIOD: August 1, 2007 - August 31, 2007

## Account Information

[ NAME AND
ADDRESS
REDACTED ]

**BRANCH ADDRESS:**
P O BOX 908
SANTA ROSA CA 95402

**PHONE:**
707/528-2332
800/972-4800 Toll Free

## For Your Consideration

With a new school year freshly underway, the rising cost of college education i[s] of mind. It's never too early to help provide for your child's or grandchild's futu[re] starting an education fund. Your A. G. Edwards financial consultant can tell yo[u] much a college education will cost at a specific school, discuss tax-advantage[d] accounts designed for saving for college, and point out the difference starting e[arly] makes when building education savings. Contact your financial consultant for [a] complimentary college cost analysis.

|  | Value on 07/31/2007 | % | Value on 08/31/2007 | % |
|---|---|---|---|---|
| Cash, Money Fund & Bank Deposits | 22,778.96 | 9.05 | 20,319.48 | 8.09 |
| Equities | 148,232.42 | 58.91 | 149,607.95 | 59.53 |
| Taxable Bonds | 75,704.25 | 30.10 | 76,220.00 | 30.33 |
| Mutual Funds | 4,876.73 | 1.94 | 5,143.78 | 2.05 |
| **Total Account Value** | **$251,592.36** | **100.00%** | **$251,291.21** | **100.00%** |

AGE Bank Deposit Program balances ("Bank Deposits") are held at program banks and insured up to $100,000 ($250,000 for IRAs) bank by the Federal Deposit Insurance Corporation (FDIC) for each category of legal ownership with a total of $1 million in FDIC Insur[ance] deposited at multiple banks. Bank Deposits are not covered by SIPC. See www.agedwards.com/bankdeposit for current terms an[d]

## Portfolio At-A-Glance



YOUR ALLOCATION ON
08/31/2007
TOTAL ACCOUNT VALUE
$251,291.21

Case Name: *A.G. Edwards & Sons, Inc. v. Slayden, et al.*
Case No.: U.S. District Court, Northern District of California, Case No. 07-CV-05154 WHA

# PROOF OF SERVICE

I declare as follows:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 980 9th Street, Suite 1700, Sacramento, California 95814. On November 7, 2007, I served the within documents:

**DECLARATION OF DENISE GILSETH IN SUPPORT OF DEFENDANTS' MOTION TO MODIFY TEMPORARY RESTRAINING ORDER**

☒ by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and delivering to a Federal Express agent for delivery.

**ANTHONY PADUANO**
**PADUANO & WEINTRAUB LLP**
**1251 AVENUE OF THE AMERICAS**
**NINTH FLOOR**
**NEW YORK, NEW YORK 10020**
**FACSIMILE: 212.785.9099**

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepared in the ordinary course of business.

☒ I declare that I am employed in the office of a member of the bar of this Court at whose direction this service was made.

Executed on November 7, 2007, at Sacramento, California.

_____
Angela Knight