1  MENNEMEIER, GLASSMAN & STROUD LLP
   KENNETH C. MENNEMEIER (SBN 113973)
2  STEPHEN LAU (SBN 221051)
   980 9th Street, Suite 1700
3  Sacramento, CA 95814
   Telephone: (916) 553-4000
4  Facsimile: (916) 553-4011

5  Attorneys for Defendants
   Samuel Slayden, Denise Gilseth,
6  Cathy McJilton, and Kelly Stromgren

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  A.G. EDWARDS & SONS, INC.,            )   CASE NO: C 07-05154 WHA
                                          )
12              Plaintiff,                )   **DECLARATION OF KELLY STROMGREN**
                                          )   **IN SUPPORT OF DEFENDANTS' MOTION**
13  v.                                    )   **TO MODIFY TEMPORARY**
                                          )   **RESTRAINING ORDER**
14  SAMUEL SLAYDEN, DENISE GILSETH,       )
    CATHY MCJILTON, and KELLY             )   Date:        November 9, 2007
15  STROMGREN,                            )   Time:        tba
                                          )   Courtroom:   9
16              Defendants.               )
                                          )   Complaint Filed:   October 9, 2007
17  _____ )   TRO Issued:        October 10, 2007

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF KELLY STROMGREN IN SUPPORT OF MOTION TO MODIFY TRO

1

## DECLARATION OF KELLY STROMGREN

2      I, Kelly Stromgren, declare as follows:

3      1.      I am employed as a financial consultant for Stifel, Nicolas & Company, a

4 securities broker-dealer firm, in its Santa Rosa office. Before joining Stifel, I was employed by

5 A.G. Edwards. When I left Edwards, I was a financial consultant in its Santa Rosa office. I had

6 been at A.G. Edwards since 1996.

7      2.      I enjoyed working at A.G. Edwards, as evidenced by my longevity there.

8 However, on May 31, 2007, Wachovia Securities announced that it would acquire A.G. Edwards.

9 I understood that, once Wachovia merged A.G. Edwards into itself, A.G. Edwards would no

10 longer exist.

11      3.      Following news of that acquisition, several competing securities brokerage

12 firms solicited me to join them. For example, I was solicited by, and seriously considered

13 joining, Raymond James, Edward Jones, and Morgan Stanley.

14      4.      After the merger was announced, Wachovia's and A.G. Edwards' senior

15 management told us (brokers) that they realized that other brokerage firms would try to lure us

16 away, and that Wachovia intended to offer A.G. Edwards brokers a retention package to stay on

17 with Wachovia. Senior management asked us to "kick the tires" and see whether we would

18 enjoy working for Wachovia. Management also asked us to wait to make a decision on whether

19 to stay until after we had given Wachovia a chance to explain its merger plans.

20      5.      At first, I took a "wait and see" attitude. Over the course of the summer,

21 though, it became clear that staying on with Wachovia would be the wrong move for me. I knew

22 some of the employees in Wachovia's Santa Rosa office and did not want to work with them. I

23 was also concerned about institutional pressures that, I feared, Wachovia would likely impose on

24 its brokers. So, for these and other reasons, I started to consider my options.

25      6.      I resigned from A.G. Edwards and joined Stifel on Monday, October 1,

26 2007.

27

28

1        7.     My decision to leave to Wachovia, and my subsequent decision to join

2 Stifel, were my own decisions entirely.  At no point did Samuel Slayden solicit, recruit, or induce

3 me to leave Wachovia or to join Stifel.  Nor did Denise Gilseth.

4        8.     Before resigning from A.G. Edwards, I did not tell any of my clients that I

5 would be joining Stifel.  I did not inform any of my clients that I had joined Stifel until October

6 1, 2007, after I had resigned from A.G. Edwards, had joined Stifel, and was informed that Stifel

7 had transferred my securities registration from A.G. Edwards to Stifel.

8        9.     I understand that Plaintiff claims to have evidence that I solicited clients to

9 transfer their accounts to Stifel before I resigned from Edwards.  Specifically, Plaintiff has

10 present an internal Edwards form, dated September 28, 2007,  relating to a client's request to

11 transfer her account from Edwards to Stifel.  The redacted version of the document that Edwards

12 provided to the Court identifies me as the client's broker, but does not identify the client's name

13 or account number.  But, after the Court had issued the restraining order, I was shown a complete

14 copy of that form, including the client's name.  Upon seeing the name, I knew immediately that

15 the person named on that form was not a client whom I had ever served, nor did I ever solicit that

16 person to transfer her accounts to Stifel.  Rather, that person is a long-time client of Denise

17 Gilseth.  It appears that, when Denise resigned on September 20, 2007, that client was one of

18 several whose accounts  were reassigned to me.

19       10.    I believe that Edwards could have easily determined whether the client

20 whose name appeared on the form that Edwards presented to the Court was my client or not.  The

21 client's broker is a piece of information that Edwards routinely includes on client account

22 statements.  Edwards routinely generates and sends monthly account statements to its clients.

23 Those statements routinely identify the client's broker.  Edwards routinely retains copies of those

24 account statements within its computer system.  Thus, if Edwards had merely looked at the

25 client's monthly account statements for August 2007 (which Edwards had already generated and

26 mailed in September), it would have seen that Denise Gilseth had been the client's financial

27 consultant at Edwards, and not me.

28

DECLARATION OF KELLY STROMGREN IN SUPPORT OF MOTION TO MODIFY TRO

1        11.    In connection with my move from A.G. Edwards, I understand that Stifel

2    mailed my clients notice that I had joined Stifel. I understand that Stifel did not put those

3    announcements in the mail until after my securities registration had been transferred to Stifel

4    (which, I was told, occurred on October 1, 2007).

5        12.    I understand that I signed a "Supplementary Training Agreement for a

6    Financial Consultant," apparently in May 1996. I also understand that paragraph 5 of that

7    agreement contains language prohibiting me from soliciting A.G. Edwards employees for other

8    employment for a period 180 days after the termination of my employment at Edwards. But, it

9    should also be noted that, when I resigned from A.G. Edwards, that provision was no longer in

10   effect. Specifically, a later paragraph of that agreement provides that other provisions of the

11   agreement, including paragraph 5, no longer apply after I complete thirty-six months of

12   continuous employment with A.G. Edwards. Because I remained with A.G. Edwards from May

13   1996 through October 2007, I fulfilled that thirty-six month obligation, such that the non-

14   solicitation provision in paragraph 5 no longer applies to me. At any rate, since resigning from

15   A.G. Edwards, I have not solicited any brokers in Edwards' Santa Rosa office. Nor did I do so

16   prior to resigning from A.G. Edwards.

17       13.    To the best of my knowledge, nothing in the contracts that I signed with

18   A.G. Edwards restrains me from contacting and soliciting the clients that I served at A.G.

19   Edwards following my departure. I have never seen a "non-solicitation" provision in those

20   contracts.

21       14.    In fact, so long as I was employed there, senior management at A.G.

22   Edwards has always told us that it wanted brokers to stay only if they were happy at A.G.

23   Edwards, that if brokers were not happy they were free to leave, and that A.G. Edwards'

24   philosophy was that the client relationships belonged to the broker, and not A.G. Edwards. From

25   those statements, I understood that, if I left A.G. Edwards, I was free to ask the clients whom I

26   had served to transfer their accounts to my new employer.

27       15.    I resigned from A.G. Edwards on October 1, 2007 and joined Stifel the

28   same day. Because I believed that I was free to serve my clients at my new firm, and because of

DECLARATION OF KELLY STROMGREN IN SUPPORT OF MOTION TO MODIFY TRO

1   senior management's prior statements that brokers owned their client relationships, I thought that

2   I was free to take various client documents and records with me. I took with me those documents

3   that I believed were necessary to allow me to contact my clients, and to serve their needs during

4   my transition from Edwards to another firm, should they decide to follow me to another firm.

5           16.     In taking documents with me upon my resignation, I did not take any

6   original A.G. Edwards documents. I left all original A.G. Edwards documents at A.G. Edwards.

7           17.     Only recently was I informed that A.G. Edwards objected to departing

8   brokers taking any client records with them. That seems to be a new approach by A.G. Edwards.

9   Over my time at Edwards, which dates back to 1996, I never heard of any instance in which A.G.

10  Edwards had complained about a broker taking copies of the broker's clients' account records.

11          18.     Upon learning about A.G. Edwards' complaint, I assembled and delivered

12  to my counsel almost all of the records that I took with me when I left A.G. Edwards. I

13  understand that my counsel plans to return those documents to A.G. Edwards.

14          19.     The only documents that I currently retain are: (1) a redacted document

15  that contains only the names and phone numbers of clients I served at Edwards (a redacted

16  version of the document we knew as the "Browse List") and (2) two electronic Excel

17  spreadsheets that contain client names, contact information, and basic information about their

18  accounts. I use the redacted Browse List so that I have telephone numbers for people on that list

19  who have transferred their accounts to me at Stifel. I do not use the electronic spreadsheets, and

20  in fact would like to be able to delete them from my computers. I am prepared to delete the

21  computer files that contain those two spreadsheets if and when I receive the Court's permission

22  to do so. I have not deleted those files thus far, though, because I understand that the Court has

23  instructed the parties not to destroy any evidence in this case.

24          I declare under the penalty of perjury under the laws of the United States and

25  under the laws of the State of California that the foregoing is true and correct. Executed in Santa

26  Rosa, California, on November 7, 2007.

27

28                                          Kelly Stromgren

445.03.PLG.Modify.TRO.Decl.Stromgren.wpd          5
        DECLARATION OF KELLY STROMGREN IN SUPPORT OF MOTION TO MODIFY TRO

Case Name:   *A.G. Edwards & Sons, Inc. v. Slayden, et al.*
Case No.:    U.S. District Court, Northern District of California, Case No. 07-CV-05154 WHA

# PROOF OF SERVICE

I declare as follows:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 980 9th Street, Suite 1700, Sacramento, California 95814. On November 7, 2007, I served the within documents:

## DECLARATION OF KELLY STROMGREN IN SUPPORT OF DEFENDANTS' MOTION TO MODIFY TEMPORARY RESTRAINING ORDER

☒      by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and delivering to a Federal Express agent for delivery.

**ANTHONY PADUANO**
**PADUANO & WEINTRAUB LLP**
**1251 AVENUE OF THE AMERICAS**
**NINTH FLOOR**
**NEW YORK, NEW YORK 10020**
**FACSIMILE: 212.785.9099**

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepared in the ordinary course of business.

☒      I declare that I am employed in the office of a member of the bar of this Court at whose direction this service was made.

Executed on November 7, 2007, at Sacramento, California.

Angela Knight