1   Philip McLeod, CASB NO. 101101
    philip.mcleod@kyl.com
2   Cameron Stout, CASB NO. 117373
    cameron.stout@kyl.com
3   KEESAL, YOUNG & LOGAN
    A Professional Corporation
4   Four Embarcadero Center, Suite 1500
    San Francisco, California 94111
5   Telephone: (415) 398-6000
    Facsimile: (415) 981-0136
6
    Anthony Paduano
7   (Admitted *Pro Hac Vice*)
    ap@pwlawyers.com
8   PADUANO & WEINTRAUB LLP
    1251 Avenue of the Americas, Ninth Floor
9   New York, New York 10020
    Telephone: (212) 785-9100
10  Facsimile: (212) 785-9099

11  Attorneys for Plaintiff
    A.G. EDWARDS & SONS, INC.

12

13              UNITED STATES DISTRICT COURT

14         FOR THE NORTHERN DISTRICT OF CALIFORNIA

15

16  A.G. EDWARDS & SONS, INC.,            )   Case No. 07-05154
                                          )
17                      Plaintiff,        )   PLAINTIFF A.G. EDWARDS & SONS,
                                          )   INC.'S MEMORANDUM OF POINTS
18          vs.                           )   AND AUTHORITIES IN OPPOSITION
                                          )   TO DEFENDANTS' MOTION TO
19  SAMUEL SLAYDEN, DENISE GILSETH,       )   MODIFY TEMPORARY RESTRAINING
    CATHY MCJILTON, and KELLY             )   ORDER
20  STROMGREN,                            )
                                          )
21                      Defendants.       )
                                          )
22                                        )
                                          )
23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

3

I.    PRELIMINARY STATEMENT...................................................................... 1

II.   STATEMENT OF FACTS............................................................................ 4

III.  ARGUMENT - THE COURT SHOULD NOT  MODIFY THE TEMPORARY
      RESTRAINING ORDER.......................................................................... 6

      A.    MODIFICATION OF THE TEMPORARY RESTRAINING ORDER
            DURING THE PENDING ARBITRATION IS IMPROPER.................. 6

      B.    THE TEMPORARY RESTRAINING ORDER SHOULD REMAIN IN
            PLACE PENDING COMPLETION OF THE ARBITRATION
            HEARING............................................................................................ 9

            1.    Edwards Made No Misrepresentations to the Court
                  during the October 10, 2007 Hearing; if anything, it is
                  Defendants who have Mislead the Court by Failing to
                  Advise the Court that the Arbitrators Denied
                  Defendants' October 30, 2007 Request to Vacate this
                  Court's TRO.................................................................. 9

            2.    Edwards Is Likely To Prevail On The Merits And
                  There Is A Possibility Of Irreparable Harm in
                  Defendants' Solicitation of Edwards' Clients. ......................... 16

            3.    Serious Questions Are Raised And The Balance Of
                  Hardships Tips Strongly In Favor Of Edwards...................... 19

IV.   CONCLUSION ......................................................................... 21

# TABLE OF AUTHORITIES

## Cases

ABBA Rubber Co. v. Sequist, 235 Cal. App. 3d 1 (1991)................................16

Brock v. Kaiser Foundation Hospitals, 10 Cal. App. 4th 1790, 13 Cal. Rptr. 2d 678 (1992)
..........................................................................7

California Native Plant Society v. United States E.P.A., 2007 WL 2021796, (N.D. Cal.
July 10, 2007)..................................................................9

Courtesy Temp. Serv., Inc. v. Camacho, 222 Cal. App. 3d 1278 (1990) ...................16

Finley v. Saturn of Roseville, 117 Cal. App. 4th 1253, 12 Cal. Rptr. 3d 561 (2004).......7, 8

Friedman, Clark & Shapiro, Inc. v. Greenberg, Grant & Richards, Inc., 2001 WL
1136169 (Tex. App. Houston [14 Dist.] 2001)..............................................19

Green Tree Financial Corp. v. Bazzle, 539 U.S. 444 (2003)................................7

IDS Ins. Co. v. SunAmerica Life Ins. Co., 136 F.3d 537 (7th Cir. 1998), remanded to, 1999
WL 116220 (N.D. Ill. Feb. 26, 1999)......................................................7

Independent Assoc. of Mailbox Center Owners, Inc. v. Superior Ct., 133 Cal. App. 4th
396, 34 Cal. Rptr. 3d 659 (2005) ........................................................6

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley, 756 F.2d 1048 (4th Cir. 1985)..19

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Davis, 1998 WL 920328 (N.D. Tex. Dec.
30, 1998)...............................................................................19

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton, 844 F.2d 726 (10th Cir. 1986)...21

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kramer, 816 F. Supp. 1242 (N.D. Oh.
1992)..................................................................................18

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano, 999 F.2d 211 (7th Cir. 1993)7, 19

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Stidham, 658 F.2d 1098 (5th Cir. 1981)17,
19

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wright, 1993 WL 13036199 (N.D. Tex.
July, 2 1993) ...........................................................................19

Merrill Lynch, Pierce, Fenner Smith, Inc. v. Rodger, 75 F. Supp. 2d 375
(M.D. Pa. 1999).........................................................................18

Morlife, Inc. v. Perry, 56 Cal. App. 4th 1514 (1997)....................................16

Pack Concrete, Inc. v. Cunningham, 866 F.2d 283 (9th Cir. 1989) .........................8

Roe v. Anderson, 134 F.3d 1400, (9th Cir. 1998), cert. granted, 524 U.S. 982 (1998), aff'd,
Saenz v. Roe, 526 U.S. 489 (1999) ......................................................9

KYL_SF457043

PLAINTIFF A.G. EDWARDS & SONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO MODIFY THE TEMPORARY RESTRAINING ORDER

1

2    Ruscitto v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 777 F. Supp. 1349 (N.D. Tex.
      1991), aff'd, 948 F.2d 128 (5th Cir. 1991), cert. denied, 504 U.S. 930 (1992) ........19, 20

3    Schoenduve Corp. v. Lucent Technologies, Inc., 442 F.3d 727 (9th Cir. 2006) ...................8

4    Sigma Chemical Co. v. Harris, 586 F. Supp. 704 (D.C. Mo. 1984) ...................................20

5    Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832 (9th Cir. 2001)...............9

6    Systematic Business Services, Inc. v. Bratten, 162 S.W.3d 41 (W.D. Mo. 2005).............18

7    UBS PaineWebber, Inc. v. Aiken, 197 F. Supp. 2d 436 (W.D.N.C. 2002).........................18

8    Yuen v. Superior Ct., 121 Cal. App. 4th 1133, 18 Cal. Rptr. 3d 127 (2004) ......................6

9                                              Statutes

10   9 U.S.C. § 9.....................................................................................................................8

11   Cal. Civ. Code § 3426.1 ..................................................................................................17

12   West's Ann. Cal. Code Civ. P. § 1292.6...........................................................................8

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KYL_SF457043

PLAINTIFF A.G. EDWARDS & SONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO MODIFY THE TEMPORARY RESTRAINING ORDER

1    This Memorandum of Points and Authorities is respectfully submitted by

2 Plaintiff A.G. EDWARDS & SONS, INC. ("Edwards" or the "Company") in support of its

3 opposition to the Motion to Modify the Temporary Restraining Order of Defendants

4 SAMUEL SLAYDEN ("Slayden"), DENISE GILSETH ("Gilseth"), CATHY MCJILTON

5 ("McJilton"), and KELLY STROMGREN ("Stromgren") (collectively, "Defendants").[1]

6    For the reasons stated herein, this Court should refuse to modify the

7 temporary restraining order and intervene in the pending arbitration before Financial

8 Industry Regulatory Authority ("FINRA").

9                              I.    **PRELIMINARY STATEMENT**

10    Apparently unhappy that the duly-appointed FINRA arbitration panel on

11 October 30, 2007 denied Defendants' request to dissolve the temporary restraining order

12 this Court issued on October 15, 2007 – a fact about which Defendants conveniently but

13 disingenuously fail to apprise this Court in their instant motion – Defendants seek to

14 have the Court intervene and impose its will on the Panel to modify the temporary

15 restraining order.

16    The Court should deny Defendants' motion and continue its order until the

17 arbitration is concluded.

18    Defendants' flawed argument in favor of modifying the temporary

19 restraining order is that Edwards' representations on which the Court relied in issuing

20 the temporary restraining order are no longer accurate. Specifically, Defendants claim

21 that the four representations on which the Court relied are now either false or moot,

22 namely, that: (1) FINRA would hold an evidentiary hearing on Edwards' request for

23 permanent injunctive relief within 15 days of the Court's issuance of the temporary

24

25 [1]  Defendant McJilton testified during the FINRA arbitration that she had "no problem" in "honoring" the
terms of her contract or complying with the Court's TRO in that regard.  (See Declaration of Anthony
26 Paduano In Opposition To Defendants' Motion To Modify Temporary Restraining Order, signed November
12, 2007, with exhibits ("Paduano Dec."), Ex. A, at 483-87.  Despite that sworn testimony, McJilton's
27 attorneys seek to have the temporary restraining order modified as to her. (See Defendants' Motion to
Modify Temporary Restraining Order, dated November 7, 2007 ("Defendants' Motion"), at 1.

28

PLAINTIFF A.G. EDWARDS & SONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO MODIFY TEMPORARY RESTRAINING ORDER

1  restraining order on October 10, 2007; (2) Defendants solicited clients to transfer

2  accounts to Edwards' competitor, Stifel, Nicolaus & Company, Inc. ("Stifel") before they

3  resigned; (3) Defendants' contractual obligations to Edwards prohibit them from

4  soliciting clients; and (4) Defendants took from Edwards and used information and

5  materials that are confidential, proprietary, or subject to trade secret protection. It is

6  Defendants who are wrong, and who have misrepresented the facts to the Court. None

7  of Edwards' representations are false or moot.

8          First, Defendants cannot dispute that the parties stipulated that the

9  arbitration hearings should commence on October 29, 2007 – 19 days after the Court

10  issued the temporary restraining order on October 10, 2007 – and will resume this

11  Thursday – on November 15, 2007. Rule 13804(b)(1) of the NASD Code of Arbitration

12  Procedure (emphasis added), which governs FINRA hearings for permanent injunctive

13  relief, states in relevant part:

14              If a court issues a temporary injunctive order, an arbitration
15              hearing on the request for permanent injunctive relief will
                begin within 15 days of the date the court issues the temporary
16              injunctive order. . . . Unless the parties agree otherwise, a
                hearing lasting more than one day will be held on consecutive
17              days when reasonably possible.

18

19  Due to circumstances beyond the parties' control, the hearings could not continue on

20  consecutive days after October 30, 2007, because the arbitrators were unavailable. The

21  hearings were therefore scheduled based on the arbitrators' availability. This Court

22  cannot penalize Edwards by modifying the temporary restraining order in the middle of

23  its presentation of its case just because the arbitrators could not immediately schedule

24  the remaining hearing dates. Furthermore, NASD Rule 13804 does not require that the

25  arbitration conclude within 15 days after a court issues a temporary restraining order; it

26  must begin the arbitration within 15 days of the issuance of a temporary restraining

27  order.

28          Edwards has yet to discover the full extent of Defendants' wrongdoing in

- 2-

PLAINTIFF A.G. EDWARDS & SONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO MODIFY TEMPORARY RESTRAINING ORDER

soliciting Edwards' clients to transfer their accounts to Stifel; Edwards is in the middle of the expedited arbitration.    If the Court vacates the portion of the temporary restraining order that prohibits Defendants Slayden, Gilseth and Stromgren from soliciting Edwards' clients, the Court will, in essence, be allowing Defendants to use Edwards' confidential and proprietary information to solicit Edwards' clients.    As Edwards argued in great detail in its Motion for Temporary Restraining Order and Preliminary Injunction, dated October 9, 2007, Edwards will be irreparably harmed if Defendants are permitted to solicit its clients using Edwards' confidential information.

Defendants solicited Edwards' clients before they resigned from Edwards. Defendants admittedly took confidential documents and information from Edwards while they were still Edwards' employees – at least some of which they gave their new employer, Stifel.  Regardless of the unsubstantiated testimony of Stromgen and Gilseth in their Declarations regarding one particular Edwards' client, Edwards has a right to examine both Stromgen and Gilseth about what and when they told their clients before they left Edwards.

Defendants also claim that Edwards misrepresented to the Court that Defendants' misappropriation of Edwards' confidential information has been rendered moot is absurd.  Defendants concede that they misappropriated Edwards' confidential documents when they resigned to join Edwards' competitor Stifel. Defendants even admit that, after more than three weeks of discovery, and in direct contravention of the Court's October 15, 2007 Order On Plaintiff A.G. Edwards' Motion For Temporary Restraining Order And For A Preliminary Injunction And An Order Permitting Expedited Discovery ("Original Order"), Defendants have not given to Edwards all of the documents they stole from Edwards. (See Defendants' Motion, at 3 ("In the past three weeks, Defendants have surrendered to Plaintiff almost all of the documents that they took when they left Edwards, with the result that they can no longer use them for any purpose." (emphasis added)).)

Edwards also contends that the Court's intervention in the pending FINRA

- 3 -

KYL_SF457043

1    arbitration would be improper. Edwards is mindful that the Court said that it would

2    vacate the temporary restraining order if the "arbitration outfits" "are delay city."

3    (Paduano Dec., Ex. B, at 42.)  That, however, is not what is happening here.  In their

4    moving papers, Defendants do not tell this Court that the arbitration panel has stated

5    that the injunction phase of the arbitration would be completed by November 16, 2007 –

6    which Defendants knew before they made the instant motion – three days from now.

7    Edwards contends that Defendants have made the instant application to divert Edwards

8    from preparing for the looming arbitration.  This Court properly referred this matter to

9    arbitration, and the arbitration panel denied Defendants' motion to dissolve the

10   temporary restraining order on October 30, 2007 (Paduano Dec., Ex. A, at 275) – seven

11   days before Defendants filed the instant application to modify the temporary restraining

12   order with this Court.  California law and other federal courts that have considered this

13   issue provide that the Court's involvement is strictly limited until the arbitration is

14   completed.  Defendants have simply failed to proffer any legitimate reason for the Court

15   to modify the temporary restraining order.

16                        II.    **STATEMENT OF FACTS**

17            This action arises as a result of the abrupt resignations from Edwards'

18   Santa Rosa, California office of Defendants Slayden, Gilseth, McJilton and Stromgrem,

19   after which they immediately commenced employment with Edwards' direct competitor,

20   Stifel.  Slayden, Gilseth and McJilton resigned from Edwards' Santa Rosa office on

21   September 20, 2007, and immediately commenced employment with Stifel that same

22   day.  Stromgren resigned from the same Edwards office on October 1, 2007, and

23   immediately commenced employment with Stifel.  Slayden was Edwards' branch office

24   manager at the time of his resignation.  Gilseth and Stromgren were Edwards' financial

25   consultants and McJilton was a registered financial associate in Edwards' Santa Rosa

26   office at the time of their sudden resignations.

27            Edwards contends that Slayden solicited his fellow employees to quit

28   Edwards and join Stifel.  In addition to that, on information and belief, at Slayden's

KYL_SF457043

PLAINTIFF A.G. EDWARDS & SONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO MODIFY TEMPORARY RESTRAINING ORDER

1    behest and without warning, Jaime Van Heusen (operations manager) and Christian

2    Amaor (wire operator) in the Santa Rosa office also terminated their employment with

3    Edwards on September 20, 2007 and September 25, 2007, respectively, and joined

4    Defendants at Stifel.    Moreover, at the same time as Defendants' resignation, on

5    information and belief, at the direction and scheming of Slayden, Stifel opened an office

6    in the very same building as Edwards' Santa Rosa office.  This could only have been an

7    attempt to confuse Edwards' clients and lead them to believe that Edwards' office was

8    simply sold. As such, Defendants have destroyed Edwards' Santa Rosa branch office and

9    are in the process of stealing and attempting to steal Edwards' clients.

10        Defendants have improperly taken Edwards' confidential and proprietary

11   information to solicit Edwards' clients they were assigned to service.   Consistent with

12   that plot, Defendants, on information and belief, have been using Edwards' confidential

13   documents and information to solicit important Edwards' clients to sever their ties with

14   the firm and open relationships with Stifel.

15        Based on the conduct described above, on October 9, 2007, Edwards sued

16   Defendants seeking, *inter alia*, to enjoin them from using Edwards' confidential

17   documents and information to solicit Edwards' clients and/or personnel.  On October 10,

18   2007, the Court held a hearing on Edwards' motion for a temporary restraining order.

19   At the conclusion of that hearing, this Court granted a limited temporary restraining

20   order, which was confirmed in the Court's October 15, 2007 Order On Plaintiff A.G.

21   Edwards' Motion For Temporary Restraining Order And For A Preliminary Injunction

22   And An Order Permitting Expedited Discovery ("Original Order").  The Original Order

23   was amended by the October 18, 2007 Stipulation and Order Amending Temporary

24   Restraining Order And Order Permitting Expedited Discovery ("Amended Order").   In

25   the Amended Order, this Court ordered that "Plaintiff must take all measures to have

26   the FINRA arbitration hearing commenced not later than October 29, 2007 – the date

27   the parties have jointly requested FINRA to start the hearing."   As ordered to do,

28   Plaintiff took all measures to ensure that the FINRA arbitration commenced on October

KYL_SF457043

PLAINTIFF A.G. EDWARDS & SONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO MODIFY TEMPORARY RESTRAINING ORDER

29, 2007.    On October 29, 2007, the FINRA arbitration began in San Francisco, California.

During the October 10 hearing in this matter, this Court made it clear that the temporary restraining order "stays in effect ad infinitum, until FINRA modifies it or until I modify it . . ." The Court also stated that, "if [the FINRA arbitration] doesn't start in 15 days," Defendants could come back into Court to seek to modify the temporary restraining order.   The Court gave the parties "six months to get [the arbitration] done." On the second day of the FINRA arbitration (October 30, 2007), Defendants asked the arbitrators to dissolve the temporary restraining order (Paduano Dec., Ex. A at 245) – about which they did not advise the Court in their moving papers. The Panel considered and denied Defendants' application, stating that "we are going to have to leave the order in place, and until such time as the hearing is over." (Id.) After having heard testimony, the arbitrators decided that the temporary restraining order should remain in effect until the hearing is concluded.   Not satisfied with that ruling, and even though the arbitration was timely started and was set to conclude this Friday, November 16, 2007 – until Defendants interfered with that timing – Defendants have returned to this Court to argue yet a third time that there should be no temporary restraining order.  Defendants' motion should be denied.

### III.    ARGUMENT - THE COURT SHOULD NOT MODIFY THE TEMPORARY RESTRAINING ORDER

### A.    MODIFICATION OF THE TEMPORARY RESTRAINING ORDER DURING THE PENDING ARBITRATION IS IMPROPER

California courts routinely recognize that, once a matter has been referred to arbitration, a court's involvement should be strictly limited until the arbitration is completed.  See, e.g., Independent Assoc. of Mailbox Center Owners, Inc. v. Superior Ct., 133 Cal. App. 4th 396, 411-12, 34 Cal. Rptr. 3d 659, 672 (2005) ("'once a matter has been referred to arbitration, the court's involvement is strictly limited until the arbitration is completed'"); Yuen v. Superior Ct., 121 Cal. App. 4th 1133, 1138, 18 Cal. Rptr. 3d 127,

KYL_SF457043

1    130 (2004) ("the relevant question here is what *kind of arbitration proceeding* the parties

2    agreed to.  That question does not concern a state statute or judicial procedures. [ ] It

3    concerns contract interpretation and arbitration procedures.   Arbitrators are well

4    situated to answer that question. . . . Thus, under the line drawn by the Supreme Court

5    in [Green Tree Financial Corp. v. Bazzle, 539 U.S. 444 (2003)], the court decides whether

6    the matter should be referred to arbitration, but 'once a matter has been referred to

7    arbitration, the court's involvement is strictly limited until the arbitration is

8    completed"); Finley v. Saturn of Roseville, 117 Cal. App. 4th 1253, 1259, 12 Cal. Rptr. 3d

9    561, 565 (2004) (same). See also IDS Ins. Co. v. SunAmerica Life Ins. Co., 136 F.3d 537,

10   541-42 (7th Cir. 1998), remanded to, 1999 WL 116220 (N.D. Ill. Feb. 26, 1999) ("as we

11   said in [Merrill Lynch, Pierce Fenner & Smith, Inc. v. Salvano, 999 F.2d 211 (7th Cir.

12   1993)], if a case is properly referred to arbitration, the court must back away and let the

13   arbitrators do their work without interference").

14   Similarly, in Finley v. Saturn of Roseville, supra, the court refused to

15   entertain plaintiffs' motion to compel review by a second arbitrator after the trial court

16   had already compelled arbitration of plaintiffs' claims and confirmed the arbitrator's

17   decision.  117 Cal. App. 4th at 1260, 12 Cal. Rptr. 3d 566.  The court stated that

18           "Once a court grants the petition to compel arbitration and
             stays the action at law, the action at law sits in the twilight
19           zone of abatement with the trial court retaining merely a
             vestigial jurisdiction over matters submitted to arbitration.
20           This vestigial jurisdiction over the action at law consists solely
             of making the determination, upon conclusion of the arbitration
21           proceedings, of whether there was an award on the merits (in
             which case the action at law should be dismissed because of the
22           res judicata effects of the arbitration award [citations]) or not
             (at which point the action at law may resume to determine the
23           rights of the parties)." (Brock v. Kaiser Foundation Hospitals,
             10 Cal. App. 4th 1790, 1796, 13 Cal. Rptr. 2d 678 (1992)). The
24           court also retains jurisdiction 'to determine any subsequent
             petition involving the same agreement to arbitrate and the
25           same controversy' (West's Ann. Cal. Code. Civ. P. § 1292.6.).
26
27   Id. at 1258, 564.

28   The Finley court further stated that, "[a]lthough the matter had been

- 7 -

PLAINTIFF A.G. EDWARDS & SONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO MODIFY TEMPORARY RESTRAINING ORDER

1  submitted to an arbitrator and the arbitrator had issued a decision, the appellate phase

2  of the proceedings had not yet concluded." Id. The power to dismiss an arbitration for

3  delay lies with the arbitrator alone; while a trial court decides whether the right to

4  arbitrate has been waived by delay in connection with the initial petition, any waiver

5  due to delay in the arbitration itself is a matter for the arbitrator to decide. Id. (citing

6  West's Ann. Cal. Code Civ. P. § 1292.6). See also Schoenduve Corp. v. Lucent

7  Technologies, Inc., 442 F.3d 727, 731-33 (9th Cir. 2006) ("To protect the overall purpose

8  of arbitration and avoid any tendency of a court to impute its own strict and rigid

9  practices onto arbitration proceedings, Congress has limited the ability of federal courts

10 to review arbitration awards" (citing 9 U.S.C. § 9; Pack Concrete, Inc. v. Cunningham,

11 866 F.2d 283 (9th Cir. 1989) (stating that permitting a plenary review of arbitration

12 would undermine Congress's policy of favoring arbitration as an expeditious and

13 relatively inexpensive means of resolving disputes)); "the parties agreed to arbitration . .

14 . and must accept the loose procedural requirements along with the benefits which

15 arbitration provides"). When the court refers a matter to arbitration, "the arbitration

16 must be considered to include both the initial hearing and decision on the merits and

17 any postdecision remedies provided for in the arbitration agreement." Finley, 117 Cal.

18 App. 4th at 1259, 12 Cal. Rptr. 3d 565-66.

19      Likewise, this matter has been properly referred to arbitration, and the

20 arbitration panel has already denied Defendants' motion to dissolve the temporary

21 restraining order. The panel's decision to keep the temporary restraining order in place

22 should be given the same deference the courts regularly give to arbitration awards and

23 other decisions that the arbitrators render. By refusing to modify or dissolve the

24 temporary restraining order, the arbitrators clearly recognized that the injunction is still

25 necessary to preserve the *status quo* and prevent irreparable harm.

26

27

28

KYL_SF457043

PLAINTIFF A.G. EDWARDS & SONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO MODIFY TEMPORARY RESTRAINING ORDER

1

2

B.    THE TEMPORARY RESTRAINING ORDER SHOULD REMAIN IN
      PLACE PENDING COMPLETION OF THE ARBITRATION HEARING.

3

4

5

6

      1.    Edwards Made No Misrepresentations to the Court during the
            October 10, 2007 Hearing; if anything, it is Defendants who
            have Mislead the Court by Failing to Advise the Court that the
            Arbitrators Denied Defendants' October 30, 2007 Request to
            Vacate this Court's Temporary Restraining Order.

7

8

9

10

11

12

13

14

15

16

17

18

19

On October 15, 2007, this Court granted Edwards' request for a temporary restraining order. To accomplish that, Edwards had to make a clear showing of either: (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in favor of the moving party. These standards "are not separate tests but the outer reaches of a single continuum." Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839-40 (9th Cir. 2001); California Native Plant Society v. United States E.P.A., 2007 WL 2021796, at *13 (N.D. Cal. July 10, 2007). Accord Roe v. Anderson, 134 F.3d 1400, 1402 (9th Cir. 1998), cert. granted, 524 U.S. 982 (1998), aff'd, Saenz v. Roe, 526 U.S. 489 (1999) ("These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases."). Edwards met, and continues to meet, that standard. Nothing Defendants say in their moving papers changes that fact.

20

21

22

23

On October 30, 2007, Defendants moved before the FINRA arbitration panel to dissolve the temporary restraining order this Court issued on October 10, 2007. The arbitrators denied that request.

24

25

      THE CHAIRMAN: . . . The panel has confirmed. . . that. . . we
      are going to leave the [temporary restraining] order in place, and
      until such time as the hearing is over.

26

(Paduano Dec., Ex. A, at 275.)

27

28

Defendants' statements to the contrary, Edwards did not make false

KYL_SF457043

1  representations to the Court, and the issues it raised in its preliminary

2  application are not moot.  Accordingly, the Court's October 10, 2007 temporary

3  restraining order should remain in place – as the FINRA arbitration panel held on

4  October 30, 2007 – to preserve the *status quo* pending completion of the FINRA

5  arbitration.  If anything, it is Defendants who are misleading this Court in their

6  efforts to obtain modification of the temporary restraining order.  Glaringly absent

7  from Defendants' moving papers is the fact that, on October 30, 2007, the second

8  day of the arbitration, Defendants moved to have the temporary restraining order

9  lifted.  The arbitrators <u>denied</u> Defendants' request.  Defendants now come before

10  this Court with unclean hands by failing to apprise the Court of that salient fact.

11

12      Defendants also failed to tell this Court that the FINRA panel

13  directed that the injunction phase of the arbitration was to be concluded by this

14  upcoming Friday, November 16, 2007.

15

16          THE CHAIRMAN:  . . . As I have spoken about before, . . . we
        have a common understanding that the end of the 16th [of November,
        2007,] will be the end, in toto, of the hearing.

17  (Paduano Dec., Ex. A, at 549.)  The FINRA panel also reminded the parties on

18  October 30, 2007, that, "[i]n terms of production of documents, . . . there is an

19  ongoing continuing obligation and do the best you can to produce what is

20  requested."  (<u>Id</u>.)  Defendants have failed in that obligation.

21

22      Edwards did not misrepresent issues involving the timing of the

23  FINRA arbitration.  (Defendants' Motion, at 2.)  At the October 10, 2007 hearing,

24  the following exchange on that subject occurred:

- 10-

PLAINTIFF A.G. EDWARDS & SONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO MODIFY TEMPORARY RESTRAINING ORDER

1    THE COURT: When will that arbitration begin?

2    MR. PADUANO: It's a complicated answer, but if the Court enters
3    an injunction, what happens under the FINRA rules is that in New York,
     the case is processed. And within 15 days from the injunction, under the
4    rules, the arbitration panel convenes and considers the issue of injunctive
     relief. And it's the only situation I'm aware of where arbitrators have the
5    right to – they get to vacate. They get to modify. They get to expand
     whatever the Court's order is. . . . So if there's an injunction, it's expedited
6    arbitration before FINRA on the merits. And all aspects of relief available
7    to the parties are heard before three arbitrators. . . .

8    THE COURT: Is the hearing on the merits actually expedited, too?

9    MR. PADUANO: It is, your Honor. Under the rules, it's not as quick
     as 15 days. We start on the 15th day. The arbitrators have complete
10   authority to make a stay where they schedule other dates. . . .

11
     THE COURT: And the 15-day thing – can the arbitrators expand as
12   well as modify in both directions the injunctive relief?

13   MR. PADUANO: Yes, they can do anything they want. They have
     complete authority. They have authority where they can refer the parties –
14   both the firms and individuals – to discipline before FINRA enforcement if
15   it believes something untoward has really happened.

16
     (Paduano Dec., Ex. B, at 3-5.) The Court ordered that the FINRA hearing be started,
17
     but not concluded, in 15 days: "The Court's going to order that FINRA start this in 15
18
     days. . . . So they got to get going in 15 days." The Court made it clear that the parties
19
     "had six months to get it [the arbitration] done."
20
     [T]he burden is on the plaintiff to get in there and get this arbitration
21   going, and to stop the delay city.

22   I have taken cases back. I won't dismiss a NASD [FINRA] thing. I
23   will give them six months to get it done.

24   (Id., Ex. B, at 42.)

25
26   In the Original Order, which Defendants did not attach to their moving
27   papers, the Court further ordered "that Plaintiff [Edwards] shall initiate the FINRA
28   arbitration immediately and take all measures to have the hearing commenced not later

PLAINTIFF A.G. EDWARDS & SONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO MODIFY TEMPORARY RESTRAINING ORDER

1    than 15 days after the hearing date, or October 25, 2007." (Paduano Dec., Ex. C, at 3.)

2    On that subject, the Original Order was amended by Amended Order, which Defendants

3    did not attach to their moving papers, to-wit: "Plaintiff must take all measures to have

4    the FINRA arbitration hearing <u>commenced not later than October 29, 2007</u> – the date

5    the parties have jointly requested FINRA to start the hearing." (<u>Id</u>., Ex. D, at 2

6    (emphasis added).)

7        Consistent with the Amended Order, the arbitration began on October 29,

8    2007.[2]  Based on the Court's ruling that the arbitration be completed in six months,

9    Edwards has until the end of April 2008.  Defendants concede that there have already

10   been two days of scheduled hearing dates for the arbitration, <i>i.e.</i>, October 29 and 30,

11   2007.  (Mennemeier Dec. ¶ 5(a) & (b).)  Defendants also concede that there have been

12   two additional days scheduled for the arbitration <u>this</u> <u>week</u>, namely, November 15 and

13   16, 2007.  (<u>Id</u>. ¶ 6.)  Defendants do not tell this Court, however, that the FINRA

14   arbitration panel stated that the arbitration must conclude on November 16, 2007.

15   (Paduano Dec., Ex. A, at 549.)

16

17       Defendants complain, however, that the arbitration is not moving quickly

18   enough, and that the arbitrators were not available to continue the arbitration until

19   November 15, 2007.  (<u>Id</u>.)  They also complain that the testimony of only one party

20   witness has been completed (Defendant Cathy McJilton (<u>id</u>. ¶5(b)), that Edwards has not

21   concluded the examination of Defendant Kelly Stromgren  (<u>id</u>.), and that Edwards

22   examined three non-parties – all employees of the financial institution to which

23   Defendants went after leaving Edwards, Stifel -- to begin its case-in-chief.  (<u>Id</u>. ¶ 5(a).)

24

25       Edwards has no control over the availability of the arbitrators; nor has

26   [2]  Defendants make much ado about the fact that, on October 23, 2007, Edwards moved to remove for
     cause two of the three arbitrators, because of business connections.  However, Edwards' motion to remove
27   did not delay the institution of the arbitration, as defendants admit that it began, as scheduled – and as
     this Court ordered in the Amended Order – on October 29, 2007. (Mennemeier Dec. ¶ 5(a).)
28

PLAINTIFF A.G. EDWARDS & SONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO MODIFY TEMPORARY RESTRAINING ORDER

1  Edwards delayed the arbitration.    Defendants admit that Edwards has already

2  completed the examination of four witnesses and has started its examination of a fifth

3  witness in two days' time.  (Id. ¶ 5.))[3]  Defendants have no right to challenge how

4  Edwards conducts its case-in-chief.  Moreover, one of the non-party witnesses Edwards

5  examined in its case-in-chief was "John Lee ["Lee"], a Stifel Senior Vice President and

6  Managing Director."  (Id. ¶ 5(a).)  During the October 10, 2007 hearing, this Court

7  granted Edwards' request to examine Lee, as he was the "person at Stifel, Nicolaus who

8  hired [Defendant] Mr. Slayden." (Paduano Dec., Ex. B, at 33-34.)

9
10  Nor did Edwards represent that Defendants "had contractual obligations

11  that prohibit them from soliciting clients whose accounts they serviced at Edwards."

12  (Defendants' Motion, at 2.)    Edwards argued that Defendants had contractual

13  obligations prohibiting them from soliciting Edwards' employees.  (Paduano Dec., Ex. B,

14  at 9-20.)  The Court disagreed with Edwards' position and denied Edwards' request for

15  preliminary injunctive relief related to soliciting Edwards' employees, except for the one

16  Edwards' employee and defendant, who had a contractual provision prohibiting her from

17  soliciting Edwards' employees, Cathy McJilton.  ("With respect to soliciting workers,

18  there's no relief, except for the one person who had a contract. . . , Cathy McJilton." (Id.,

19  at 37.)  It was Defendants – not Edwards – who claimed that there were no contract

20  provisions "with regard to soliciting clients for business. . . ." (Id., at 22-23.)  Defendants'

21  contracts were before the Court when it denied Edwards' request for injunctive relief on

22  that issue.

23  Defendants also assert that Edwards misrepresented to the Court that

24
25  [3]  Defendants complain that Edwards presented a witness list of 28 potential witnesses.  (Id. ¶ 4(c).)
    Whether Edwards chooses to call all those witnesses is yet to be determined.  However, if Edwards failed
26  to include a potential witness on that list and then tried to examine that witness in the arbitration,
    Defendants would undoubtedly object that Edwards would be precluded from offering that unnamed
27  person as a witness.  Of those 28 potential witnesses, Edwards is already on its fifth witness in only two
    days of testimony and has specifically identified, pursuant to the Panel's order, the remaining witnesses it
28  will call during the injunctive phase.

PLAINTIFF A.G. EDWARDS & SONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO MODIFY TEMPORARY RESTRAINING ORDER

"Defendants had solicited clients to transfer their accounts to Stifel *before* they resigned from Edwards." (Defendants' Motion, at 2 (emphasis in original).)  Once again, Edwards misrepresented nothing to this Court.  Defendants' assertion is based on the November 7, 2007 Declaration of Defendant Kelly Stromgen in Support of Motion to Modify Temporary Restraining Order ("Stromgen Dec.").  In that Declaration, Stromgen says that the client whose Edwards account was transferred to Stifel on September 28, 2007, three days before she left Edwards to join Stifel, was the client of Defendant Gilseth, who resigned from Edwards on September 20, 2007, to join Stifel.  Stromgen says that, after Gilseth left, the client was assigned to Stromgen. (Stromgen Dec. ¶ 9.)  Because of that, Stromgen says that client was Gilseth's, not her, client, and the transfer therefore occurred after Gilseth left. (Id.)

Edwards has a right to challenge what Stromgen and Gilseth say about that client in the FINRA arbitration.  Edwards began Stromgen's examination on October 30, 2007 and will continue on November 15, 2007.  Edwards has not yet examined Stromgen or Gilseth about that client.  Edwards has the right to challenge the veracity of Stromgen's and Gilseth's Declaration testimony.  What Stromgen did not tell this Court in her Declaration is the fact that she worked closely with Gilseth at Edwards, and that they were each other's back-up broker when the other one was on vacation. (Paduano Dec., Ex. A, at 510.)  Despite admitting that she worked closely with Gilseth and was Gilseth's back-up broker, Stromgen claims that she never "served" that client. (Stromgen Dec. ¶ 9.)  Edwards is in the middle of its arbitration with Defendants and should be allowed to examine all the Defendants, including Gilseth and Stromgen, on the timing of transfers and their relationships/contacts with each other's clients.

What is unquestionably clear is that Defendants stole substantial quantities of client documents belonging to Edwards.  While Defendants were still working for Edwards, Lee, a Stifel Senior Vice President and Managing Director, testified what he told Defendants to take while they were still employed by Edwards.

- 14 -

KYL_SF457043

PLAINTIFF A.G. EDWARDS & SONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO MODIFY TEMPORARY RESTRAINING ORDER

1  (Paduano Dec., Ex. A, at 66-67.)  Defendants, including Samuel Slayden and Cathy

2  McJilton, went well beyond what Lee told them to take, including improperly taking

3  Browse Lists, Account Inquiry Forms and Realized Gain and Losses Reports for

4  Edwards' clients.  (Id., Ex. H, at 131-33.)

5

6      Finally, Defendants urge this Court to modify the temporary restraining

7  order, because they supposedly returned all the "information and materials that are

   confidential, proprietary, or subject to trade secret protection."  (Defendants' Motion, at

8  2.)    They make this representation, even though they admit that they still have

9  information and documents belonging to Edwards when they state that they

10 "surrendered to Plaintiff nearly all of the information and documents that they retained

11 when they left Edwards. . . ."  (Id., at 3 (emphasis added).)  Thus, this argument has not

12 been "rendered moot" as Defendants would have the Court believe.

13

14     Defendants admittedly took confidential documents and information from

15 Edwards.  Defendants' claim that they have given "nearly all" that information back to

16 Edwards does not change the fact that they illegally took confidential, proprietary

17 Edwards' documents in the first instance, thereby damaging Edwards.  And, while

18 Defendants have produced documents, they still retain copies of at least some of the

19 documents belonging to Edwards.  For example, on November 9, 2007, two days after

20 Defendants served the instant motion, they advised Edwards that the original

21 documents "remain[] in the possession of Respondents' counsel."  (Paduano Dec., Ex. E.)

22 As recently as October 26, 2007, the FINRA arbitration panel directed Defendants to

23 produce, inter alia, copies of the account transfer and account owner information forms

24 Stifel received from former Edwards' customers and financial advisor production records

25 the Defendants gave Stifel before they resigned.  (Id., Ex. F, at 1-2.)  Defendants did not

26 produce the ACATS and account owner information forms until November 8, 2008 – one

27 day after they filed the instant motion.  (Id., Ex. G.)

28

- 15-                                  KYL_SF457043

1

2       **2.    Edwards Is Likely To Prevail On The Merits And There Is A Possibility Of Irreparable Harm in Defendants' Solicitation of Edwards' Clients.**

3

4           Edwards is likely to prevail on the merits with respect to Defendants'

5   solicitation of its clients.    California has adopted the Uniform Trade Secrets Act

6   ("UTSA") (California Civil Code sections 3426, *et. seq.*), expressly recognizing that "the

7   right of free competition does not include the right to use confidential work product of

8   others." <u>Morlife, Inc. v. Perry</u>, 56 Cal. App. 4th 1514, 1520 (1997).    In determining

9   whether information that a party seeks to protect qualified as a trade secret, courts

10  examine: (1) whether the information is valuable because it is unknown to others; and

11  (2) whether the owner has attempted to keep the information secret. See <u>ABBA Rubber</u>

12  <u>Co. v. Sequist</u>, 235 Cal. App. 3d 1, 18 (1991).    Here, the information Edwards seeks to

13  protect satisfies both requirements.    First, the information that Defendants currently

14  have is highly-sensitive information pertaining to Edwards' customer accounts.    The

15  inherent value of this information, individually and collectively, stems from the fact that

16  it gives Edwards a competitive advantage in the marketplace and represents years of

17  development, industry experience, and analysis.    Once this information is shared with

18  any other entity – and, in particular, a competitor such as Stifel – the information loses

19  its worth because the competitive advantage that it provides is lost.

20          Second, Edwards has gone to – and will continue to go to – great lengths to

21  maintain the secrecy of its proprietary business and broker information.    The California

22  Court of Appeal has recognized that "[r]easonable efforts to maintain secrecy have been

23  held to include advising employees of the existence of a trade secret, limiting access to a

24  trade secret on [a] 'need to know basis,' and controlling plant access." <u>Courtesy Temp.</u>

25  <u>Serv., Inc. v. Camacho</u>, 222 Cal. App. 3d 1278, 1288 (1990).    Here, Edwards' confidential

26  information is not publicly disseminated.    Rather, only certain officers, directors, and

27  upper-level managers are authorized to access such information.    Moreover, Edwards

28  requires employees – such as Defendants herein– to sign contracts which contain

- 16-                                                    KYL_SF457043

PLAINTIFF A.G. EDWARDS & SONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO MODIFY TEMPORARY RESTRAINING ORDER

1   provisions expressly obligating them not to divulge Edwards' proprietary information,

2   whether during or after employment.  These precautionary measures conclusively

3   demonstrate that Edwards has taken significant steps to maintain the security and

4   secrecy of its proprietary business and broker information, meeting the second part of

5   the trade secret test.  Taken together, because Edwards' confidential and proprietary

6   business and customer information derives its value as a result of its secrecy, such

7   information that Defendants obtained constitutes protectable trade secrets under

8   California law.

9          The foregoing trade secret information was misappropriated by Defendants.

10  California Civil Code section 3426.1 (which codifies the UTSA) defines misappropriation,

11  among other things, as (1) acquisition of a trade secret by a defendant who knows or

12  should know the trade secret was acquired improperly, or (2) <u>unauthorized disclosure or

13  use</u> of another's trade secret with knowledge that the information was acquired under

14  circumstances which gave rise to a duty to maintain its secrecy or limit its use.  Cal. Civ.

15  Code § 3426.1.  Defendants' conduct falls squarely within these parameters, as set forth

16  in the accompanying Hatcher Affidavit.  Edwards is therefore entitled to a temporary

17  restraining order and preliminary injunction to protect its trade secrets and prevent

18  Defendants' further use and exploitation of such information.

19         Finally, Edwards will suffer irreparable injury if its request for injunctive

20  relief is not granted.  It is extremely difficult to quantify the future economic losses that

21  Edwards will suffer due to the loss of clients, talented agents, and employees to a

22  competitor such as Stifel.  See <u>Merrill Lynch, Pierce, Fenner, & Smith v. Stidham</u>, 658

23  F.2d 1098, 1102, n.8 (5th Cir. 1981) ("The injury here is such that damages could not

24  adequately compensate.  Were defendants permitted by the law to exploit the clientele of

25  their former employers, every investment that reasonably flowed from the exploitation

26  should be included in the damages award.  How such a figure could be arrived escapes

27  us").  Similarly, in the instant matter, it is not clear how many accounts these agents

28  would obtain in the future, or how many of their current contracts they would increase

1   during their time of employment.

2        A second aspect of irreparable harm and inadequacy of a legal remedy is

3   the loss of client confidence that will occur absent an injunction.  The loss of confidence

4   will occur because these clients will have their reasonable expectation of privacy

5   destroyed.  Edwards' clients expect their financial information to be kept confidential.  If

6   Defendants' conduct continues unrestrained, the clients' trust and confidence in

7   Edwards will be permanently impaired in a way that cannot be quantified.

8        Numerous courts have relied upon the preceding factor to find irreparable

9   harm justifying an injunction.  See, e.g., Systematic Business Services, Inc. v. Bratten,

10  162 S.W.3d 41, 51 (W.D. Mo. 2005) ("The former employer need not show actual damages

11  to enforce the covenant if the covenant is lawful and the opportunity to influence

12  employer's customers exists."); Merrill Lynch, Pierce, Fenner Smith, Inc. v. Rodger, 75 F.

13  Supp. 2d 375, 381-82 (M.D. Pa. 1999) (the court found irreparable harm because

14  "customers will lose trust and confidence in [Merrill Lynch] if they discover that ex-

15  employees have divulged to others private financial information like account value,

16  market transactions and investment assets."); Merrill Lynch, Pierce, Fenner & Smith,

17  Inc. v. Kramer, 816 F. Supp. 1242, 1247 (N.D. Oh. 1992) ("[i]rreparable and

18  immeasurable harm lies in the fact that Merrill Lynch clients, when they discover that

19  their financial information, market transactions, and investment assets which they

20  presumed were held in confidence have been disclosed, will lose trust and confidence in

21  Merrill Lynch."); Sigma Chemical Co. v. Harris, 586 F. Supp. 704 (D.C. Mo. 1984) ("the

22  equities do not favor defendant due to the evidence that defendant's breach of the

23  restrictive covenant was willful").

24       A third aspect of irreparable harm is that office morale will be jeopardized

25  if Defendants are permitted to freely violate the express terms of their contracts and

26  thereby undercut the tremendous goodwill that Edwards' other professionals have

27  worked so hard to establish over the years.  See UBS PaineWebber, Inc. v. Aiken, 197 F.

28  Supp. 2d 436, 441 (W.D.N.C. 2002) ("When the failure to grant preliminary relief creates

PLAINTIFF A.G. EDWARDS & SONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO MODIFY TEMPORARY RESTRAINING ORDER

1  the possibility of permanent loss of customers to a competitor or the loss of goodwill, the

2  irreparable injury prong is satisfied").

3          Not surprisingly, then, courts across the country have granted injunctive

4  relief in circumstances similar to those presented here.  See, e.g., Ruscitto v. Merrill

5  Lynch, Pierce, Fenner & Smith, Inc., 777 F. Supp. 1349, 1354 (N.D. Tex. 1991), aff'd, 948

6  F.2d 128 (5th Cir. 1991), cert. denied, 504 U.S. 930 (1992); Merrill Lynch, Pierce, Fenner

7  & Smith, Inc. v. Stidham, 658 F.2d 1098, 1102-03 (5th Cir. 1981); Merrill Lynch, Pierce,

8  Fenner & Smith, Inc. v. Davis, 1998 WL 920328, *3-4 (N.D. Tex. Dec. 30, 1998); Merrill

9  Lynch, Pierce, Fenner & Smith, Inc. v. Wright, 1993 WL 13036199, *3-4 (N.D. Tex. July,

10  2 1993); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano, 999 F.2d 211, 215 (7th

11  Cir. 1993); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton, 844 F.2d 726, 727-28

12  (10th Cir. 1986); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley, 756 F.2d 1048,

13  1055 (4th Cir. 1985); Friedman, Clark & Shapiro, Inc. v. Greenberg, Grant & Richards,

14  Inc., 2001 WL 1136169 (Tex. App. Houston [14 Dist.] 2001).[4]  In view of the consistency

15  with which courts have enforced restrictive covenants similar to those at issue, Edwards'

16  right to such relief cannot be seriously disputed.

17          **3.    Serious Questions Are Raised And The Balance Of Hardships**
18                 **Tips Strongly In Favor Of Edwards**

19          Edwards also satisfies the alternative test on the continuum for granting

20  injunctive relief – serious questions are raised, and the balance of hardships tips

21  strongly in its favor.  Edwards seeks only a return to the *status quo,* pending a final

22  decision  on the merits by a FINRA arbitration panel.  The benefit of such injunctive

23  relief to Edwards will vastly outweigh any minimal detriment to Defendants.  On the

24  one hand, an injunction would protect Edwards' investment in its contract rights, and,

25

26  [4]  Edwards submitted concurrently with its original Memorandum of Points and  Authorities in Support of
Application for Temporary Restraining Order and Preliminary Injunction, dated October 9, 2007, an
27  Appendix of unpublished court decisions in which employers have obtained injunctive relief similar to that
which Edwards obtained from this Court on October 10, 2007.

28

KYL_SF457043

PLAINTIFF A.G. EDWARDS & SONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO MODIFY TEMPORARY RESTRAINING ORDER

1  by extension, its investment in those clients serviced by its employees. An injunction

2  would further promote the public interest in the enforcement of employees' reasonable

3  agreements and the protection of the investment made by businesses in the development

4  of their business.   An injunction would also serve to discourage Edwards' former

5  employees and competitors from inducing Edwards' employees to breach their contracts,

6  their fiduciary duties and their duties of loyalty. As shown above, numerous courts have

7  regularly issued injunctions to protect financial services firms from the effects of disloyal

8  employees, and courts have routinely prohibited employees from soliciting their former

9  co-workers.

10      On the other hand, enjoining Defendants from continuing to breach their

11  contractual obligations cannot be said to impose a hardship. The covenants do not

12  prevent Defendants from working in their chosen field or from competing with Edwards.

13  Edwards seeks merely to enjoin Defendants' pirating one of its most precious business

14  assets, namely, its clients.   All that is sought by the Company is an injunction

15  preventing Defendants from using information they acquired as Edwards' employees.

16  Defendants will suffer no adverse financial consequences if they are enjoined from

17  soliciting their former co-workers and otherwise have the contracts they signed with

18  Edwards enforced against them. As stated in Ruscitto, *supra*, Defendants will be

19  permitted to pursue their current profession in their chosen locale, and, although the

20  restrictions against them may be meaningful, "the harm they exact does not outweigh

21  what [Edwards] will incur in terms of lost customer goodwill, trade secrets, and lost

22  business." 777 F. Supp. at 1354.[5]

23      It cannot be said that preventing Defendants from using Edwards' confidential

24  client information to solicit Edwards' clients subjects them to undue hardship. Edwards'

---

[5]      As the court stated in Merrill Lynch, Pierce, Fenner & Smith v. Ran, 67 F. Supp. 2d 764, 780 (E.D. Mich. 1999): "[i]n considering the hardships to all involved . . . those suffered by defendants are the least deserving of the court's consideration as their travails were needlessly self-imposed, unlike the burdens on . . . Merrill Lynch, which were not chosen, but rather were inflicted by defendants' contractual breaches." While that case involved only customer solicitation, the same analysis applies here.

KYL_SF457043

PLAINTIFF A.G. EDWARDS & SONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO MODIFY TEMPORARY RESTRAINING ORDER

1   customers are the essence of its business.  The loss to Edwards greatly outweighs any

2   potential harm to Defendants.

3                             IV.    CONCLUSION

4         For the reasons stated above, Edwards respectfully requests that the Court

5   deny Defendants' Motion to Modify Temporary Restraining Order and order that it

6   remain in place until such time as the Arbitration Panel renders a final award in this

7   matter and the parties thereafter appear before this Court.

8

9   DATED:  November 13, 2007          KEESAL, YOUNG & LOGAN

10

11                           Philip McLeod

12                           Cameron Stout
                            KEESAL, YOUNG & LOGAN

13

14                           Anthony Paduano (Admitted *Pro Hac Vice*)
                            PADUANO & WEINTRAUB LLP

15                           Attorneys for Plaintiff

16                           A.G. EDWARDS & SONS, INC.

PLAINTIFF A.G. EDWARDS & SONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO MODIFY TEMPORARY RESTRAINING ORDER